**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

Dexter Johnson,                          §
                                         §
              *Petitioner*,              §
                                         §
v.                                       §          Civil Action No. H-11-2466
                                         §
William Stephens, *Director*             §
*Texas Department of Criminal Justice,*  §
*Correctional Institutions Division*,    §
                                         §
              *Respondent.*              §

### Memorandum and Order

On August 19, 2013, this Court entered a Memorandum and Order denying all but one claim in Dexter Johnson's federal petition for a writ of habeas corpus. Dkt. 19. The only remaining question is whether the police violated Johnson's Fifth Amendment rights during an interrogation. The parties have provided supplemental briefing on the issue. Dkt. 28, 29. For the reasons discussed below, the Court finds that Johnson has not shown an entitlement to federal habeas relief.

### I. Background

The Court's initial Memorandum and Order discussed at length the circumstances surrounding Johnson's police interrogation. Dkt. 19 at 16-25. To summarize, the police arrested Johnson on a misdemeanor possession of marijuana charge on June 21, 2006. The police interviewed Johnson twice over the next few days. The first interview conducted by three police officers (Detectives Everett Hargrave and Bruce Campbell from the Fort Bend County Sheriff's Department along with Detective Duke Caruthers from the Humble Police Department) lasted four hours. After about ninety minutes of interrogation, the police officers implored Johnson to "help them out." Johnson said that he wanted to "go back to his cell" and "didn't want to talk no more."

Without a break, however, Johnson continued complaining that it "seem[ed] like" the police were "trying to pin this stuff on him . . . ."  The detectives interrupted him and continued their questioning.[1]

After nearly four hours of interrogation, Johnson sat quietly as police officers repeatedly urged him to tell the truth.  Detective Hargrave said that Johnson could only hope for a deal with the District Attorney's Office if he was "trying to be right about this[.]"[2]  Then Johnson, in an uninterrupted monologue, mentioned an attorney:

> Johnson:    I'm trying, I'm trying, I'm trying to be right, I'm trying to [incomprehensible] you [incomprehensible] for all I know.  That's all I know right now.  *I don't even want to talk no more until I get me a lawyer or something.*  Because I, I, I keep on telling y'all, I done told y'all everything.  I wouldn't have gave up them names if I didn't know everything I knew.  I'm not, I'm not no rat, no little snitch like that.  I done told y'all everything I knew though.  That's everything right there.  I'm not going to, come on now.

*Johnson v. State*, 2010 WL 359018, at *6 (Tex. Crim. App. Jan. 27, 2010) (unpublished) (emphasis added).  Detective Campbell interrupted and, as the men spoke over one another, the interrogation continued:

> Campbell:    [from the side] What do you mean.
>
> Johnson:    [interrupting, incomprehensible] – that's a snitch though –

---

[1]        The trial court found that Johnson had unambiguously invoked his right to remain silent at that point. Tr. Vol. 17 at 120; Supplemental Clerk's Record at 20.  When Johnson exerted his rights, the police were under an absolute obligation to "scrupulously honor" the right to remain silent and to cease all questioning immediately. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).  Because of that invocation, the State did not admit the remaining portion of the recorded interrogation into evidence at trial.  The Court's initial Memorandum and Order expressed concern that a pattern of ignoring Johnson's constitutional rights existed. Dkt. 19 at 31.  Respondent emphasizes that "had a pattern of disregard existed, it is unlikely that police would have so scrupulously honored his request for counsel when he unambiguously asserted it after the second interview." Dkt. 28 at 13.  Respondent, however, does not recognize that the officer who conducted the second interview did not participate in the first.

[2]        This statement begins at 3:59 of State's Trial Exhibit 2 ("SX2").

[Campbell and (Johnson) incomprehensible, talking simultaneously.]

[Johnson]:    I gave up my brother. I told you what he did and I know he didn't kill her.  He was in the car with me.  Louis [was] in the car with me.  We drove out.

Hargrave:    Yeah.

[Johnson]:    I told you everything that I know, so –

Hargrave:    Yes, but you also told us that you didn't take anyone away from the situation.  You did.  So someone –

[Johnson]:     [interrupting, incomprehensible] – I took somebody away.

Hargrave:    Huh?

[Johnson]:    So you saying I took somebody away?

Hargrave:    You and your crew.

Johnson:    I didn't take nobody away.

*Id*.  The police continued talking with Johnson for a few more minutes before ending the interview.

The police worried that they could not interrogate Johnson further because he had exerted his constitutional rights.  If a suspect unambiguously requests the assistance of counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  The prosecution apparently decided that Johnson reinitiated the interrogation by continuing to speak after invoking his right to counsel.  Clerk's Record Vol. 2 at 262.

The next day, Johnson requested an attorney for the pending aggravated robbery charge.  Tr. Vol. 16 at 49.   In a second interview, however, Johnson waived his constitutional rights and confessed to greater involvement in the murders.  His second statement conducted by Houston Police

Department Detective Clement Abbondondalo included an admission that he raped the victim and fired shots that night. After this statement and continued investigation, the State of Texas charged Johnson with capital murder.

The State did not plan on putting the statements derived from Johnson's first police interview into evidence. The trial court denied Johnson's motion to suppress his second statement. When Johnson challenged the denial of his suppression motion on direct appeal, the Court of Criminal Appeals found that Johnson had "invoked his right to counsel." *Johnson*, 2010 WL 359018, at *7. After reviewing the lower court's findings and transcribing the challenged portion of the first interrogation, the Court of Criminal Appeals resolved Johnson's claim as follows:

> When an accused of his own volition resumes talking after invoking his right to counsel, this conduct may constitute initiating further communication. Here, [Johnson] continued to talk without prompting. In the context of Hargrave's earlier comment that he did not believe [Johnson] had told him everything, [Johnson's] post-invocation statement, insisting that he had told Hargrave everything and reiterating a prior statement about the facts of the offense, conveyed a willingness to talk about the investigation and constituted the initiation of further communication. Therefore the police were not prevented from approaching [Johnson] on a later date, provided that [Johnson] knowingly and intelligently waived his rights before further interrogation.
>
> . . .
>
> The record demonstrates that on June 21, 2006, [Johnson] invoked his right to counsel during his interview with Hargrave. However, during that same interview, he initiated further communication. Two days later, on June 23, 2006, [Johnson] knowingly and intelligently waived his right to counsel before he made his statement to Abbondondalo. Hence, the trial court did not abuse its discretion by denying [Johnson's] motion to suppress his statement to Abbondondalo.

*Id.* at *6-7 (citations omitted).

This Court's August 19, 2013 Memorandum and Order denied habeas relief on the other claims in Johnson's petition, but ordered the parties to provide additional briefing on "whether: (1) Johnson made an unambiguous invocation of the right to counsel; (2) the police tried to clarify his

4

request; and (3) Johnson reinitiated communication with the police." Dkt. 19 at 28.[3] The parties'

renewed briefing provides an adequate basis for the Court to adjudicate Johnson's claim.

## II. ANALYSIS

For federal relief to become available under the Anti-Terrorism and Effective Death Penalty

Act ("AEDPA"), Johnson must show that the state court's decision was "contrary to, or involved an

unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Courts

reviewing a claim that the police ignored a defendant's Fifth Amendment rights engage in "two

distinct inquiries. First, courts must determine whether the accused actually invoked his right to

counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to

further questioning only on finding that he (a) initiated further discussions with the police, and (b)

knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95

(1984) (citations omitted). Simply, "invocation and waiver are entirely distinct inquiries, and the

two must not be blurred by merging them together." *Id*. at 98.

The AEDPA guides this Court's analysis of whether Johnson invoked, and then himself set

aside, his constitutional rights. Because the state courts identified the relevant Supreme Court

precedent, federal relief only becomes available to Johnson when he shows that the state court

decision was "an unreasonable application of [the Supreme Court's] clearly established

precedent" which "correctly identifie[d] the governing legal rule but applie[d] that rule unreasonably

to the facts of [his] case." *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1703 (2014). This

Court's review centers on the reasonableness of the relevant state court's decision, not the integrity

---

[3]        In addition, the Court ordered the parties to discuss whether any error in the admission of Johnson's
second statement to police harmed the defense. Given the Court's resolution of the Fifth Amendment claim, the Court
will not address Respondent's arguments regarding harmlessness of any error.

of its reasoning.  *See Trottie v. Stephens*, 720 F.3d 231, 241 (5th Cir. 2013) (stating that federal habeas courts review only the "ultimate legal determination by the state court – not every link in its reasoning."); *Green v. Thaler*, 699 F.3d 404, 414 (5th Cir. 2012) ("[W]e only review the state court's actual decision, not the written opinion on which it is based."); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.").   Federal law tolerates mistakes in reasoning so long as the state courts arrive at the correct result.  *See Moore v. Dretke*, 182 F. App'x 329, 335 (5th Cir. 2006) ("[W]e cannot second guess a state court's decision just because its reasoning is wrong.").   Thus, under the AEDPA's demanding review, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786-87 (2011); *see also Woodall*, ___ U.S. at ___, 134 S. Ct. at 1702.

    Johnson's remaining claim requires an evaluation of whether he clearly invoked his right to counsel and then whether his continued communication reinitiated contact with the police.

## A.    Invocation

    Johnson argues that he made a valid request to speak only after the appointment of counsel.  "[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994); *see also Maryland v. Shatzer*, 559 U.S. 98, 105 (2010); *Montejo v. Louisiana*, 556 U.S. 778, 794 (2009).  "In the context of invoking the *Miranda* right to counsel," the Supreme Court has "held that a suspect must do so 'unambiguously.'  If an

6

accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation[.]" *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (quoting *Davis*, 512 U.S. at 459).   Under Supreme Court precedent,

> [a]lthough a suspect need not speak with the distinction of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

*Davis*, 512 U.S. at 459 (citation omitted); *see also United States v. Carrillo*, 660 F.3d 914, 922 (5th Cir. 2011) "[A] suspect's ambiguous reference to counsel is not enough to trigger the requirement that police must immediately stop questioning the suspect.").   In the end, "a statement either is such an assertion of the right to counsel or it is not."   *Smith*, 469 U.S. at 97-98 (quotation omitted).

Here, Johnson unquestionably mentioned an attorney.   Johnson's words, however, have subsequently led to divergent opinions on whether he intended to end his interaction with the police until speaking with counsel.   Both the trial and appellate courts had no problem finding that Johnson's sentence wherein he mentioned an attorney had invoked his constitutional rights.   Both courts expressed discomfort because Johnson kept talking thereafter.   The trial court found that Johnson "unambiguously invoked his Fifth Amendment right to counsel in the first recorded statement," but observed that his "statement contained several sentences uttered immediately after his comment about an attorney that could appear ambiguous."   Supplemental Clerk's Record at 19. In essence, the trial court's findings differentiated between the sentence mentioning an attorney and the comments immediately following it.   Because "the sentence regarding an attorney occurred during a lengthy monologue from [Johnson] in which he kept speaking for some time after using the word lawyer," the trial court found that "the length of the monologue and the continuation of speech

after the use of the term lawyer was confusing and ambiguous to the officers." Supplemental Clerk's Record at 9.[4]

The Court of Criminal Appeals deferred to the lower court's finding that Johnson "unambiguously invoked his right to counsel," but also emphasized that "then he kept talking. [He] also interrupted and spoke over a detective before making another statement about the facts of the offense." *Johnson*, 2010 WL 359018, at *5. The Court of Criminal Appeals focused its decision on finding that Johnson's failure to stop talking reinitiated communication with the police.

The Court asked the parties to brief whether Johnson made an unambiguous request for counsel. As the briefing shows, reasonable minds can disagree on how to interpret Johnson's words. Perhaps if viewing the operative sentence in which Johnson mentioned an attorney independent of all other factors, little confusion would exist. The key phrase in Johnson's rambling statement – "*I don't even want to talk no more until I get me a lawyer or something*" – may have evinced an intent to invoke constitutional rights. Johnson had obviously mentioned an attorney, and possibly communicated that he wished to end questioning. However, merely mentioning an attorney does not trigger *Miranda*'s prophylactic protections. "[T]he word 'attorney' has no talismanic qualities. A defendant does not invoke his right to counsel any time the word falls from his lips." *United States v. Cruz*, 22 F.3d 96, 98 (5th Cir. 1994) (citation omitted). Instead, a reviewing court must evaluate the totality of the circumstances to ascertain whether an inmate adequately exercised his constitutional rights. *See United States v. Laury*, 985 F.2d 1293, 1315 (5th Cir. 1993) ("In determining whether defendants have validly waived their *Miranda* rights, the court must take into

---

[4] Nonetheless, the trial court observed that, before the police interrupted him, Johnson was explaining that he wished to speak with an attorney "*because* he had already told them everything including the names of his accomplices." Supplemental Clerk's Record at 9 (emphasis added).

account the 'totality of the circumstances surrounding the interrogation.'") (quoting *United States v. McClure*, 786 F.2d 1286, 1289 (5th Cir. 1986)); *see also Bradley v. Meachum*, 918 F.2d 338, 342 (2d Cir. 1990) ("[A] court should examine the entire context in which the claimant spoke.") (quoting *United States v. Goodwin*, 470 F.2d 893, 902 (5th Cir. 1972)).  Importantly, courts must decide if a "reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel[.]"  *Davis*, 512 U.S. at 459.

Johnson's words carried meaning for the officers only in the entire context in which he made them.  Without pausing after saying he did not "even want to talk no more," Johnson continued talking.  Any unambiguity in the sentence saying that he wished to end the interrogation diffused as he continued it himself.  After that point, a reasonable officer could find Johnson's intent ambiguous.  The state suppression hearing testimony did not explore in depth the police officers' understanding of Johnson's comments.  While Johnson's words may have seemed to carry with them a sense of finality, Dkt. 19 at 29, Respondent persuasively argues that a reasonable officer could also think that Johnson wanted to continue talking as he returned to the same narrative as he had for hours.  The entire context would not have unequivocally signaled that Johnson wanted to end the interrogation.  *See McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (requiring the police to end questioning only when a suspect unequivocally requests to proceed with counsel present).

Because Johnson mentioned an attorney in "the midst of a continuous flow of conversation," "an objective listener could not have known anything more than that [he] 'might' have wanted the assistance of counsel, which is an insufficient invocation of Fifth Amendment rights." *United States,*

*v. Williams*, 446 F. App'x 587, 591 (4th Cir. 2011).[5]   The entire context of Johnson's monologue wherein he mentioned an attorney was ambiguous, and thus "the officers ha[d] no obligation to stop questioning him." *Davis* , 512 U.S. at 462.   The Court, therefore, finds no violation of Johnson's constitutional rights in the placement of his second statement before the jury.

## B.      Reinitiation

Even if Johnson had unambiguously requested counsel, the state courts found that Johnson revoked that invocation by reinitiating communication with the police.  If a suspect requests counsel, the police may not continue interrogation "until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis*, 512 U.S. at 458.   The Supreme Court has held that an inmate reinitiates interaction with the police when he demonstrates "a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983).

The words Johnson spoke after mentioning an attorney have created some confusion in this case.  The crux of the state courts' opinions is that Johnson mentioned the attorney but then retreated, re-engaging police officers in discussion with his next breath.[6]  Johnson bears the burden under the

---

[5]      When faced with similar colloquies where an inmate mentions his constitutional rights but then continues talking, federal courts have found no unequivocal invocation.  *See, e.g., Robertson v. Roberts*, 386 F. App'x 797, 804 (10th Cir. 2010) ("The videotape demonstrates that, even as Mr. Robertson stated his desire for an attorney, with his next breath, he would reveal information about the crime and continue talking without any prompting from officers."); *United States v. Stephenson*, 152 F. App'x 904, 906 (11th Cir. 2005) (finding when the inmate "continued to talk to the officers after stating that he did not want to talk" that he left "serious doubts that he effectively invoked his right to remain silent" because his "statement, followed by his initiation of further conversation, [did not] reflect[] an unambiguous and unequivocal invocation of his right to silence that would be clear to an objective police officer"); *United States v. Douglas*, 100 F. App'x 449, 458 (10th Cir. 2004) (finding no violation when the suspect "continued talking after invoking his right to counsel"); *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("Bradley cannot be said to have invoked his fifth amendment right regarding his willingness to discuss his involvement in the crime because, in the same breath, he denied any involvement.")

[6]      The trial court found that Johnson "kept talking. [Johnson] also interrupted and spoke over a detective before making another statement about the facts of the offense. . . . [W]hen [Johnson] continued to discuss the offense without prompting, he initiated further communication." *Johnson*, 2010 WL 359018 at *5.  The Court of Criminal Appeals' primary holding agreed that, because Johnson "continued to talk without prompting[,]" his "post-invocation (continued...)

AEDPA of showing that the state courts' decision was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

In the initial Memorandum and Order, the Court observed that "[a] reasonable interpretation of Johnson's comments is that he tried to explain why he wished to speak with an attorney." Dkt. 19 at 29. The Court asked the parties to discuss Johnson's intent as he continued talking. Johnson's additional briefing focused on arguing that he made a valid invocation of the right to counsel. Johnson did not elaborate on the meaning of the words he spoke without pause after asserting his rights. Respondent, however, provides "another reasonable interpretation – Johnson was simply continuing to deny that he knew anything about the murders . . . repeating the same lie that he had been telling the detectives for hours." Dkt. 28 at 7.

Given the discrete facts of this case, Johnson has not shown that the state courts "erred so transparently that no fairminded jurist could agree with that court's decision." *Bobby v. Dixon*, ___ U.S. ___, 132 S.Ct. 26, 27 (2011). The Supreme Court has been reluctant to "build a superstructure of legal refinements around the word 'initiate' in this context[.]" *Bradshaw*, 462 U.S. at 1046. Johnson has not pointed to any Supreme Court precedent clearly indicating whether an inmate reinitiates contact by invoking his constitutional rights during the middle of an uninterrupted statement. Johnson has not shown that the state courts were unreasonable in finding that Johnson reinitiated contact by referring to what he had already told police officers.

---

[6]    (...continued)

statement, insisting that he had told Hargrave everything and reiterating a prior statement about the facts of the offense, conveyed a willingness to talk about the investigation and constituted the initiation of further communication." *Id*. at *6.

More than his words alone, however, the fact that Johnson continued speaking would not signal to police officers that he wished to stop.  Given Johnson's failure to stop talking after saying he did not "want to talk no more," the state courts could reasonably conclude that the State did not violate Johnson's constitutional rights by putting the substance of his second police statement before the jury.  Because Johnson's intent was unclear, the state court's rejection of this claim was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ritcher*, ___ U.S. at ___, 131 S. Ct. at 787.

In conclusion, Johnson has not shown that the state courts were unreasonable in finding that the admission of his second police statement did not violate his constitutional rights.  Taken as a whole, Johnson never clearly indicated that he wished to talk to the police only through legal counsel.  Viewed independent from the context of his statements, a court could conclude that Johnson uttered one sentence arguably intending to invoke his right to counsel.  But a broader look at his entire colloquy, both before and after the police interrupted him, does not manifest a clear desire to do so. Johnson's rambling narrative could leave a reasonable police officer wondering whether he had asserted his constitutional rights.   Accordingly, the state courts were not unreasonable in finding no error in allowing the second statement to come before the jury.  The Court will deny Johnson's remaining ground for relief.

### III. CERTIFICATE OF APPEALABILITY

The AEDPA bars appellate review of a habeas petition unless a district or circuit court certifies specific issues for appeal.  *See* 28 U.S.C. § 2253(c); FED.R.APP.P. 22(b).  Johnson has not yet requested that this Court grant him a Certificate of Appealability ("COA"), though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A court

12

may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Clear and binding precedent forecloses relief on the claims denied in this Court's initial Memorandum and Order.  While settled precedent forecloses relief on Johnson's Fifth Amendment claim, the Court finds his arguments deserve "encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).  This Court will only certify appellate review of Johnson's Fifth Amendment claim.

### IV. CONCLUSION

For the reasons discussed above, the Court will deny Johnson's remaining habeas claim.  The Court will only issue a Certificate of Appealability with regard to Johnson's Fifth Amendment claim.

Signed at Houston, Texas on June 25, 2014.

Gray H. Miller
United States District Judge

13