IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEXTER JOHNSON, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIV. ACT. NO. 4:11-cv-02466 |
| | § | |
| LORIE DAVIS, Director, | § | *DEATH PENALTY CASE* |
| Texas Department of Criminal | § | *Execution Date 5/2/2019* |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## RESPONDENT'S OPPOSITION TO
## MOTION FOR STAY OF EXECUTION AND
## MOTION TO TERMINATE LEAD COUNSEL

**The State of Texas is scheduled to execute Movant Dexter Johnson on May 2, 2019, after 6 p.m. (CT).** Johnson was properly convicted and sentenced to die for the rape and murder of Maria Aparece but committed four other murders for which he was not convicted including Aparece's boyfriend who was abducted with her. Johnson has exhausted his state and federal appeals but seeks a stay of execution based on the alleged ineffectiveness of federal habeas counsel. But instead of filing a substantive motion for relief, Johnson relies upon 18 U.S.C. § 3599(e) and *McFarland v. Scott*, 512 U.S. 849 (1994), to seek further delay of these proceedings. Johnson is not entitled to a stay under either the statute or existing caselaw. This Court

should deny both his request for a stay of execution and his request to terminate lead counsel.

## STATEMENT OF THE CASE

### I. History of the Proceedings

Johnson was indicted, convicted, and sentenced to death for the robbery, kidnapping, and murder of Maria Aparece. ROA.8799-802. His conviction and sentence were affirmed on direct appeal. *Johnson v. State*, No. 75,749 (Tex. Crim. App. January 27, 2010) (unpublished), *cert denied*, 130 S. Ct. 3515 (2010); ROA.8803-815. While his direct appeal was still pending, Johnson also filed a state application for writ of habeas corpus, which the Texas Court of Criminal Appeals denied. *Ex parte Johnson*, No. 73,600-01, Per Curiam Order dated June 30, 2010; ROA.8446, 8452-487. A year later, Johnson filed a federal petition for habeas corpus relief under 28 U.S.C. § 2254 raising a total of eleven claims. ROA.8-204. Following the Director's answer, this Court issued its 2013 opinion (2013 Opinion) and denied relief on all but Johnson's claim that his custodial statement was admitted in violation of his Fifth Amendment rights, on which the Court ordered the parties to provide additional briefing. ROA.370-419. After taking into consideration the supplemental briefing of both parties, this Court then issued the 2014 opinion (2014 Opinion) and denied relief on Johnson's Fifth Amendment claim as well, but determined that

the claim deserved "encouragement to proceed further" and certified only that claim for appeal. ROA.499-511.

Johnson appealed the Court's decision on his Fifth Amendment claim to the appellate court, and simultaneously requested an additional COA for four other issues raised in his federal petition. On July 2, 2015, the Fifth Circuit issued an unpublished opinion affirming the district court's denial of habeas relief on Johnson's Fifth Amendment claim and denying his request for additional COA. *Johnson v. Stephens*, 617 Fed. App'x. 293 (5th Cir. 2015). Johnson filed a petition for certiorari review which was denied. *Johnson v. Stephens*, 136 S. Ct. 980 (2016).

On June 6, 2017, Johnson filed a motion for new trial in this Court. ROA.585. Johnson claimed that because the Court had earlier disposed of the bulk of his claims and did not enter a separate final judgment, the Court retained jurisdiction over those claims. This Court denied Johnson's motion and his motion for reconsideration. ROA.823, 831. Johnson requested and was denied a COA by the Fifth Circuit Court of Appeals. *Johnson v. Davis*, slip Op. No. 17-70032 (5th Cir. Aug. 24, 2018) (per curiam). And, the Supreme Court denied him a writ of certiorari. *Johnson v. Davis*, No. 18-6834 (Mar. 18, 2019).

The Northern District of Texas Capital Habeas Unit (CHU) sought their appointment as co-counsel based on an alleged conflict of interest because lead

counsel represented Johnson during both federal and state habeas proceedings. The CHU now seeks to terminate lead counsel's representation and a stay of execution. The Director opposes both motions.

## II.   Facts of the Crime

The Fifth Circuit previously summarized the facts of the offense in its unpublished opinion denying Johnson a COA:

> During the early morning hours of June 18, 2006, Johnson and four friends were driving around the neighborhood looking for someone to rob. Johnson's companions were: (1) Keithron Fields, whom Johnson considered a brother; (2) Timothy Randle, who was driving that night; (3) Ashley Ervin, the owner of the car; and (4) Louis Ervin, Ashley's fifteen-year-old brother. Louis Ervin testified as to the events that took place that night.
>
> The group eventually came upon Maria Aparece and her boyfriend, Huy Ngo, talking while sitting inside Aparece's blue Toyota Matrix. Johnson ordered Randle to turn the car around and park alongside the curb because he wanted to "jack the people that was in the car." He asked Fields if he was ready and placed a black bandana over his mouth while Fields pulled the hood on his jacket over his head. Brandishing a shotgun, Johnson ran up the driver's side and threatened to bust through the window if Aparece did not open the car door. Fields was pointing a medium-sized black gun towards the passenger side. Although she refused at first, Aparece eventually complied and opened the door. Johnson pulled Aparece from the car by her hair and forced her into the backseat of the Matrix while Fields shoved Ngo into the backseat as well. Johnson ordered Louis Ervin into the backseat with the victims while he and Fields climbed into the front. Johnson then drove the group around for close to ten minutes demanding money from Aparece and Ngo, but they did not have any. Angered, Johnson drove around for another twenty minutes or so searching for a wooded area while Aparece cried and begged for her freedom. They

eventually found a park with a wooded area, and Johnson parked the Matrix in the woods. Randle and Ashley Ervin, who had been following closely in her car, parked nearby. Fields forced Ngo out of the Matrix and onto his knees while Johnson climbed into the backseat and raped Aparece at gunpoint. Fields held a gun to Ngo's head and taunted him as he was crying, saying things like "My brother in there having sex with your girlfriend. What you going to do about it?" Afterward, Johnson told the couple that "it was the end right here" and that he was going to "off them." Although they both continued to cry and Aparece begged for her life, Johnson and Fields marched the couple into the woods and shot them both once in the head.

Immediately after the murders, Johnson and Fields, driving Aparece's blue Matrix, caught up with the rest of their companions at a stoplight. Johnson and Fields were laughing and playing loud music. Before ordering them to follow him to a gas station, Johnson boasted, "Man, I had to go ahead and off them people." At the gas station—where police obtained surveillance video of the Matrix—Louis Ervin asked Johnson why he killed the couple, to which Johnson replied that Johnson had said the name "Louis" to the victims during the robbery and that "they didn't want to give him no money." Johnson also stated that "killing people is what he do." Later, Johnson took the group on a shopping spree at two separate Walmarts where police later obtained surveillance video showing Johnson, Fields, and Randle using Aparece's credit card. Johnson was arrested three days later for possession of marijuana and was quickly linked to the disappearance of Aparece and Ngo.

*Johnson v. Stephens*, 617 Fed. Appx. 293 (5th Cir. 2015).

## III. Evidence Relating to Punishment

In addition to the evidence of two murders presented at the guilt/innocence phase of trial, the jury also heard testimony of Johnson's considerably violent criminal behavior in the weeks surrounding the instant offense. First, the prosecution called Vincent Luong to testify at guilt/innocence

5

that he was kidnapped and robbed in almost the same manner as the victims in this case by Johnson. 23 RR 170-197. This robbery took place June 19, 2006—the day after Johnson murdered Aparece and Ngo. *Id*. at 171.

The State presented evidence at the punishment phase that Johnson had participated in three additional murders and one aggravated robbery in the weeks surrounding the murders of Aparece and Ngo. In the first murder, Johnson shot and killed Brady Davis, Jr., at a carwash in Houston on May 26, 2006. 27 RR 156-59; 28 RR 223-24; 29 RR 271-73. A witness accompanying Davis had gone to get coffee, only to return to find Davis lying on the ground, shot. 29 RR 224-25. Johnson and Alvie Butler approached Jose Olivares and his nephew, Edgar Cortinas, as they were using a payphone on June 16, 2006. 29 RR 89-102, 107-108, 173-74. When Cortinas attempted to flee, Johnson shot at him, hitting him in the arm. *Id*. at 99-102. Olivares then lunged at the attackers to prevent them from shooting his nephew, and Johnson and Butler shot Olivares three times, killing him. *Id*. Finally, the police also linked Johnson to the murder of Jose Lopez, who was found shot in the head in his red Ford Tempo. 27 RR 164-67; 28 RR 34, 40-45, 53-55, 65-66; 29 RR 136, 141,

144, 151, 267-70. Firearms evidence showed that the same gun that fired the bullets that killed Aparece also killed Lopez. 30 RR 111-12.

In addition to the multiple murders, the State presented evidence that Johnson had participated in multiple aggravated robberies. Johnson and accomplices robbed Julie Fletcher at gunpoint outside of her apartment complex. 27 RR 14-31. On June 19, 2006—a day after Johnson murdered Aparece and Ngo and the same day Vincent Luong was kidnapped and robbed—Johnson and his cohorts approached Mahmood Hassan as he was leaving for work in the early morning hours. 27 RR 46-61. Fearing the approaching men, Hassan screamed and ran towards his house, leaving his beige Toyota Camry running. 27 RR 49-55; 29 RR 207-10. The men drove off in the car, which was later recovered by police. 27 RR 47-48, 51, 55-56, 60, 67; 29 RR 207-10. Johnson and the group also robbed Clinton Henson at gunpoint outside of a McDonald's in Sealy, Texas, stealing his credit cards, wallet, and rental car. 27 RR 67, 71, 84-93, 102-103; 28 RR 9-20; 29 RR 268, 273-76.

Finally, the State presented the testimony of Timothy Randle, who described in detail the events of Aparece's rape and murder and corroborated most of Louis Ervin's guilt/innocence testimony. 29 RR 235-54. Randle testified that Johnson told him that he "offed both of them," explaining that he shot Ngo "execution style," and that Aparece started screaming after that. 30 RR 28-29.

He described the robbery and murders as Johnson's idea and occurring under Johnson's direction. 29 RR 237-250. Randle also testified about the group's aggravated robbery of Vincent Loung after the Aparece and Ngo murders. *Id*. at 255-66. According to Randle, Johnson told him to have Keithron Fields kill Luong, but Randle refused and instead released him. *Id*. at266.

In addition, Randle testified about the murders of Jose Lopez and Brady Davis, Jr. Id. at 267-73. He described in detail how he was driving Clinton Henson's stolen rental car while Johnson, Fields, and Butler were in the blue Matrix when they stopped behind Lopez's red Tempo. *Id*. at 267-70. Fields and Butler got into Lopez's car, and Johnson then led them to a dead-end street. *Id*. At the time, Randle believed they were only going to rob Lopez, but Johnson later announced they had "offed him." *Id*. Johnson also told Randle about the murder of Davis, pointing out the car wash where it happened and stating that "the dude started acting crazy" so he shot him. *Id*. at 271-73.

## ARGUMENT

## I. This Court Lacks Jurisdiction to Enter a Stay and Johnson Is Not Entitled to a Stay of Execution.

As support for his motion for stay of execution, Johnson mistakenly relies upon *McFarland v. Scott,* 512 U.S. 849 (1994), a pre-AEDPA case that has been superseded by statute. He asserts that once a capital defendant invokes his § 3599 rights, a federal court has jurisdiction to enter a stay. But *McFarland*

contemplated a case where the petitioner had not had an initial round of federal habeas review. In fact, the only statutory authority for a federal court to stay an execution comes from the federal habeas corpus statute which "grants any federal judge 'before whom a habeas corpus proceeding is pending' power to stay a state-court action 'for any matter involved in the habeas corpus proceeding.'" *McFarland*, 512 U.S. at 857 (quoting 28 U.S.C. § 2251); *see also Rosales v. Quarterman*, 565 F.3d 308, 311 (5th Cir. 2009). But there is no federal habeas action currently pending before this Court. And if no habeas petition is pending in the federal courts, then "both the district court and [the circuit] court are without jurisdiction to enter a stay of execution." *Rosales*, 565 F.3d at 311. Thus, this Court lacks subject matter jurisdiction over the request for a stay of execution.

## A. This Court lacks jurisdiction to stay Johnson's execution because there is no petition pending in that court.

As the Fifth Circuit has said, "The power to issue a stay of execution comes from § 2251, and the question is whether there is a pending or potential habeas corpus proceeding before the court." *Rosales*, 565 F.3d at 311 (citing *Teague v. Johnson*, 151 F.3d 291 (5th Cir.1998) ("once the appellate mandate issues, a habeas petition is no longer pending before the court of appeals, and we have no jurisdiction to stay proceedings under § 2251")); *see also Williams v. Cain*, 143 F.3d 949, 950 (5th Cir. 1998) (holding district court has no power

under § 2251 to stay execution when there is no pending habeas proceeding));

*Howard v. Dretke*, 157 Fed.Appx. 667, 670-72 (5th Cir.2005) (unpublished) (holding both the district court and the court of appeals lacked jurisdiction to grant stay of execution in conjunction with motion for appointment of counsel that was not tied to pending or proposed habeas proceeding in the district court, relying on the language of § 2251, *Williams*, and *Teague*). Section 2251(a)(1) of Title 28 grants federal courts the authority to stay state court proceedings when a federal habeas corpus proceeding is pending. Moreover, § 2251(a)(3) grants federal courts authority to stay an execution after a state prisoner files an application pursuant to § 3599(a)(2) for appointment of new counsel in a court that has jurisdiction to entertain a habeas corpus application regarding that sentence. But presently no habeas petition is pending nor can Johnson file one without permission from the circuit court and Johnson does not present the unusual set of facts that would permit this Court to stay based on the appointment of counsel alone.

In *McFarland* the Supreme Court held that once a petitioner invokes his right under § 3599 (then codified as 21 U.S.C. § 848(q)) to appointed counsel, a federal court has jurisdiction to stay the petitioner's execution. 512 U.S. at 858 (citing § 2251). In that case, the petitioner sought appointment of counsel to file his *initial* federal habeas petition. *Id*. at 853. The Court held that

invocation of § 3599 for that purpose, rather than the filing of the habeas petition itself, constituted the commencement of a federal habeas proceeding. *Id*. at 855–57. Once a petitioner invokes his right to appointed counsel, a federal court has jurisdiction to stay his execution "[b]ecause § 2251 expressly authorizes federal courts to stay state-court proceedings 'for any matter involved in the habeas corpus proceeding.'" *Id*. at 858. After deciding that a federal court would have jurisdiction to stay the petitioner's execution, the Court explained that § 2251 does not mandate a stay. *Id*. at 858. Rather, that decision rests in the discretion of the court. *Id*. The Court stated that a petitioner ordinarily will have the opportunity to obtain appointed counsel and file an initial habeas petition before a scheduled execution. *Id*. But if the petitioner does not have the opportunity for "counsel meaningfully to research and present" the petitioner's claims, then declining to stay the petitioner's execution would be clearly improper. *Id*.

Yet *McFarland* was decided long before subsections (a)(2) and (a)(3) were added to § 2251, and the 2005 amendment of § 2251 defined "pending" to exclude a habeas corpus proceeding where a petition has not actually been filed. *Hall v. Ramirez*, No. 1:18-cv-00218-BLW, 2018 U.S. Dist. LEXIS 130125, at *5 (D. Idaho July 31, 2018). The amendment specifically added subsection (a)(3), permitting but a temporary stay prior to the filing of a habeas petition.

*Id.* at *5-6. But Johnson does not show that he is entitled to a stay under subsection (a)(3).

In *Battaglia v. Stephens,* 824 F.3d 470, 475 (5th Cir. 2016) and *Charles v. Stephens,* 612 F. App'x 214, 222 (5th Cir. 2015), the Fifth Circuit held that a federal court has jurisdiction under § 2251 to stay a petitioner's execution once the petitioner invokes his § 3599 right to appointed counsel "to make the [petitioner's] § 3599 right effective." *Charles*, 612 F. App'x at 219 (citing *McFarland*, 512 U.S. at 858); *see Battaglia*, 824 F.3d at 475.[3] But in so holding, the Court conflated two parts of *McFarland*: (1) whether a court has jurisdiction to stay a petitioner's execution and (2) whether a court *should* stay the execution. The Court in *McFarland* did not hold that a petitioner's lack of time to make his § 3599 right "effective" confers jurisdiction on a federal court. 512 U.S. at 858. Rather, it held that a motion for appointment of counsel for the purpose of filing an *initial* habeas petition confers jurisdiction on a federal court to stay the petitioner's execution. *Id*. at 858. The Court then stated that a court *should* stay the execution if the petitioner lacks the opportunity for counsel to file a petition. *Id*. at 858.

---

[3]     *See also Ramirez v. Dretke*, 675 F. App'x 478, 479 (5th Cir. 2017) (denying motion to vacate stay of execution where petitioner asserted his appointed counsel abandoned him for purposes of filing a clemency petition); Order at 4, *Ramirez v. Davis*, No. 2:12-CV-410 (S.D. Tex. Jan. 31, 2017), ECF No. 48.

To the extent *Battaglia* and *Charles* read *McFarland* to confer jurisdiction on a federal court to stay an execution based on a lack of time between appointment of counsel and the petitioner's execution date, such a reading is not supported by *McFarland*. *Charles*, 612 F. App'x at 219. Jurisdiction to stay an execution does not continue indefinitely after the petitioner invokes § 3599 to file an initial habeas petition. Indeed, the Court held prior to *Battaglia* that "[t]he power to issue a stay of execution comes from § 2251, and the question is whether there is a pending or potential habeas corpus proceeding before the court." *Rosales*, 565 F.3d at 311 (citing *Teague*, 151 F.3d at 291; *see also Williams*, 143 F.3d at 950.[4] Consequently, *Battaglia*, *Charles*, and *Ramirez* directly contradict the Court's earlier decisions in *Rosales*, *Teague*, *Williams*, and *Howard* to the extent they hold that a court has jurisdiction to enter a stay of execution absent a pending petition.

---

[4]     *See also Howard v. Dretke*, 157 F. App'x 667, 671 (5th Cir. 2005) (explaining that the holding in *McFarland* "that the district court would have jurisdiction to stay an execution upon the filing of a motion for appointment of counsel was *directly related* to the fact that the petitioner's request for counsel initiated a 'habeas corpus proceeding' before the district court under § 2251") (emphasis added); *Turner v. Johnson*, 106 F.3d 1178, 1182 (5th Cir. 1997) ("The *McFarland* Court was concerned only with that period of time between the habeas petitioner's motion for the appointment of counsel and the filing of the initial petition."); *Preyor v. Davis*, No. SA-10-CA-857-FB, 2017 WL 4481212, at *5 (W.D. Tex. July 7, 2017); *Ruiz v. Davis*, No. SA-03-CA-303-OLK, 2017 WL 5476397, at *3 (W.D. Tex. Jan. 30, 2017).

Moreover, as discussed below, the Fifth Circuit in *Battaglia*, *Charles*, and *Ramirez* effectively created an exception to *Rosales*, finding that courts have jurisdiction in the limited circumstances where (1) the petitioner raises a newly-ripe claim challenging his competency to be executed or (2) the petitioner has been abandoned by appointed counsel and is, as a result, unrepresented for purposes of filing a competency challenge or clemency petition. But the facts here—where Johnson has never been abandoned by appointed counsel, does not suggest he may be incompetent to be executed, and does not presently lack counsel, and has counsel to file a clemency petition— are controlled by the Fifth Circuit's earlier holdings in *Rosales*, *Teague*, *Williams*, and *Howard*.

By way of example, the court of appeals held in *Rosales* that federal courts do not have jurisdiction to grant a stay "to allow . . . new counsel time to prepare and make a filing with the Clemency Board" where there was "no dispute . . . that no habeas petition remain[ed] pending in the federal courts." *Rosales*, 565 F.3d at 311. The only way *Rosales* and *Ramirez* can be reconciled is if *Ramirez* applies only to the limited circumstance where (as in *Battaglia*) the petitioner is abandoned by counsel and where counsel fails to ensure a clemency petition was filed. *See Arnold v. U.S. Dep't of Interior*, 213 F.3d 193,

196 n.4 (5th Cir. 2000) ("To the extent that a more recent case contradicts an older case, the newer language has no effect.").

Similarly, the Fifth Circuit determined in *Kutzner v. Cockrell*, that the petitioner was not entitled to appointed counsel for the purpose of filing a successive habeas petition. 303 F.3d 333, 338 (5th Cir. 2002) (quoting *McFarland*, 512 U.S. at 856). This Court later explained that *Kutzner*'s holding, properly understood, is "that the relief enunciated in *McFarland* does not apply to successive habeas petitioners who *had been* afforded sufficient opportunities to investigate the factual bases of their proposed claim." *In re Hearn*, 376 F.3d 447, 453 (5th Cir. 2004) (*Hearn I*) (holding that courts are not barred from appointing counsel to prepare a successive habeas petition). But, as Johnson fails to note, the Fifth Circuit clarified that its holding in *In re Hearn* applies under extremely limited circumstances: where the petitioner has filed state and federal habeas petitions, presently lacks appointed counsel, and has proposed an intellectual-disability claim that was not previously available. *In re Hearn,* 389 F.3d 122, 123 (5th Cir. 2004) (*Hearn II*). Left unlimited, the circuit court's broader holding in *Hearn I* would have contravened the rule of orderliness. *See Hearn II*, 389 F.3d at 123 ("Consequently, this decision does not imply that all defendants are entitled to § 848(q)(4)(B) counsel for *all* successive habeas actions.").

In the same way, the Fifth Circuit's seemingly broad holdings in *Battaglia* and *Charles* could be interpreted to create an entitlement to a stay of execution based solely on a late motion for appointment of counsel that is untethered to any pending petition or even a suggested potential avenue for relief. But such an interpretation would result in a direct conflict with § 2251 and *Rosales. Rosales*, 565 F.3d at 311 ("*McFarland* does not grant the district court or this court greater authority to stay an execution than is found in the statutory language of 28 U.S.C. § 2251."); *see Howard*, 157 F. App'x at 671 (declining to interpret "*McFarland's* seemingly broad pronouncement of jurisdiction" where the petitioner's motion for a stay of execution "was not directed at a pending or proposed habeas proceeding before the district court"). Johnson's overly broad reading of *McFarland* directly conflicts with *Rosales* in precisely that way. Consequently, this Court lacks jurisdiction to stay Johnson's execution.

**B.    The Fifth Circuit's holdings in *Battaglia*, *Charles*, *Ramirez* and *Gutierrez*[5] are inapplicable.**

Johnson's reliance on recent exceptions to the *Rosales* holding is also misplaced as these cases are distinguishable from his. In *Battaglia*, the Fifth

---

[5]    *Gutierrez v. Davis*, No. 18-70028 (5th Cir. Sep. 10, 2018) *denying motion to vacate stay, Gutierrez v. Davis*, No.1:09-cv-22 (S.D. Tex. Aug 22, 2018).

Circuit determined that the petitioner was "effectively abandoned" by counsel with respect to his attempts to raise a newly-ripe competency claim under *Ford v. Wainwright*,[6] in state court. 824 F.3d at 473–74. This Court held that the petitioner was entitled to new counsel to raise such a claim. *Id*. at 475. Because the petitioner had been abandoned and "effectively lacked counsel to prepare his claim of incompetency," this Court held that "it would be improper to approve his execution before his newly appointed counsel has time to develop his [incompetency] claim." *Id*.

*Battaglia* involved the necessary appointment of new, unfamiliar, counsel who required time to raise a competency claim in state court that had not been developed due to a lack of, or complete abandonment by, counsel. *Id*. at 474. The circumstances in *Battaglia* were sufficiently similar to *McFarland* as Battaglia had been prevented by the abandonment of counsel from developing a *Ford* claim, which he could not have raised until an execution date had been set. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998) (holding that *Ford* claim was not successive because it did not become ripe until the petitioner's execution date was set); *Green v. Thaler*, 699 F.3d 404, 410 n.3 (5th Cir. 2012). For that reason, the district court would have had jurisdiction to consider a petition raising a newly-ripe *Ford* claim. *See Panetti*

---

[6]     477 U.S. 399 (1986).

*Quarterman*, 551 U.S. 930, 947 (2007); *see also* 28 U.S.C. § 2251(a)(3) (requiring that a court granting a stay based on appointment of counsel "have jurisdiction to entertain a habeas corpus application regarding that sentence"). As such, the *Ford* claim was tantamount to a claim in an initial habeas petition that, like in *McFarland*, the inmate required the appointment of counsel to develop.[7]

In *Charles*, the court held it had jurisdiction to consider the petitioner's motions for funding and to stay his execution where the petitioner sought to also raise a newly-ripe *Ford* claim. 612 F. App'x at 219. The petitioner did not allege he had been abandoned by appointed counsel. Rather, the petitioner urged a "novel and limited" theory, seeking a stay of execution based on his purported need to investigate a *Ford* claim that had not been presented in state or federal court. *Id.* at 218. As in *Battaglia*, the petitioner's *Ford* claim was newly-ripe and would have been non-successive due to his scheduled execution.

In *Ramirez v. Davis*, the district court stayed the petitioner's execution where appointed counsel failed to file a clemency petition (for which the deadline to file was triggered by the scheduling of the petitioner's execution), failed to move to withdraw and substitute counsel, and failed to notify the court

---

[7]     As discussed above, a similar rationale formed the basis of the Court's extension of *McFarland* in *In re Hearn II*, to apply to a successive petition raising a previously unavailable intellectual-disability claim. 389 F.3d at 123.

18

of a needed substitution. Order at 7, *Ramirez v. Davis*, No. 2:12-CV-410 (S.D. Tex. Jan. 31, 2017). The petitioner had directed appointed counsel not to file anything on his behalf and to remove himself from the case. *Id.* at 4–5. Appointed counsel's failure to inform the court or ensure a clemency petition was filed prevented consideration of whether substitution was required. *Id.* at 8. In the end, no clemency petition was filed. "Without a stay, no remedy" was available to correct the breach that resulted from appointed counsel's failing in his "legal duty to file a state clemency petition." *Id.* The court held the district court had jurisdiction to grant a stay of execution. *Ramirez*, 675 F. App'x at 479; *see also Ramirez v. Davis*, No. 2:12-cv-140, Ord., Jan. 4, 2019, at 7 & n. 3.

Finally, in *Gutierrez*, the court permitted counsel to withdraw and appointed new counsel after Gutierrez was set for execution. Notably, counsel was permitted to withdraw based on her being removed from the Fifth Circuit's roster of approved attorneys under the Criminal Justice Act (CJA). This removal would have hampered counsel's ability to represent Gutierrez and left some doubt as to her status and qualification. But notably, none of these circumstances apply to the present case. Lead counsel for Johnson did not seek to withdraw. This Court did not remove Johnson's counsel. Rather Johnson has been permitted multiple lawyers who have assured this Court of their

qualifications and resources. But it is those lawyers who seek to remove Johnson's experienced lead counsel.

These cases recognize an exception to *Rosales* where (1) the petitioner seeks to raise a jurisdictionally permissible new claim such as a newly-ripe *Ford* claim or a previously unavailable intellectual disability claim and (2) where the petitioner has been abandoned by or otherwise deprived of established counsel. As the Supreme Court and the Fifth Circuit have explained, the primary concern of *McFarland* was that a death-sentenced inmate without representation would be required to "proceed without counsel in order to obtain counsel and thus would expose him to the substantial risk that his habeas claims never would be heard on the merits." 512 U.S. at 856. The concern animating *McFarland*, *Battaglia*, *Charles*, *Ramirez*, and even *Gutierrez* is in no way implicated here because (1) Johnson has been continually represented by counsel, (2) he has not attempted to raise a *Ford* claim or any previously unavailable claim, (3) lead counsel has filed a clemency petition, and (4) Johnson's current counsel has not abandoned him in any way. To the contrary, Johnson has exhaustively pursued relief from his death sentence through state court and a fully litigated initial federal petition, that he attempted to reopen and then appealed again through the federal courts.

Without a pending habeas application before the district court or some actionable substantive pleading, Johnson has failed to satisfy the statutory prerequisites necessary to invoke the court's jurisdiction to stay his execution. And without a showing of abandonment or withdrawal by appointed counsel and a consequent inability to pursue a newly ripe avenue for relief such as a *Ford* claim or a clemency petition, Johnson is not entitled to a stay under any exception to *Rosales*. Indeed, this case is similar to *Battaglia* only after Battaglia had been reset for execution. Then, the Fifth Circuit affirmed the lower court's refusal to grant a stay based only on a request for funding. *Battaglia v. Davis*, No. 18-70002, 2018 U.S. App. LEXIS 2477, at *11 (5th Cir. Feb. 1, 2018).

This Court should hold that it lacks jurisdiction to stay Johnson execution and deny his motion accordingly.

## II.    Johnson Is Not Entitled to a Stay of Execution Under *McFarland* or *Nken v. Holder*[8] Much Less for Any of Reasons He Lists.

Even assuming the Court has jurisdiction to enter a stay, Johnson must demonstrate an entitlement to one which he cannot do. A stay of execution is an equitable remedy. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "It is not available as a matter of right, and equity must be sensitive to the State's strong

---

[8]    556 U.S. 418 (2009).

interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* (citing *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004)). It is well-established that petitioners on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983). Indeed, "[a]pplications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the merits of the issue and so reliably to determine whether plenary review and a stay are warranted." *Id.* In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Id.* at 893. Here, Johnson fails to advance any valid claim for relief.

Johnson is seeking delay merely for the sake of avoiding his execution. But despite these assurances of resources and staff and, knowing at the time of appointment that Johnson was set for execution, Johnson attorneys seek only more time to investigate. This is not a valid reason for a stay of execution. Johnson has had twelve years to investigate.

In determining whether Johnson is entitled to a stay, a court might apply the standard under *McFarland* or *Nken*. *See Battaglia*, 824 F.3d at 475 (noting

a lack of clarity as to whether a motion for a stay is governed by *McFarland* or *Nken*). Under either standard, Johnson fails to establish an entitlement to a stay of execution.

### A. Johnson fails to demonstrate the circumstances sufficient to grant a stay under *McFarland*.

The Supreme Court in *McFarland* stated that permitting a petitioner's execution without affording appointed counsel the opportunity "meaningfully to research and present . . . habeas claims" in an initial habeas petition would be clearly improper. 512 U.S. at 858. But a court would not abuse its discretion where the petitioner "inexcusably ignores this opportunity and flouts the available process." *Id*. Johnson did not lack the opportunity to present his habeas claims. He filed his initial habeas petition which was thoroughly considered and rejected by this Court. After the conclusion of his federal proceedings, Johnson returned to this Court and filed a meritless Rule 60(b) motion which he also appealed all the way to the Supreme Court.

Yet, now Johnson seeks a stay of execution to relitigate his federal habeas petition based only on the CHU's assertion that lead counsel is conflicted and ineffective. But *McFarland* does not envision an entitlement to opportunities for successive rounds of litigation. *See In re Hearn II*, 389 F.3d at 123 (clarifying that *McFarland* does not entitle petitioners to appointed counsel for all successive habeas actions). Under *McFarland*, his failure to

avail himself of additional avenues of relief in a timely manner disentitles him to a stay. *Cf. Ryan v. Gonzales,* 568 U.S. 57, 71 (2013) (holding that the petitioner was not entitled to a stay of the district court proceedings under *McFarland* because, *inter alia*, he moved for a stay six years after his filing his initial habeas petition, which was "ample time" to present his claims).

To the extent Johnson argues a stay is appropriate under *McFarland* because the CHU lacks the time to identify potential claims, his claim also must fail. As the caselaw makes clear, under the statute only *new* counsel are entitled to a ninety-day stay of execution. 28 U.S.C. § 2251(a)(3); *Battaglia*, 824 F.3d at 474-76. But supplemental counsel, as the CHU is here, are not entitled to additional time, and the CHU produces no authority to show otherwise. Even so the CHU was appointed on February 7th, and afforded almost the ninety days contemplated by § 2251(a)(3). Ord., ECF No. 70 (Feb. 7, 2019). Thus, the CHU wishes to eliminate Johnson's lead counsel but declines to show this is in Johnson's best interest. Indeed, lead counsel is a "rich resource" of information regarding this case. *Speer v. Stephens*, 781 F.3d 784, 786 (5th Cir. 2015). Neither *McFarland* nor § 3599 entitle Johnson to new counsel to plow the same field ably plowed by previously-appointed counsel. *See Speer*, 781 F.3d at 786. This Court should not grant a stay of execution by extending *McFarland*'s guarantee of an adequate opportunity to file an *initial*

habeas petition to entitle Johnson additional time to pursue postconviction remedies such as a successive state or federal petition to which he is not entitled. *See In re Hearn II*, 389 F.3d at 123.

## B. Johnson cannot demonstrate he is entitled to a Stay under the *Nken* factors.

In considering whether to grant a stay under *Nken*, a court considers (1) whether the petitioner has made a strong showing that he is likely to succeed on the merits, (2) whether the petitioner will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies. *Charles*, 612 F. App'x at 218 n.7 (citing *Nken*, 556 U.S. at 425–15). The first two factors "are the most critical," and "[i]t is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted).

This Court specifically ordered the CHU to "explore whether Johnson can establish cause for the procedural default of any ineffective-assistance-of-trial-counsel claims pursuant to *Martinez*, and whether those claims merit relief, and whether a viable vehicle exists for raising those claims in federal court." Ord., ECF No. 70, at 2. But the CHU fails to follow this Court's directive. The CHU fails to identify any procedurally defaulted ineffective assistance of trial counsel claims that might form a basis for relief under

*Martinez*. Notably, the CHU asserts there are "[s]everal unpresented, potentially meritorious, claims for relief" that lead counsel failed to raise. Mot. to Term., ECF No. 76, at 18. But the CHU fails to realize that *Martinez* does not authorize an entirely new habeas proceeding. Instead the CHU attacks the effectiveness of federal habeas counsel which is not a basis for relief.

And although Johnson lists multiple alleged vehicles for his unnamed claims, he does not actually demonstrate these vehicles are appropriate or even possible. Mot. to Term., ECF No. 76, at 29-33. For example, Johnson asserts he could file a federal habeas corpus writ. Yet Johnson has already litigated one writ and must demonstrate a subsequent writ would not be successive, something he does not attempt to do. Nor could he. Among his claims there is no competency-to-be-executed claim and nothing suggesting he is innocent of capital murder. Johnson also asserts a Rule 60(b) motion is a possible vehicle. But Johnson has not and cannot make a strong showing that he is likely to succeed. Any new claims will be unexhausted, procedurally barred and outside of the statute of limitations. Even assuming that Johnson can overcome the procedural bar with *Martinez v. Ryan*, 566 U.S. 1, 17 (2012) and *Trevino v. Thaler*, 569 U.S. 413, 428-29 (2013), something he has not actually done, he will still have to demonstrate that the claim is timely and that extraordinary circumstances exist.

To succeed on a Rule 60(b) motion, the movant must show: (1) that the motion be made within a reasonable time; and (2) extraordinary circumstances exist that justify the reopening of a final judgment. *Edwards v. Davis (In re Edwards)*, 865 F.3d 197, 203 (5th Cir. 2017) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Johnson does not attempt to make either showing. Any attempt by Johnson to file a Rule 60(b) motion at this late date would be untimely. A motion under Rule 60(b)(6) must be made "within a reasonable time," "unless good cause can be shown for the delay." Fed. R. Civ. P. 60(c)(1); *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) (citing *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287-88 (5th Cir. 1985)). Reasonableness turns on the "particular facts and circumstances of the case." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (additional citations omitted). But *Pruett v. Stephens*, 608 F. App'x 182, 186-87 (5th Cir. 2015), held that a delay of fourteen months after the *Trevino* decision was unreasonably long. Further, as the Fifth Circuit held in *Clark v. Davis*, 850 F.3d 770, 781-82 (5th Cir. 2017), any purported conflict of interest arose from the *Trevino* decision on May 28, 2013. This Court very recently recognized this position in denying John Ramirez's Rule 60(b) motion as untimely despite the later appointment of conflict-free counsel. *Ramirez v. Davis*, No. 2:12-cv-140, Ord., Jan. 4, 2019, at 9-12. As this Court stated, "The Fifth Circuit held that the timeliness of

[petitioner's] motion did not depend on the date when new counsel represented him, but at a minimum 'when *Trevino* issued.' *Id*. at 10 (citing *In re Paredes*, 587 F. App'x 805, 825 (2014)).

Further, Johnson cannot demonstrate the extraordinary circumstances that warrant Rule 60(b) relief. As the Fifth Circuit has explained, because of the comparative leniency of Rule 60(b), petitioners sometimes attempt to file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions but "a federal court examining a Rule 60(b) motion should determine whether it either: (1) presents a new habeas claim (an 'asserted federal basis for relief from a state court's judgment of conviction'), or (2) 'attacks the federal court's previous resolution of a claim on the merits.'" *Edwards*, 865 F.3d at 203 (citation omitted). As the Court held, if the motion does either, then it should be treated as a second-or-successive habeas petition and subjected to AEDPA's limitation on such petitions. In contrast, a proper Rule 60(b) motion must show "a non-merits-based defect in the district court's earlier decision on the federal habeas petition." *Id*. at 204 (citing *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)). And if the motion attacks a defect in the integrity of the federal habeas proceedings, then the motion is not treated as a second-or-successive petition. *Edwards*, 865 F.3d at 204 (citation omitted). A Rule 60(b) motion based on "'habeas counsel's omissions ordinarily

does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably.'" *Id.* (citing *Clark v. Stephens*, 627 F. App'x 305, 308 (5th Cir. 2015)).

In fact, this is exactly what Johnson seeks. And what this Court recently denied in *Jennings v. Davis,* No. 4:09-cv-219, 2019 U.S. Dist. LEXIS 10295, 2019 WL 280958 (S.D. Tex. Jan. 22, 2019). The Court summarized the actions of supplemental counsel as follows:

> On September 20, 2018, Jennings filed a motion for appointment of new counsel. His motion argued that his former counsel labored under a conflict of interest. This was the case because the same attorney represented Jennings in both state and federal habeas corpus proceedings, and because a claim might exist under the *Martinez* rule, which would require a showing that state habeas counsel was ineffective. Because this is a death penalty case, this Court, in an abundance of caution, appointed conflict-free counsel on October 23, 2018 to determine if such a claim was available to Jennings. On December 21, 2018, Jennings filed a motion to stay his execution, arguing that his new counsel needs additional time to investigate possible claims. Respondent opposes the motion. On January 22, 2019, Jennings filed a motion for relief from this Court's prior judgment, arguing that his federal habeas proceedings lacked integrity because his counsel labored under a conflict of interest. He further argues that a meritorious claim of ineffective assistance of trial counsel was procedurally defaulted because prior counsel failed to raise the claim in Jennings' state habeas proceedings.

*Id.* What the Court omitted from this summary is that it held a live hearing on Jennings's motion to stay. *Jennings v. Davis,* No. 4:09-cv-219, Min. Entry Hearing, ECF No. 49 (Jan. 17, 2019). Only after this hearing, when counsel

feared the Court might rule against them as there was no substantive pleading to permit the Court jurisdiction, did they file the motion for relief from judgment. Which this Court promptly denied on timeliness grounds. *Id.* In that case, supplemental counsel also attacked the performance of lead counsel. This attack was severe considering that lead counsel had briefly been granted habeas relief and his case was heard by the Supreme Court. Yet no amount of demonstrated competence is sufficient to free habeas counsel from last minute litigation attacking their every decision. Which is why the Fifth Circuit affirmed this Court's decision noting that all Jennings's supplemental counsel were able to show was that counsel "may have been able to argue more than he did about the mitigation evidence." *Jennings v. Davis*, No. 19-70005, 2019 WL 384943, 2019 U.S. App. LEXIS 2938, at *11 (5th Cir. Jan. 28, 2019).

Johnson is not entitled to a "do over." He has not demonstrated a fundamental defect in his prior habeas proceedings. He has not even tried to show he is deserving of relief under *Martinez*. And Johnson has not shown he is likely to succeed in pursuing any alleged state vehicles for relief. First, the CHU severely misconstrues state court law in asserting that various claims could be raised in a successive petition. Mot. to Term., ECF No. 76, at 30. The CCA has never recognized *Martinez* as a basis for a non-abusive petition. *Ex parte Garcia*, No. WR-40,214-03, 2016 Tex. Crim. App. Unpub. LEXIS 192

(Crim. App. Feb. 9, 2016) (rejecting petitioner's clear request to review claims under *Martinez)*; *Ex parte Sells*, No. WR-62,552-04, 2014 Tex. Crim. App. Unpub. LEXIS 301 (Crim. App. Mar. 31, 2014) (same); *Ex parte Hernandez*, No. WR-62,840-02, 2012 Tex. Crim. App. Unpub. LEXIS 311 (Crim. App. Mar. 21, 2012) (same). Indeed, *Ex parte Graves*, 70 S.W.3d 103, 112-13 (Tex. Crim. App. 2002), specifically rejects the idea that ineffectiveness of habeas counsel is a basis for any type of relief. And the CCA has not overruled *Graves* despite many invitations to do so. In short, the CHU's assessment that a "*Martinez*-type analysis is perfectly consistent with the plain language of Article 11.071 § 5(a)(1)," is not based in actual law.

Further, to the extent that the CHU is correct that an intellectual disability claim could lawfully proceed, the matter is already before that Court. *Ex Parte Johnson*, No. 73,600-02, Sub. App. for Habeas Corpus (April 11, 2019). Finally, the CHU's belief that multiple record-based claims of trial error can be excused by Article 11.071, § 5(a) is unsupported by law or reason. None of Johnson's vaguely alleged claims implicate his guilt or his eligibility for the death penalty. The CCA is perfectly capable of interpreting its own law and staying Johnson's execution if appropriate. Indeed, the CHU's assertion that this Court should interfere with a state court order of execution for Johnson to proceed *in state court* violates the rules of comity. *Rose v. Lundy*, 455 U.S. 509,

518, (1982) (Federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.")(citations omitted).

Finally, the State has a strong interest in carrying out Johnson's sentence. This Court should not further delay justice for a stay of execution to prepare for entirely speculative successive rounds of litigation. *See Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.") (emphasis in original). Consequently, this Court should deny Johnson's motion for stay of execution.

## III. The CHU's Motion to Terminate Lead Counsel's Representation Should Be Denied.

Section 3599 of Title 18 "entitles indigent defendants to the appointment of counsel in capital cases, including habeas corpus proceedings." *Martel v. Clair*, 565 U.S. 648, 652 (2012). Section 3599(e) provides that appointed counsel:

> shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency

proceedings and proceedings for executive or other clemency as may be available to the defendant.

Under § 3599, appointed counsel is obligated to continue representing the inmate unless and until a court of competent jurisdiction grants a motion to withdraw. *Wilkins v. Davis*, 832 F.3d 547, 557–58 (5th Cir. 2016) ("[C]ounsel is authorized—and indeed obligated—to continue representing the defendant until the court permits him to withdraw."). When an indigent inmate moves for the appointment of substitute counsel under § 3599, a court must review the motion under the "interests of justice" standard. *Clair*, 565 U.S. at 652.

An indigent petitioner does not have an absolute right to the counsel of his choice. *Christeson v. Roper*, 135 S. Ct. 891, 893–94 (2015) ("Congress has not . . . conferred capital habeas petitioners with the right to counsel of their choice."); *cf. United States v. Romans*, 823 F.3d 299, 312 (5th Cir. 2016) ("In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict."). A petitioner also does not have the absolute right to have new counsel of his choice appointed where his one-year limitations period under AEDPA has expired. *Gamboa v. Davis*, Civ. Act. No. 5:15–CV–113 (W.D. Tex.) (DE 26) (unpublished order of Jul. 8, 2016) ("[P]etitioner does not possess an absolute right to have new counsel appointed in this capital habeas proceeding

[ ] more than four months after petitioner's federal habeas corpus counsel filed a federal habeas corpus petition, more than a month after petitioner's federal habeas counsel filed the last operative pleading in this cause, and long after the AEDPA's one-year statute of limitations on petitioner's federal habeas corpus petition expired.").

The CHU asserts this Court should terminate lead counsel because the current lead counsel operates under a conflict of interest. But precedent requires this Court to evaluate the "timeliness of the motion" to substitute. *Clair*, 565 U.S. at 663; *see Battaglia v. Stephens*, 824 F.3d 470, 472 (5th Cir. 2016); *Mendoza*, 783 F.3d at 208 (Owen, J., concurring). Both *Mendoza* and *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015) (the case the *Mendoza* panel relied upon), were cases still on initial federal habeas review. In fact, *Speer* even states that supplemental counsel should be appointed because of "the systematic benefits of efficiently resolving all potential claims as early in the habeas process as possible." 781 F.3d at 786. The CHU now complains about the position that they voluntarily undertook. Further, while they seek to denigrate lead counsel, they do not state what concrete actions they would take if given the lead role other than to seek more time to investigate. This strategy of delay cannot be borne.

The CHU's obvious motivation in seeking to terminate lead counsel is clearly to reset the § 2251(a)(3) timeline as discussed above. But this perverse result cannot be in the interests of justice. *Cf. Dunn v. Cockrell,* 302 F.3d 491, 493 (5th Cir. 2002) (Rule 60(b) motion filed for sole purpose of extending or resetting time for filing notice of appeal must fail). And indeed, delay will inevitably ensue if the requested substitution is granted. *Holiday v. Stephens*, CV H–11–1696, 2015 WL 10733909, at *1 (S.D. Tex. Oct. 22, 2015) ("If a new attorney were appointed, he or she would invariably argue that the pending execution date must be stayed to become familiar with the case."), *aff'd*, 806 F.3d 334 (5th Cir. 2015); *cf. Christeson*, 135 S. Ct. at 895 (holding that the petitioner's substitution request, "while undoubtedly delayed, was not abusive" where it was filed "well before the State had set an execution date"). This proposal would temporarily stay Johnson's execution to put him at the mercy of counsel unfamiliar with his case. And although the CHU suggests that various vehicles and claims exist, as discussed above, the CHU does not show substantial merit in any claim or any vehicle.

There is no evidence that present counsel has abandoned Johnson. *See, e.g.*, *Battaglia*, 824 F.3d at 474–75. As lead counsel details in his response, Johnson's claim of intellectual disability has been filed through a successive writ. And counsel plans to file a Motion for Authorization in the Fifth Circuit.

Both of these courts have the power to stay the execution if the evidence and vehicles are sufficient. And although the CHU attempts to demonstrate that present counsel suffers from a conflict of interest and was ineffective, their naked assertions that counsel failed to obtain relevant files are insufficient to terminate counsel, much less grant a stay of execution.

This Court is not "required to appoint a new lawyer just so [petitioner can] file a futile motion" or successive petition. *Clair*, 565 U.S. at 666; *see Battaglia*, 824 F.3d at 474 (stating that substitution is not required "when the [petitioner's] claims are 'indisputably' barred by procedural rules") (citation omitted). The Fifth Circuit has similarly stated, "We do not read the Supreme Court as requiring a second federally appointed lawyer to plow the same ground ably plowed by the first federal appointed lawyer with no suggestion or hint of shortcoming on his part." *Speer*, 781 F.3d at 786. Johnson has availed himself of all the proceedings to which he is entitled, including clemency. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) (holding that a federal habeas petitioner has a right to appointed counsel for the purpose of filing an initial federal habeas petition). Present counsel is obligated to continue representing his client throughout clemency and filed his application, *see Battaglia,* 824 F.3d at 474 (citing *Harbison v. Bell,* 556 U.S. 180, 186-87 (2009)), and is indeed the attorney best suited to the preparation of such a petition as he is the most

familiar with the case, *Harbison,* 556 U.S. at 193 ("[T]he work of competent counsel during habeas corpus representation may provide the basis for a persuasive clemency application."); *see also Batiste v. Davis,* No. 4:15-cv-01258 (S.D. Tex.) (DE 32) (unpublished order of March 29, 2017) (Court denied petitioner's motion to substitute counsel based upon a purported breakdown in communication, finding substitution after federal writ had been filed "would only add significant delay and . . . a new attorney likely could not litigate new habeas claims," but allowed counsel to submit name of additional attorney to aid litigation and increase communication.)

For the foregoing reasons, it is therefore in the interests of justice to deny substitution at this late stage. *See Clair*, 565 U.S. at 662 ("Protecting against abusive delay *is* an interest of justice. [. . .] The standard we adopt thus takes account of, rather than ignores or opposes, the State's interest in avoiding undue delay.") (emphasis in original). The precedent discussed above provides no basis for appointment of substitute counsel in the absence of a showing of abandonment, a breakdown in communication, or a conflict of interest. The CHU was appointed with a limited mandate to explore only whether there was a procedurally defaulted ineffective assistance of trial counsel claim that could be excused by *Martinez*. But instead of following this Court's orders, the CHU

seeks to investigate and demean lead counsel. Johnson's request for appointment of supplemental counsel should be denied.

## CONCLUSION

For the foregoing reasons, Johnson's motions to terminate the appointment of lead counsel and for stay of execution should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE MCFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*Counsel of Record

 s/ Ellen Stewart-Klein
*ELLEN STEWART-KLEIN
Assistant Attorney General
Criminal Appeals Division
Texas Bar No. 24028011
Southern District Bar No. 27861

ATTORNEYS FOR
RESPONDENT

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
Fax: (512) 320-8132

## CERTIFICATE OF SERVICE

I do herby certify that on April 22, 2019, I electronically filed the forgoing pleading with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following counsel of record, who consented in writing to accept the Notice as service of this document by electronic means:

Patrick F McCann
700 Louisiana, Ste 3950
Houston, TX 77002
writlawyer@justice.com

Jeremy Don Schepers
Federal Public Defender
525 S Griffin St, Ste 629
Dallas, TX 75202
jeremy_schepers@fd.org

s/Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General