IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| **DEXTER DARNELL JOHNSON**, | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-02466 |
| | § | |
| **LORIE DAVIS**, Director, | § | **DEATH PENALTY CASE** |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| *Respondent.* | § | |

**MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6)**

*Mr. Johnson is scheduled to be executed on August 15, 2019*

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers (24084578)
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
jeremy_schepers@fd.org
(214) 767-2746
(214) 767-2886 (fax)

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................i

TABLE OF AUTHORITIES .....................................................................iii

MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 60(b)(6).......................................................... 1

I.     Introduction. ........................................................................... 1

II.    Procedural Background..................................................................... 4

III.   The conflict of interest between Mr. McCann and Mr. Johnson is a
       defect in the integrity of Mr. Johnson's federal habeas proceedings. ............ 8

       A.   Mr. McCann developed a significant conflict of interest with
            Mr. Johnson in light of *Martinez* and *Trevino*, in the wake of
            which he failed to take appropriate steps to protect
            Mr. Johnson's interests. ..................................................... 9

       B.   While operating under a conflict of interest, Mr. McCann
            presented arguments to this Court and the Fifth Circuit that
            protected his own reputational and financial interests in direct
            contravention of Mr. Johnson's litigation interests. ........................... 13

IV.    The unique and extraordinary circumstances of this case justify
       reopening the judgment. ..................................................................... 16

       A.   Mr. McCann repeatedly took actions that were against the best
            interests of Mr. Johnson. ..................................................... 17

       B.   Mr. McCann failed to conduct investigations to support
            Mr. Johnson's habeas claims for relief. ....................................... 21

       C.   Mr. McCann failed to maintain a complete case file. ........................... 22

       D.   This Court did not act to remedy the conflict of interest that was
            apparent from the record. ..................................................... 24

V.     Mr. Johnson, newly represented by conflict-free counsel, has timely
       filed this motion for relief from judgment. ................................................ 25

VI.    Mr. Johnson should be permitted time to file an amended habeas
       corpus petition with conflict-free counsel. ................................................ 26

VII.   To the extent this Court believes factual disputes exist pertinent to
       the disposition of this motion, Mr. Johnson requests an evidentiary
       hearing. ..................................................................................... 27

CONCLUSION....................................................................................... 28

CERTIFICATE OF CONFERENCE ........................................................................... 29

CERTIFICATE OF SERVICE .................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barefoot v. Estelle,*
463 U.S. 880 (1993) ................................................................................ 21

*Buck v. Davis,*
137 S. Ct. 759 (2018) ................................................................................ 9

*Christeson v. Roper,*
135 S. Ct. 891 (2015) ........................................................................ 16, 27

*Clark v. Davis,*
850 F.3d 770 (5th Cir. 2017) ......................................................... 3, 9, 25

*Cuyler v. Sullivan,*
446 U.S. 335 (1980) ......................................................................... 24, 26

*Edwards v. Arizona,*
384 U.S. 436 (1966) ................................................................................. 6

*Ex parte Gallo,*
448 S.W.3d 1 (Tex. Crim. App. 2014) .................................................. 19

*Gonzalez v. Crosby,*
545 U.S. 524 (2005) ............................................................................. 8, 9

*Johnson v. Stephens,*
136 S. Ct. 980 (2016) ............................................................................... 7

*Johnson v. Stephens,*
No. 14-70024, Slip Op. (Jul. 2, 2015) .................................................... 6

*Ex parte Johnson,*
No. WR-73,600-01, Slip Op. (Tex. Crim. App. Jun. 30, 2010) (per
curiam) ................................................................................................... 4

*Juniper v. Davis,*
737 F.3d 288 (4th Cir. 2014) ............................................................... 10

*Maples v. Thomas,*
565 U.S. 266 (2012) .............................................................................. 26

*Martinez v. Ryan*,
   566 U.S. 1 (2012) .........................2, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 24, 27

*Martinez v. Stephens*,
   No. 4:13-cv-01994 (S.D. Tex. Jul. 9, 2013)...................................................... 2, 11, 13

*McFarland v. Scott*,
   512 U.S. 849 (1994) ................................................................................................ 20, 21

*Mendoza v. Stephens*,
   783 F.3d 203 (5th Cir. 2015) ........................................................................................ 10

*In re Paredes*,
   587 F. App'x 805 (5th Cir. 2014) .................................................................................... 9

*Rhines v. Young*,
   2015 WL 4651090 (D.S.D. 2015) ................................................................................. 10

*Speer v. Stephens*,
   781 F.3d 784 (5th Cir. 2015) ........................................................................................ 10

*Travelers Ins. Co. v. Liljeberg Enters., Inc.*,
   38 F.3d 1404 (5th Cir. 1994) ........................................................................................ 25

*Trevino v. Thaler*,
   569 U.S. 413 (2013) ..........................1, 2, 5, 9, 10, 11, 13, 14, 15, 16, 20, 24, 25, 26

**Statutes**

18 U.S.C. § 3599.............................................................................................. 1, 3, 4, 9, 20, 21

28 U.S.C. § 2244............................................................................................................... 8

28 U.S.C. § 2254(b)(1)(B) .............................................................................................. 16

Texas Code of Criminal Procedure Article 11.071............................................... 14, 15

**Other Authorities**

American Bar Association, *Guidelines for the Appointment and
   Performance of Defense Counsel in Death Penalty Cases* (2003) .......................... 23

Fed. R. Civ. P. 60(b) ....................................................................................................... 8

Fed. R. Civ. P. 60(b)(1)-(3) .......................................................................................... 25

Fed. R. Civ. P. 60(b)(6)......................................................................................... 1, 3, 8, 9, 25

iv

Fed. R. Civ. P. Rule 60(c)(1) ....................................................... 25

National Legal Aid and Defender Association, *Standards for the Appointment and Performance of Counsel in Death Penalty Cases* (1988) ......... 23

State Bar of Texas, *Guidelines and Standards for Texas Capital Counsel* (2006) ....................................................................................... 23

TDRPC Rules 1.03 and 1.06(c) .................................................... 20

TDRPC Rules 1.06(b) and (c) and 1.03 ...................................... 13

Texas Bar Journal Vol. 69, No. 10 ............................................... 23

U.S. Const., amend. VI ........................................................... 4, 5

## MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(6)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Petitioner, DEXTER DARNELL JOHNSON, by and through undersigned counsel, the Office of the Federal Public Defender for the Northern District of Texas ("FPD"), and moves for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6).

## I.    Introduction.

Since its appointment to represent Mr. Johnson on February 5, 2019, the FPD has discovered evidence that raises important questions about the quality of representation Mr. Johnson received during his initial federal habeas corpus proceedings and whether his fundamental right to quality, conflict-free representation under 18 U.S.C. § 3599 was materially and exceptionally violated. In particular, Mr. Johnson's federal court-appointed attorney, Patrick F. McCann, operated under a significant conflict of interest no later than May 28, 2013, when the Supreme Court issued its opinion in *Trevino v. Thaler*, 569 U.S. 413 (2013), as he served as Mr. Johnson's state and federal habeas attorney. Despite being the only post-conviction attorney appointed to represent Mr. Johnson from the time of his conviction and sentence in June 2007 until the FPD's appointment in February 2019, Mr. McCann failed to fulfill even the most rudimentary of his professional obligations, such as maintaining a complete case file, conducting extra-record investigations into the constitutionality of the judgment against Mr. Johnson, familiarizing himself with the relevant rules of habeas corpus, and maintaining regular communications with

1

his client. As a result, Mr. McCann failed to discover or meaningfully pursue significant claims for relief.

Extraordinary circumstances exist that justify the reopening of Mr. Johnson's habeas proceedings, beyond merely the unmistakable conflict of interest that constitutes a defect in the integrity of the proceedings. Shortly after the *Trevino* decision, Mr. McCann filed a motion in federal court in another case in which he served as counsel during the state habeas proceedings, stating that "the undersigned counsel believes it is his ethical duty to seek appointment of <u>separate</u> counsel" and that he believed that "he <u>cannot</u> ethically go forward on this matter" as counsel in federal court in light of *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino*. Ex. 1 at 1 (*Martinez v. Stephens*, No. 4:13-cv-01994 (S.D. Tex. Jul. 9, 2013)) (emphasis in original). Yet, around the same time in Mr. Johnson's case, Mr. McCann attempted to amend in claims that he had defaulted in state court and not raised in the federal petition by invoking *Martinez* and *Trevino* to excuse the default of those claims, *while also defending the quality state habeas representation.* To the best of the FPD's knowledge, Mr. McCann is the *only* attorney in a post-*Trevino* federal habeas case that identified a claim that he had defaulted in state habeas, nominally argued that the claim should be considered under *Martinez* and *Trevino*, and then provided the Court with numerous excuses for his failure to raise the claim in state habeas in direct contravention of his client's interests.

Violating numerous ethical requirements, Mr. McCann took these actions—and others chronicled within this motion—without appropriately consulting with

Mr. Johnson regarding the conflict of interest. Robert P. Schuwerk,[1] a leader in the field of attorney ethics, has reviewed Mr. McCann's actions in this case, and found that "conflicts did arise, that they were clear and serious, that Mr. McCann did not address them in a professionally appropriate manner and that, unless remedied by this Court, those missteps by Mr. McCann will cause irreparable injury to Mr. Johnson." Ex. 2 at ¶4. Later, once Mr. Johnson became aware of the conflict and requested conflict-free counsel, Mr. McCann *opposed* that request. DE 66.

The Fifth Circuit has held that a post-judgment motion asserting that a petitioner's federal habeas counsel had a conflict of interest rendering him incompetent under 18 U.S.C. § 3599, and that proceedings should be reopened to allow the petitioner to proceed with conflict-free counsel, qualifies as an assertion that there was a defect in the integrity of the proceeding; such an assertion therefore properly supports a motion for relief from judgment pursuant to Rule 60(b)(6). *Clark v. Davis*, 850 F.3d 770, 779−80 (5th Cir. 2017). Because Mr. Johnson can also show that this Rule 60(b)(6) motion is timely filed and that the circumstances of his case are extraordinary, this Court should grant his motion and return Mr. Johnson to the position he was in when Mr. McCann's conflict became apparent.

---

[1] Mr. Schuwerk served as an assistant reporter for the State Bar of Texas blue-ribbon committee that wrote what became the original version of the Texas Disciplinary Rules of Professional Conduct and shortly after those rules were adopted co-authored a book-length article on those rules. He also served for more than twenty years as a member of the Texas Disciplinary Rues of Professional Conduct Committee, including ten years as its chair. He also co-authored a treatise on attorney tort and disciplinary liability in 2002, which has been revised an updated annually. Ex. 2. at ¶3.

## II.     Procedural Background.

Mr. Johnson was convicted of capital murder and sentenced to death on June 28, 2007. The same day, Mr. McCann was appointed to represent Mr. Johnson in state habeas proceedings. 3 CR 681 (*Texas v. Johnson*, No. 1085483, 11.071 Writ of Habeas Corpus Oath of Indigence/Findings of Fact/Order Appointing Counsel/Statement of Facts (208th D.Ct. Jun. 28, 2007)). Mr. McCann timely filed an initial state habeas application on July 23, 2009, raising eleven grounds for relief but presenting no new, case-specific evidence in support. The trial court found there were no previously unresolved, controverted fact questions raised by the application and, without holding a hearing, entered findings of fact and conclusions of law recommending the denial of relief. The Texas Court of Criminal Appeals (CCA) denied habeas relief on June 30, 2010. *Ex parte Johnson*, No. WR-73,600-01, Slip Op. (Tex. Crim. App. Jun. 30, 2010) (per curiam).

Mr. McCann moved for appointment to continue his representation of Mr. Johnson in federal habeas. The motion stated Mr. McCann was "best qualified and suited to represent Mr. Johnson on his federal pleadings." *Johnson v. Thaler*, No. 4:10-mc-00318, DE 1 at 1 (S.D. Tex. Jul. 29, 2010). He was appointed the next day. *Id*. at DE 2. Thereafter, Mr. McCann did not seek ancillary services to investigate the federal habeas petition. *Cf.* 18 U.S.C. § 3599(f).

On June 6, 2011, the Supreme Court granted certiorari in *Martinez v. Ryan*, 566 U.S. 1 (2012), to decide whether a Sixth Amendment right to effective assistance of initial-review post-conviction counsel exists. Three weeks later, on June 28, 2011, Mr. McCann filed Mr. Johnson's habeas petition in this Court, *Johnson v. Stephens*,

4

No. 4:11-cv-02466, DE 1 (S.D. Tex. Jun. 28, 2011).[2] All claims were copied from the state habeas application and brief on appeal.

The Director answered the petition on February 23, 2012. On March 20, 2012, the Supreme Court decided *Martinez*. In *Martinez*, the Court did not recognize a Sixth Amendment right to effective post-conviction counsel, but it created, for the first time, an opportunity for some prisoners to establish cause and prejudice for procedurally defaulted IATC claims based on deficient representation by state habeas counsel. 566 U.S. at 9. Mr. McCann filed a reply on July 20, 2012, failing to mention *Martinez* or its impact.

On December 28, 2012, Mr. McCann sought to abate the proceeding or amend the petition to allege—for the first time—a claim that trial and direct appeal counsel were ineffective for failing to present mental health evidence to rebut Mr. Johnson's intent at the merits phase of trial.[3] DE 14. Mr. McCann included language about *Martinez* as justification for the request, but made no mention of the conflict of interest that *Martinez* created between himself and Mr. Johnson. *Id.* Five months later, *Trevino v. Thaler* was decided, holding that *Martinez* applied to the federal habeas cases of Texas state prisoners. *Trevino*, 569 U.S. at 429. Two days after that, this Court ordered briefing on the impact of *Trevino* on Mr. Johnson's motion, DE 16,

---

[2] Hereafter, references to filings in cause 4:11-cv-02466 before this Court will cite only the docket entry number and the date of the filing.

[3] In fact, this was the first time that Mr. McCann presented *any* ineffective assistance of trial counsel claim in either state or federal habeas.

and Mr. McCann filed supplemental briefing that again omitted any mention of his conflict of interest, DE 18.

This Court was highly critical of Mr. McCann's representation when it denied the motion to abate or amend, finding that his litigation tactics were abusive and that the delay in raising the newly-presented IATC claim was not justified. DE 19. It noted that Mr. McCann was "aware of the underlying mental impairments" before filing the state habeas application and yet failed to include the IATC claim in either the state habeas application or the federal petition. *Id.* at 10-11; *see also id.* at 12 ("Even though [Mr. McCann] admits that he knew about the putative claims during state habeas review, he did not advance them until [seeking leave to amend or abate in federal court]."). Moreover, this Court held that those claims "rely on easily discoverable factual predicates" and "[n]othing inherent in the structure of Texas's post-conviction review thwarted him from advancing them in his initial habeas action." *Id.* at 12.

The Court thereafter denied all grounds for relief, but granted a certificate of appealability ("COA") on one claim—preserved by direct appeal counsel—that the State had violated *Edwards v. Arizona*, 384 U.S. 436, 474 (1966), by continuing to interrogate Mr. Johnson after he had asserted his right to an attorney. DE 19, 31.

Mr. Johnson appealed the denial of his *Edwards* claim and sought a COA to appeal the denial of additional claims. He also sought a COA to appeal the denial of his motion to abate or amend his federal petition in light of *Martinez*. The Fifth Circuit denied the requested COAs and affirmed the district court's denial of the *Edwards* claim. *Johnson v. Stephens*, No. 14-70024, Slip Op. (Jul. 2, 2015).

6

Mr. Johnson's petition for a writ of certiorari was denied on January 25, 2016. *Johnson v. Stephens*, 136 S. Ct. 980 (2016).

The trial court scheduled Mr. Johnson's execution for May 2, 2019. Thereafter, on January 15, 2019, Mr. Johnson wrote a letter to this Court in which he explained that he was told by other prisoners that Mr. McCann had a conflict of interest in representing him post-*Trevino*; that Mr. McCann had not explained to him what was going on in his case; and that he was requesting new counsel. DE 65. In response to this letter, Mr. McCann filed a sealed response opposing Mr. Johnson's request. DE 66. On January 29, 2018, Mr. Johnson filed a *pro se* motion for appointment of counsel, DE 68, and on February 5, 2019, the Court appointed the FPD as co-counsel, DE 70. In the order appointing the FPD to represent Mr. Johnson, the Court maintained Mr. McCann's appointment as lead counsel but instructed the FPD to: (1) make a thorough and independent assessment of whether unpresented claims remain; (2) "explore whether Johnson can establish cause for the procedural default of any ineffective-assistance-of-trial-counsel claims pursuant to *Martinez*"; (3) assess "whether those claims merit relief"; and assess (4) "whether a viable vehicle exists for raising those claims in federal court." *Id.* at 2.

Based on its review of the case documents and initial investigations, and under significant time constraints, the FPD discovered sufficient evidence to support a motion for Mr. McCann's removal as Mr. Johnson's counsel. DE 76. The Director opposed the motion, DE 81, and Mr. McCann filed his own opposition under seal. On April 30, 2019, this Court issued an order staying Mr. Johnson's execution, noting

7

that "[t]he recent pleadings [] reveal troubling concerns about Johnson's current appointed legal representation which need resolution to preserve his rights before execution." DE 84 at 8. The Court stated it would schedule a hearing by separate order "to address the concerns raised in the motion to terminate Mr. McCann's appointed legal representation[.]" *Id.* at 9. Two days later, Mr. McCann moved to withdraw as Mr. Johnson's appointed counsel. DE 89. This Court granted the motion and cancelled the hearing. DE 91. Per the Court's scheduling order, this motion is due June 24, 2019, making it timely filed. DE 94.

Mr. Johnson's execution is scheduled for August 15, 2019.

## III. The conflict of interest between Mr. McCann and Mr. Johnson is a defect in the integrity of Mr. Johnson's federal habeas proceedings.

The first question a court presented with a Rule 60(b) motion must answer is whether it is a "true" motion for relief from judgment or a successive habeas petition requiring authorization from the court of appeals pursuant to 28 U.S.C. § 2244. This Court may assume jurisdiction over a Rule 60(b) motion if it "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

Since 2014, the Fifth Circuit has consistently held that,

> [t]he assertion that [the movant's] federal habeas counsel had a conflict of interest and that [the movant] is entitled to reopen the final judgment and proceed in the federal habeas proceedings with conflict-free counsel is a claim that there was a defect in the integrity of the federal habeas proceedings. Such a claim does not assert or reassert claims of error in the state conviction. Allowing [the movant's] motion to proceed as a Rule 60(b)(6) motion is not inconsistent with 28 U.S.C. § 2244(d).

8

*In re Paredes*, 587 F. App'x 805, 823 (5th Cir. 2014); *see also Clark v. Davis*, 850 F.3d 770, 779−80 (5th Cir. 2014) ("To the extent that [movant's] Rule 60(b)(6) motion attacks not the substance of the federal court's resolution of the claim on the merits, but asserts that [counsel] had a conflict of interest that resulted in a defect in the integrity of the proceedings, the motion is not an impermissible successive petition."). Moreover, the Supreme Court has held that a Rule 60(b)(6) motion is an available vehicle for remedying the default of a sufficiently meritorious ineffective-assistance-of-trial-counsel claim under *Martinez. Buck v. Davis*, 137 S. Ct. 759, 771−72 (2018).

Mr. Johnson seeks relief from judgment because he was represented by an attorney laboring under a conflict of interest and whose representation was in other ways inconsistent with the dictates of 18 U.S.C. § 3599. Accordingly, the current motion alleges a defect in the integrity of the initial federal habeas proceeding and is properly brought under Rule 60(b)(6). *Gonzalez*, 545 U.S. at 538.

A.   **Mr. McCann developed a significant conflict of interest with Mr. Johnson in light of *Martinez* and *Trevino*, in the wake of which he failed to take appropriate steps to protect Mr. Johnson's interests.**

The most apparent violation of Mr. Johnson's federal representation rights resulted from the failure of Mr. McCann to inform Mr. Johnson of the conflict of interest that arose between the two in the wake of the Supreme Court's opinions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). Under *Martinez* and *Trevino*, a federal habeas petitioner in possession of a substantial, but defaulted, ineffective assistance of trial counsel claim may have that

claim reviewed on its merits by the federal district court upon a showing that the claim was defaulted in initial-review collateral proceedings because of the absence or ineffective assistance of state habeas counsel. *Martinez*, 566 U.S. at 14; *Trevino*, 569 U.S. at 429. Because *Martinez* and *Trevino* made state habeas counsel's ineffectiveness a new ground for establishing cause to overcome procedural default, federal habeas attorneys that had also represented their clients in state habeas proceedings developed conflicts with their clients in relation to the investigation and litigation of defaulted trial counsel ineffectiveness claims. *See*, *e.g.*, *Mendoza v. Stephens*, 783 F.3d 203, 203 (5th Cir. 2015); *Speer v. Stephens*, 781 F.3d 784, 784 (5th Cir. 2015); *Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2014); *Rhines v. Young*, 2015 WL 4651090 (D.S.D. 2015).

Mr. McCann was aware of the conflict that he labored under as Mr. Johnson's post-*Trevino* federal habeas counsel who had also served as his state habeas counsel. About six weeks after the Supreme Court rendered its opinion in *Trevino*, Mr. McCann filed a motion on behalf of another client requesting the appointment of new counsel on that very ground:

4) The undersigned counsel has been assigned to represent Mr. Martinez in his state post-conviction proceedings. However, since the decision in *Trevino v. Thaler*, 133 S.Ct. 524 (2012) [sic], the undersigned counsel believes it is his ethical duty to seek appointment of <u>separate</u> counsel as any mistakes made by state habeas counsel may form a "gateway" through which one can bypass procedural default rules. See *Trevino v. Thaler* 133 S.Ct. 524 (2012) [sic]. See also *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

5) Counsel thus believes that he <u>cannot</u> ethically go forward on this matter and thus be in a position where he would be forced to investigate his own potential failure to provide effective assistance. Accordingly, the

> undersigned counsel, per his statutory duty under the Texas Rules of
> Criminal Procedure requests that this Honorable Court appoint a
> skilled habeas attorney to investigate and determine what claims may
> be brought forward on Mr. Martinez's behalf.

Ex. 1 at 1–2 (*Martinez v. Stephens*, No. 4:13-cv-01994 (S.D. Tex. Jul. 9, 2013))

(emphasis in original).

Thus, the conflict of interest between Messrs. Johnson and McCann arose no later than May 26, 2013, when *Trevino* was decided, and Mr. McCann demonstrated in a court filing on behalf of a different client that he was actually aware of the nature of the conflict no later than July 9, 2013. At least by then, Mr. McCann knew there existed a conflict between his own professional interests (those of avoiding a finding that he rendered ineffective assistance of counsel in state habeas and having his federal appointment terminated) and the litigation interests of Mr. Johnson (those of investigating the quality of Mr. McCann's state habeas representation, investigating defaulted ineffectiveness claims, and making competent, disinterested arguments for relief from procedural default of those claims under *Martinez/Trevino*).

As the attached affidavit from ethics expert Robert P. Schuwerk explains, an attorney that becomes aware of a conflict of interest must place the client's interests ahead of his or her own. Ex. 2 at ¶7. This is the rule because attorneys are fiduciaries of their clients, meaning they have a duty of candor, loyalty, and confidentiality. *Id*. The duty of candor would require Mr. McCann to advise his client of a conflict of interest and its reasonably foreseeable impact on his representation. *Id*. The duty of loyalty required Mr. McCann to refrain from taking any actions with respect to the

11

conflict that would further his own interests at the expense of Mr. Johnson's. *Id.* Mr. McCann failed to perform both of these duties.

Once the existence of the conflict became apparent, Mr. McCann should have (1) explained the existence of the conflict to Mr. Johnson, (2) explained the impact of the conflict on Mr. McCann's ability to comprehensively and competently represent Mr. Johnson, (3) advised Mr. Johnson that he could not provide him with disinterested advice concerning whether to waive the conflict, (4) urged Mr. Johnson to seek competent and disinterested counsel on whether to grant a waiver of the conflict, and (5) agreed to abide by Mr. Johnson's decision in that regard. Ex. 2 at ¶9. Mr. McCann could also have filed a motion with the Court requesting the appointment of competent supplemental or substitute counsel who would not suffer from such a conflict. *Id.* at ¶6. Significantly, even if no conflict existed at the time Mr. McCann accepted federal appointment in this case, the Texas ethics rules imposed on him the continuing duty to monitor the representation for subsequently-arising conflicts of interest and to take appropriate action. *Id.*

But Mr. McCann *never* informed Mr. Johnson or the Court of the conflict that had arisen between his financial and reputational interests and the federal habeas interests of Mr. Johnson. Instead, he "compounded that omission by addressing the conflict in a manner that violated both his ethical and fiduciary obligations to Mr. Johnson." Ex. 2 at ¶9. Indeed, in Mr. Johnson's letter and motion asking that this Court appoint the FPD, Mr. Johnson explicitly stated that he only learned of the conflict of interest from other people. DE 65, 68. His letter even explained that once

12

he learned of the conflict of interest, he asked Mr. McCann to file a claim alleging his own ineffective assistance, DE 65, and even at that point Mr. McCann did not resolve the conflict. Mr. Johnson also asserted his continuing lack of faith in Mr. McCann and his desire that his representation be terminated. *Id*. Yet, Mr. McCann *opposed* Mr. Johnson's request for conflict-free counsel. DE 66. As explained by Mr. Schuwerk, Mr. McCann's handling of this conflict violated his ethical and professional responsibilities to Mr. Johnson:

> In the situation just presented, Mr. McCann faced a conflict between his own professional interests and the litigation interests of Mr. Johnson. He could acknowledge that he had a *Martinez / Trevino* conflict that made it inappropriate to continue as sole federal habeas counsel for Mr. Johnson—a choice clearly in Mr. Johnson's interest—or he could choose to defend the quality of his previous representation to his client's detriment. He chose the latter course when he was duty bound to choose the former and, moreover, compounded that error by making that choice without consulting with Mr. Johnson. By acting in this manner, Mr. McCann violated both his duty of loyalty and his duty of candor to Mr. Johnson, as well as the corresponding disciplinary rules outlining his ethical duties as an attorney for Mr. Johnson—TDRPC Rules 1.06(b) and (c) and 1.03.

Ex. 2. at ¶11.

**B.** **While operating under a conflict of interest, Mr. McCann presented arguments to this Court and the Fifth Circuit that protected his own reputational and financial interests in direct contravention of Mr. Johnson's litigation interests.**

Only two weeks before he filed the motion alerting this Court that he had an ethical conflict in *Martinez v. Stephens*, Mr. McCann, in response to an order of this Court, filed a supplemental brief addressing the impact of *Trevino* on Mr. Johnson's motion to abate or amend. DE 18 (Jun. 26, 2013). Prior to that date, he had attempted to invoke *Martinez* in the motion to abate or amend. DE 14. In both the motion and

13

the supplemental brief, Mr. McCann made the prejudicial decisions to both invoke *Martinez* and *Trevino* to overcome procedural default on that claim and make arguments in defense of his own state habeas representation, which critically frustrated any chance Mr. Johnson had of satisfying the cause standard under *Martinez* and *Trevino*.

Against Mr. Johnson's best interests—and without a legitimate reason for doing so, given his fulfillment of his ethical duties to Mr. Martinez—Mr. McCann persisted in his representation of Mr. Johnson and sought to litigate a trial counsel ineffectiveness claim that he had, until *Martinez*, never identified in any postconviction pleading. In the motion to abate or amend, he invoked *Martinez* and *Trevino* as grounds for litigating the claim, which could only prevail upon a showing that Mr. McCann had been ineffective in state habeas. But instead of arguing his own ineffectiveness, Mr. McCann "address[ed] the interplay of the timelines under Texas' Article 11.071 as regards state habeas counsel's initial decision to pursue these claims *as structural matters rather than as deprivation of effective counsel.*" DE 14 at 3 (emphasis added).

Mr. McCann attributed his failure to raise the trial counsel ineffectiveness claim in state habeas to Mr. Johnson's trial and direct appeal representatives, to the Texas Rules of Criminal Procedure, and to the trial court. He argued all of these worked together to "foreclose" his ability to timely present the record-based ineffective assistance claim in the initial state habeas application:

> In this case the appellate lawyer failed to raise these matters regarding capacity and ineffective assistance [presumably IATC for failure to

14

present evidence contesting Mr. Johnson's intent] via motion for new
trial. The trial attorney did not present these matters at guilt innocence
phase. Thus these matters, unless raised by habeas counsel now, are
forever waived for the client.

Given the changes in this area of law, and what appears to be a
substantive sea change in the nature of post conviction representation,
the appointed writ counsel now believes he was remiss in failing to
submit ineffective assistance of counsel challenges to both the trial
attorney and direct appeal attorney. Based on the procedural time
constraints set forth in Article 11.071, Texas Code of Criminal Procedure
counsel neither had the time nor resources to develop and present the
claim(s) or develop the evidence of Petitioner's psychological and
biological impairments, thus foreclosing any effort of undersigned
counsel by procedural bar as argued by the state's attorney and adopted
by the state habeas court. Habeas counsel sought both discovery and
evidentiary hearing in state court and was denied by the court. Then
the state habeas court penalized Petitioner for not raising the claim. Thus
this no longer appears to be a matter of deciding as a tactical matter
which claims can best be fitted into procedural hurdles, but rather is
more in the nature of ensuring that all possible valid grounds are
properly presented and exhausted on behalf of the client, despite the
procedural hurdles thrown up under 11.071 and the trial court's denial
of discovery.

*Id.* at 8–9. In his supplemental brief, Mr. McCann continued to argue that the quality

of his representation in state habeas was not at issue under *Martinez* and *Trevino*.

*See* DE 18 at 7 (arguing "there is a difference between a structural impediment and

ineffective assistance of counsel. Just as there is a difference between habeas counsel

who 'by choice' abandons a client or, as the case is here, habeas counsel who had no

choice based [on] the state created impediment").

To summarize, sometime before the CCA denied Mr. Johnson habeas relief,

Mr. McCann identified a record-based claim that he should have raised, but did not

raise, in the initial state habeas application. After neglecting to include the claim in

the state habeas application, he again failed to raise the claim in the federal habeas

15

petition and sought no auxiliary services from the federal court to assist him in investigating and developing it. Only after *Martinez* was announced did Mr. McCann seek leave to amend the claim into the federal habeas petition and/or return to state court to seek merits review. But he also argued, vehemently, that he had *not* been ineffective in state habeas because "the issue is a 'state created impediment' which is exactly what *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) is about." DE 18 at 3.[4]

At the time *Martinez* was decided, several state habeas counsel were representing their clients in federal habeas. To the best of the FPD's knowledge, Mr. McCann is the *only* attorney that identified a claim that he had defaulted in state habeas, nominally argued that the claim should be considered under *Martinez*, and then provided the Court with numerous excuses for his failure to raise the claim in state habeas, in direct contravention of his client's interests. *Cf. Christeson*, 135 S. Ct. at 895 (a conflict of interest existed because advancing the client's strongest argument required the attorneys to denigrate their own performance); Ex. 2. ¶6–11.

## IV. The unique and extraordinary circumstances of this case justify reopening the judgment.

Mr. Johnson's case presents a number of unique and extraordinary circumstances that justify the reopening of the judgment against him. The actions taken by Mr. McCann throughout his representation of Mr. Johnson were extraordinary, as Mr. McCann repeatedly charted a litigation course that was against Mr. Johnson's best interests and did so without consulting with him or informing him

---

[4] Mr. McCann's argument about a state-created impediment was available prior to *Martinez* and *Trevino* as an exception to the exhaustion doctrine. *See* 28 U.S.C. § 2254(b)(1)(B).

of the conflict. Moreover, the fact that this Court—when presented with pleadings that made that conflict apparent—took no actions to remedy it establish that this case is extraordinary.

### A.   Mr. McCann repeatedly took actions that were against the best interests of Mr. Johnson.

As chronicled in Section III, a conflict of interest existed between Mr. McCann and Mr. Johnson. Disastrously for Mr. Johnson, he never received the competent, disinterested counsel that he was entitled to post-*Trevino* because Mr. McCann never informed him or the Court of his conflict. Instead, Mr. McCann made the extraordinary decision to attempt to raise a new ineffectiveness claim under *Martinez* at the same time and in the same pleadings in which he critically undermined his client's chances for prevailing on those arguments. In doing so, he took proactive measures to protect himself from a finding by this Court that he had been ineffective in state habeas. Mr. McCann, therefore, not only silently sat on the conflict that had become apparent to him, but he decided to place his own interests before the litigation interests of his capitally-sentenced, severely brain-damaged client.

Mr. McCann went still further. At some point, other capital prisoners made Mr. Johnson aware of the conflict of interest and Mr. Johnson reached out to Mr. McCann about the conflict, making his unhappiness with his representation clear. *See* DE 65. Even then, Mr. McCann did not remedy the conflict. And when Mr. Johnson made the desperate move of filing letters and motions in this Court asking for conflict-free representation on the eve of his execution, Mr. McCann

resisted those efforts—again without consulting Mr. Johnson—in pleadings filed under seal and not shared with his client. DE 66.

Even after the appointment of the FPD, Mr. McCann continued to take actions that were against Mr. Johnson's best interests that violated his ethical and professional responsibilities to Mr. Johnson.  On April 5, 2019, the FPD filed an Opposed Motion to Terminate Patrick F. McCann's Appointment in Mr. Johnson's case, (DE 76), and moved for a stay of execution on April 8, 2019. DE 77. In that motion, the FPD outlined various allegations that Mr. McCann provided ineffective assistance of counsel to Mr. Johnson and that a conflict of interest existed between Mr. McCann and Mr. Johnson. DE 76 at 7–17. That filing detailed several unpresented, potentially meritorious claims for relief for which viable procedural arguments exist in state and federal court. *Id.* at 18–32. That motion also repeatedly referenced the fact that Mr. McCann would be unable to present many of those arguments for relief, as the procedural arguments necessary to establish Mr. Johnson's right to merits review would rely on evidence that Mr. McCann was conflicted and/or ineffective. *Id.* at 1, 29–38. Mr. McCann filed a sealed response to that motion on April 9, 2019. DE 78.

As noted in the motion to terminate Mr. McCann's appointment, filing a state successor application triggers various procedural hurdles for any subsequent filings in that forum. *Id.* at 35. As such, it is imperative to include all viable claims for relief in the first filing. The FPD's motion placed Mr. McCann on notice that, among other issues: (1) he was operating under a conflict of interest; (2) numerous previously

unpresented claims existed, many of which would require assertions that he was ineffective; and (3) filing a state successor application without these claims could result in the waiver of many of Mr. Johnson's arguments in favor of authorization and relief. Despite this, Mr. McCann filed a state successor application on April 11, 2019. That application included a single claim arguing that Mr. Johnson is intellectually disabled. The application contained no mention of the federal litigation, Mr. McCann's conflict of interest, or the additional claims identified by the FPD.

Continuing his pattern of failing to adhere to basic tenets of professional responsibility, DE 76, *Mr. McCann did not even inform Mr. Johnson that he filed a state successor on his behalf*, much less obtain his informed consent before doing so. DE 80 at 14.[5] According to Mr. Schuwerk, Mr. McCann's actions regarding filing the state successor "violated his fiduciary duty of loyalty to Mr. Johnson, as well as the corresponding disciplinary rule outlining his ethical duties as an attorney for Mr. Johnson[.]" Ex. 2 at ¶14. In these circumstances, Mr. McCann should have advised Mr. Johnson of:

> (i) his intent to file a successor state habeas petition, (ii) the alleged existence of previously unasserted IATC and IAAC claims that the FPD asserted existed that would implicate the quality of his (Mr. McCann's) representation of his client, (iii) the claim the contemplated habeas petition would advance and those it would omit, (iv) the difficulties that would arise from not including the omitted claims in the successor state habeas petition, (v) his own ability to give disinterested advice to Mr. Johnson as to whether or not Mr. McCann should file the successor state habeas petition in its contemplated form (vi) his recommendation that Mr. Johnson secure independent legal advice as to his best course going

---

[5] Additionally, Mr. McCann's failure to obtain informed consent from Mr. Johnson prior to filing the state successor violated controlling Texas precedent. *See Ex parte Gallo*, 448 S.W.3d 1, 4 (Tex. Crim. App. 2014) (holding that an attorney filing a habeas petition on an applicant's behalf "must at least have the applicant's informed consent to do so.").

forward and (vii) Mr. McCann's willingness to abide by Mr. Johnson's directions going forward after receiving that independent legal advice. Because of the importance of the steps he was contemplating taking (and subsequently did take) for the interests of Mr. Johnson at stake in this matter, both fiduciary principles and disciplinary standards imposed an affirmative duty on Mr. McCann to undertake such consultative measures before proceeding with those measures.[6]  However, none of those steps occurred.  Consequently, Mr. McCann violated both his fiduciary duty of candor to Mr. Johnson and his disciplinary obligation to keep Mr. Johnson apprised of significant developments in his case, as contained in TDRPC Rules 1.03 and 1.06(c).

*Id.* at ¶15.

Mr. McCann's actions since *Trevino* have been protective of his own interests and many of those same actions have been taken in direct contravention of Mr. Johnson's interests. The extraordinary nature of Mr. McCann's repeated decisions to violate his fiduciary duties of candor, loyalty, and confidentiality to Mr. Johnson merits reopening this cause to provide Mr. Johnson a single opportunity to benefit from the quality representation to which he is entitled under 18 U.S.C. § 3599.

State capital prisoners seeking federal habeas relief are entitled to adequate representation by one or more attorneys "whose background, knowledge, or experience" enables them to "properly represent the defendant, with due consideration to the seriousness of the [] penalty and to the unique and complex nature of the litigation." 18 U.S.C. § 3599(d). In *McFarland v. Scott*, the Supreme Court elaborated on the need for quality legal representation to investigate, identify and pursue available claims for relief at the pre-petition stage of district court

---

[6] *See* 2019 HANDBOOK, § 2:10, at 328-29.

proceedings. 512 U.S. 849, 855 (1994). "Where this right is not afforded, 'approving the execution of a defendant before his [petition] is decided on the merits would clearly be improper.'" *Id*. at 858 (*quoting Barefoot v. Estelle*, 463 U.S. 880, 889 (1993)). Yet, Mr. Johnson has not received this right. Mr. McCann was fatally compromised, ethically and practically, in the investigation and presentation of ineffective assistance claims that he may have defaulted in state and federal habeas, and in the presentation of the *Martinez*- and *Trevino*-based arguments that would be indispensable to their adjudication by this Court. 18 U.S.C. § 3599 guarantees quality federal representation on those issues, and on every claim for relief reasonably available to Mr. Johnson.

### B.   Mr. McCann failed to conduct investigations to support Mr. Johnson's habeas claims for relief.

Extra-record investigations into Mr. Johnson's case have exposed yet further evidence of Mr. McCann's ineffective representation, which make Mr. Johnson's situation extraordinary. Despite being the only postconviction attorney ever appointed with the mandate to conduct an investigation into the constitutionality of Mr. Johnson's conviction and sentence, Mr. McCann did not present a single new, case-specific fact in state or federal habeas.

The petition Mr. McCann filed in this Court was copied nearly verbatim from the state habeas application, with the additional insertion of a single constitutional challenge that was raised on direct appeal.[7] Mr. McCann presented no new, extra-

---

[7] The claim raised originally on direct appeal is the only claim for which this Court issued a certificate of appealability.

record evidence in support of the claims he raised in state habeas, and he did not seek federal investigative or expert services to aid in the development of those or any new claims in federal habeas.[8] The state habeas claims were copied verbatim into the federal petition, with the single exception that references to Mr. Johnson were changed from "applicant" to "petitioner." The petition did not contain a statement of facts, a procedural history, or any writing that was not contained in the state papers.

Mr. McCann would later argue, post-*Trevino*, that the defaulted ineffectiveness claim he sought to untimely amend into the federal petition occurred to him at some point *during* his state habeas representation; however, he did not include it in the federal petition, rendering the claim not only procedurally defaulted but also factually unsupported and time-barred under the AEDPA's statute of limitations.

## C.    Mr. McCann failed to maintain a complete case file.

The FPD also discovered, as it began to collect former counsel's files immediately upon its appointment, that Mr. McCann failed to fulfill the most fundamental and straightforward duty of postconviction counsel: that is maintaining a complete case file. This fact sets Mr. Johnson's case apart from others and makes it extraordinary.

A basic duty of post-conviction counsel is collecting the client's entire case file, which requires reaching out to the client's prior attorneys, investigators, and experts who have worked on the case over the years. The duty of post-conviction counsel to

---

[8] Even after seeking to amend the petition post-*Martinez*, Mr. McCann sought no funds to investigate the proposed ineffectiveness claim.

collect the client's entire case file is well-established.  State Bar of Texas, *Guidelines and Standards for Texas Capital Counsel* (2006), reprinted in Texas Bar Journal Vol. 69, No. 10, Guideline 11.1.B ("Counsel at every stage have an obligation to conduct a full examination of the defense provided to the client at all prior phases of the case. This obligation includes *at a minimum* interviewing prior counsel and members of the defense team and examining the files of prior counsel."); American Bar Association, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003), reprinted in 31 Hoftstra L. Rev. 913, Guideline 10.7.B.1 (same); National Legal Aid and Defender Association, *Standards for the Appointment and Performance of Counsel in Death Penalty Cases* (1988), Standard 11.9.3(b) ("With the consent of the client, postconviction counsel should obtain and review all prior counsels' file(s)."). Yet, Mr. McCann failed to perform this basic function, an inexcusable omission.

After appointment, the FPD began reaching out to various prior attorneys and critical trial team members. A troubling fact pattern emerged—that Mr. McCann had either never, or only recently, requested files from them. Anthony Osso, Mr. Johnson's second chair counsel from trial, was contacted less than a week after the appointment of the FPD. At that time, Mr. Osso informed the FPD that *Mr. McCann had first requested his files only the previous week—the same week that the FPD was appointed*. It is likely not a coincidence that immediately after this Court appointed co-counsel to assess whether Mr. McCann had provided ineffective assistance, he reached out to Mr. Osso to at last collect these files. There is no viable excuse for why Mr. McCann

23

was unable to complete this basic task in the previous ten-plus years that he represented Mr. Johnson.

Similarly, Mr. McCann failed to collect files from lead trial counsel Jim Leitner. The materials from Mr. Leitner, which the FPD received, amount to four full bankers boxes of various materials. Mr. Leitner does not "REMEMBER PAT GETTING ANY OF MY FILES." DE 80, Ex. 2 (emphasis in original). Additionally, the trial team's mitigation investigator, Danalynn Recer, had a large quantity of material that Mr. McCann had not obtained.

In sum, the files Mr. McCann neglected to collect and review are a substantial quantity of both paper and electronic files. These files contain critical information relevant to possible claims for relief for Mr. Johnson. Mr. McCann's failure to complete this basic task is an extraordinary circumstance in Mr. Johnsons' case.

### D.   This Court did not act to remedy the conflict of interest that was apparent from the record.

This Court's failure to take steps to remedy the readily-apparent conflict of interest also establishes that Mr. Johnson's case is extraordinary. From the face of the pleadings before it, this Court was aware that Mr. McCann served as both state and federal habeas counsel for Mr. Johnson and that pleadings were filed invoking *Martinez* and *Trevino* to excuse the failure to raise claims in state court. In this situation, the Court had a duty to act and appoint conflict-free counsel. *See Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980) (requiring reversal when trial court failed to make an inquiry into a conflict of interest even though it "knows or reasonably should know that a particular conflict exists").

24

V.   **Mr. Johnson, newly represented by conflict-free counsel, has timely filed this motion for relief from judgment.**

Unlike motions brought under Rule 60(b)(1)-(3), a motion made under Rule 60(b)(6) is not subject to a strict limitations period. *See* Fed. R. Civ. P. Rule 60(c)(1). The statute instead requires that a motion under Rule 60(b)(6) be "made within a reasonable time." *Id.* Whether a motion has been filed within a reasonable time in turn depends on the "particular facts and circumstances of the case." *Clark*, 850 F.3d at 780 (*citing Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)). Thus, the determination whether a Rule 60(b)(6) motion has been timely filed must be made on a case-by-case basis, taking account of all the attendant circumstances. Under the unique facts and circumstances before this Court, Mr. Johnson's motion is timely.

The FPD was not appointed to represent Mr. Johnson until February 5, 2019, less than five months before this motion was filed. Prior to the FPD's appointment, a Rule 60(b)(6) motion alleging a defect in the integrity of the proceedings that resulted from Mr. McCann's conflict of interest under *Trevino*, and other evidence that his representation fell below any reasonable standard, was not a viable vehicle for Mr. Johnson. Such a motion is necessarily dependent upon the appointment of conflict-free counsel to investigate and present the relevant arguments. Because Mr. McCann failed to inform Mr. Johnson or the Court of his conflict, the timing of the current filing cannot be fairly attributed to Mr. Johnson. *See Maples v. Thomas*, 565 U.S. 266, 283 (2012) ("under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him").

25

Similarly, because the courts failed to take action on their own initiative—based on clear evidence of a conflict in the record before them—the delay between *Trevino* and the appointment of the FPD cannot be attributed to Mr. Johnson. *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980) (requiring reversal when trial court failed to make an inquiry into a conflict of interest even though it "knows or reasonably should know that a particular conflict exists").

For his own part, Mr. Johnson timely requested appointment of conflict-free counsel once he became aware of the conflict. DE 65, 68. Moreover, evidence adduced at Mr. Johnson's trial and in recent pleadings indicates that he is an intellectually disabled, brain-damaged schizophrenic who functions at the level of a ten-year-old. It cannot be reasonably argued that someone with his functional deficits should have requested conflict-free counsel until someone told him of the conflict—at which point he did.

Finally, this motion is timely filed pursuant to a scheduling order that this Court issued at the request of the Director. Mr. Johnson has not sought an extension of that deadline. The Court's scheduling order is highly probative evidence that the motion has been filed within a reasonable time.

## VI.   Mr. Johnson should be permitted time to file an amended habeas corpus petition with conflict-free counsel.

Mr. Johnson's federal habeas petition was still pending in this Court when the conflict of interest arose. Had Mr. McCann timely informed him of the conflict and/or timely filed a motion for the appointment of conflict-free counsel, Mr. Johnson may have received counsel competent to investigate whether Mr. McCann had failed to

identify substantial trial counsel ineffectiveness claims in state habeas, investigate the grounds under which he may assert cause and prejudice to overcome procedural default under *Martinez*—including McCann's ineffective representation in state habeas, file an amended petition, and make other procedural arguments necessary for a fair federal hearing of those claims. Because Mr. McCann failed to take any action, Mr. Johnson did not become aware of the conflict until after his federal habeas proceedings concluded, potentially causing irreparable injury.

Because the conflict arose while his federal petition was pending, it would be appropriate to reopen Mr. Johnson's federal habeas proceedings and permit him to file an amended habeas petition with the benefit of conflict-free counsel. While that pleading may face its own procedural obstacles, Mr. Johnson is entitled to an opportunity to litigate those questions with the benefit of conflict-free counsel. *See Christeson v. Roper*, 135 S. Ct. 891, 895 (2015) (appointing conflict-free counsel despite "a host of procedural obstacles to having a federal court consider his habeas petition"). Based on the conflicted and ethically questionable representation Mr. Johnson received in federal court, those obstacles may well be surmountable. Therefore, Mr. Johnson requests that this Court enter a scheduling order allowing him 120 days with which to file an amended petition.

**VII.    To the extent this Court believes factual disputes exist pertinent to the disposition of this motion, Mr. Johnson requests an evidentiary hearing.**

This Court noted in its order staying Mr. Johnson's execution that Mr. McCann filed a sealed pleading disputing, at least in part, some issues raised in previously

filed motions by the FPD. DE 84 at 5. The FPD stands by the veracity of its allegations. However, to the extent that this Court believes that disputed factual issues exist regarding the disposition of this motion, Mr. Johnson requests that this Court schedule a live evidentiary hearing at which point those disputes can be resolved.

## CONCLUSION

For the foregoing reasons, Mr. Johnson requests that this Court grant this motion for relief from judgment and reopen the federal habeas proceedings. Specifically, he requests that this Court:

1.  Set a date for an evidentiary hearing to resolve factual disputes regarding this motion as needed;

2.  Grant this motion for relief from judgment;

3.  Order that Mr. Johnson file an amended habeas corpus petition within 120 days; and

4.  Stay his execution, as requested in a concurrently filed motion.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender

/s/ Jeremy Schepers
Jeremy Schepers (24084578)
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
jeremy_schepers@fd.org
(214) 767-2746
(214) 767-2886 (fax)

## CERTIFICATE OF CONFERENCE

I, Jeremy Schepers, hereby certify that on the 24th day of June, 2019, I conferenced this motion with Ellen Stewart-Klein of the Texas Attorney General's Office. She informed me that the Director opposes this motion.

/s/ Jeremy Schepers
_____
Jeremy Schepers

## CERTIFICATE OF SERVICE

I, Jeremy Schepers, hereby certify that on the 24th day of June, 2019, a copy of the foregoing motion was delivered via ECF to the Texas Attorney General's Office, attention Ellen Stewart-Klein.

/s/ Jeremy Schepers
_____
Jeremy Schepers