Robert P. Schuwerk P.C.
# Robert P. Schuwerk
Attorney at Law

## DECLARATION OF ATTORNEY ROBERT P. SCHUWERK

I, Robert P. Schuwerk, state and declare as follows:

1. I am an attorney licensed and in good standing in the states of Texas and Illinois. I am currently a Professor Emeritus of the University of Houston Law Center in Houston, Texas. I joined the Law Center faculty in January of 1982 and attained emeritus status in 2015.

2. I attended the University of Chicago, attaining three degrees from that institution, a Bachelor of Science in 1964, a Master of Arts in the Teaching of Mathematics in 1966 and a Juris Doctor in Law in 1972, the last with honors.

3. My scholarly interests have focused on what is commonly termed "the law of lawyering," that is, the law governing attorney disciplinary and tort liability. I taught courses in those subjects throughout my teaching career, often multiple courses in the same academic year. In addition, I served as an assistant reporter for the State Bar of Texas blue-ribbon committee that wrote what became the original version of the Texas Disciplinary Rules of Professional Conduct and, shortly after those rules were adopted, co-authored a book-length article on those new rules.[1] Thereafter, I served for more than twenty years as a member of the Texas Disciplinary Rules of Professional Conduct Committee of the State Bar of Texas, including ten years as its chair, the Bar's committee charged with originating any needed amendments to those rules and commenting on any such amendments proposed by others. This work led me to co-author a treatise on Texas attorney tort and disciplinary liability in 2002, a publication that has been substantially

---

[1] *See* Robert P. Schuwerk and John F. Sutton, Jr., *A Guide to the Texas Disciplinary Rules of Professional Conduct*, 27A Hous. L. Rev. 1-484 (1990).

revised and updated each year since.[2] My portions of that work address the substantive law governing attorney tort and disciplinary liability.

4. In addition to my scholarly work, since 1986, I have served as both a consulting expert and/or as a testifying expert in numerous cases involving the ethical behavior of attorneys, including multiple capital cases raising such issues. Insofar as this matter is concerned, I have been asked to determine whether or not attorney Patrick F. McCann, who until recently served as one of the lawyers for Dexter Johnson in this matter, was faced with conflicts of interest in the course of that representation and, if he was, whether he dealt with those conflicts in a professionally appropriate manner. As explained in greater detail below, it is my opinion that such conflicts did arise, that they were clear and serious, that Mr. McCann did not address them in a professionally appropriate manner and that, unless remedied by this court, those missteps by Mr. McCann will cause irreparable injury to Mr. Johnson.

5. In arriving at my conclusions, I have relied on the following documents: (i) Opposed Motion To Terminate Patrick F. McCann's Appointment; (ii) Reply To Mr. McCann's Response Regarding Removal And A Stay of Execution; (iii) Reply To The Director's Opposition Regarding Removal Of Mr. McCann And A Stay of Execution; (iv) the subsequent application filed by Mr. McCann and Ms. Miller; and (v) such other legal authorities as I believed to be most pertinent to the issues on which I have been asked to opine.[3] I base my factual representations concerning the history of this matter and the

---

[2] The most recent edition of this work is Robert P. Schuwerk and Lillian B. Hardwick, HANDBOOK OF TEXAS LAWYER AND JUDICIAL ETHICS: ATTORNEY TORT STANDARDS, ATTORNEY ETHICS STANDARDS, JUDICIAL ETHICS STANDARDS, RECUSAL AND DISQUALIFICATION OF JUDGES 2019 (Thomson * Reuters 2019) (hereafter 2019 HANDBOOK).

[3] I also received copies of the order appointing the Federal Public Defender's Office, the Director's Opposition to the removal of Mr. McCann, and the order staying Mr. Johnson's execution.

Robert P. Schuwerk P.C.
# ROBERT P. SCHUWERK
Attorney at Law

actions taken or not taken by Mr. McCann in connection with it entirely on the discussions of those topics contained in items (i)-(iv) above, which for purposes of this Declaration I take to be true. However, I may review other materials pertinent to the issues I will be discussing and reserve the right to alter or amend my analysis if new and material information comes to my attention as a result of reviewing any such additional materials.[4]

6. I begin with a general overview of how attorney-client conflicts of interest should be addressed by an attorney faced with such a situation. An attorney is obligated before undertaking a representation of a prospective new client to determine whether doing so either would result, or in reasonable probability could result, in a conflict of interest between the prospective client's interests at stake in the contemplated representation and those of either a former client of the lawyer, a current client of the lawyer, or the lawyer him- or herself.[5] Without detailing the circumstances that can give rise to such a conflict with respect to each of those three situations, the most salient point for present purposes is that in each of them, the lawyer must advise his or her client of the existence and nature of the conflict, explain its significance and, if ethically permissible,[6] either obtain the client's permission to proceed[7] or seek to withdraw from the representation.[8] Moreover, even if a representation was properly undertaken due to an absence of any

---

[4] For example, it is my understanding that Mr. McCann filed a response to the Opposed Motion which, because it was filed under seal, I have been unable to review.

[5] *See* 2019 HANDBOOK, §§ 1:4.a, at 20-27; 6:6.a, at 1034-36.

[6] *See* TDRPC Rule 1.06, cmt. 7, which provides in pertinent part that "when a disinterested lawyer would conclude that the client should not agree to the [conflicted] representation under the circumstances, the lawyer involved should not ask for such agreement or provide representation on the basis of the client's consent." *See also* 2019 HANDBOOK, § 6:6 at 1078-81 (discussing TDRPC Rule 1.06(c) and focusing on the impact of comment 7 on the proper application of that rule). Assuming the factual accuracy of the Federal Public Defender's recitations of the facts in its various filings, it is my opinion that the comment's disallowance of representation even with consent applies here.

[7] *See* 2019 HANDBOOK, § 6:6 at 1078-81 (discussing TDRPC Rule 1.06(c)).

[8] *See* 2019 HANDBOOK, § 6:6 at 1083-84 (discussing TDRPC Rule 1.06(e)).

3

conflict of interest at that time, an attorney remains under a continuing duty to monitor the ongoing representation for subsequently-arising conflicts of interest which, should they occur need to be addressed in the same fashion as initial conflicts of interest would be, as detailed above.[9]

7. Here the conflicts of interest at issue were ones that arose between lawyer and client in the course of the lawyer's representation of the client.[10] In resolving conflicts of interest arising in the course of a representation, an attorney is obliged to place the client's interests ahead of his or her own interests. This is so because, by virtue of the existence of the ongoing representation, the lawyer is a fiduciary of the client, with all of the duties and obligations such a relationship entails.[11] Fiduciary relationships subsume three broad duties: a duty of candor, a duty of loyalty and a duty of confidentiality.[12] As applied to conflicts of interest between a client's interest and those of the client's lawyer, the duty of candor would require the lawyer to advise the client of the nature of the conflict and its reasonably foreseeable impact on the lawyer's representation of the client were it to be acted on to the client's detriment.[13] The duty of loyalty, in turn, would require the lawyer to refrain from taking any actions with respect to the conflict that furthered his or her own interests at the expense of those of the client.[14] Finally, the duty of confidentiality would require the lawyer to communicate with his or her client concerning the conflict in a manner that is as protective as possible of the client's own confidences and other interests

---

[9] *See* 2019 Handbook, § 1:4.a, at 26-27.
[10] *See* paragraphs 8-15 of this Declaration. *See also* 2019 Handbook, § 6:6 at 1057-76 (discussing examples of such conflicts).
[11] *See* 2019 Handbook, § 2:10, at 325-26.
[12] *See* 2019 Handbook, § 2:10, at 326.
[13] *See* 2019 Handbook, § 2:10, at 328-29.
[14] *See* 2019 Handbook, § 2:10, at 326.

at stake in the representation.[15] Moreover, as noted earlier, the lawyer could not proceed with the representation despite the existence of the conflict without the client's consent and, in some circumstances, the lawyer could not proceed with the representation even with the client's consent.[16]

8. As applied to the matter at hand, a conflict of interest arose in this matter due to legal changes in the propriety of Mr. McCann serving as federal habeas counsel after having served as state habeas counsel for Mr. Johnson. Although this practice was common in Texas at one time, the Supreme Court cases of *Martinez v. Ryan*[17] and *Trevino v. Thaler*[18] created new law establishing that serving as both state and federal habeas counsel for a client, at least in Texas, would be a conflict of interest. The conflict arose from the fact that *federal* habeas counsel had as his or her obligation the duty to analyze and, if appropriate, to present l arguments on the client's behalf premised on the ineffective performance of *state* habeas counsel, and it simply wasn't reasonable to expect a lawyer to engage in a thorough and dispassionate critique of his or her own earlier performance.[19] In Texas, this type of conflict is compounded by the fact that Texas attorneys previously qualified to represent capital defendants may have their eligibility revoked due to a finding by any state or federal court that attorney rendered ineffective

---

[15] *See* 2019 HANDBOOK, § 2:10, at 327-28.
[16] *See* note 5, *supra*; 2019 HANDBOOK, § 6:6, at 1078-81.
[17] *See* Martinez v. Ryan, 566 U.S. 1 (2012).
[18] *See* Trevino v. Thaler, 569 U.S. 413 (2013).
[19] *See* Christenson v. Roper, 135 S. Ct. 891, 894 (2015) (holding a conflict of interest arises when counsel faithfully representing their client would have to "denigrate their own performance," because such an argument "threatens their own professional reputation and livelihood"). *See also* Speer v. Stephens, 781 F.3d 784, 785 (5th Cir. 2015) (stating that "[t]he petitioner's present lawyer is conflicted only in the sense that every lawyer charged to examine the performance of counsel is conflicted in that task when the performance is his own", appointing supplemental conflict-free counsel and remanding the case to the district court for investigation and, if appropriate, litigation of possibly defaulted IATC claims); Mendoza v. Stephens, 783 F.3d 203 (5th Cir. 2015) (same, with Owen, J. stating in concurrence that "[f]rom an objective observer's viewpoint, [counsel's] loyalty to her client reasonably appears to be adversely limited because of her own interests"; *id.* at 207).

5

assistance in any criminal case or engaged in the practice of unprofessional or unethical behavior.[20]

9. Once this conflict became apparent, Mr. McCann should have at least: (i) advised Mr. Johnson of the existence of this conflict, (ii) explained its impact on Mr. McCann's ability to provide comprehensive and competent representation to Mr. Johnson as federal habeas counsel, (iii) advised Mr. Johnson that he (Mr. McCann) could not provide Mr. Johnson with disinterested advice concerning whether to waive this conflict, (iv) urged Mr. Johnson to seek the advice of competent and disinterested counsel as to whether to grant such a waiver, and (v) agreed to abide by Mr. Johnson decision in that regard if made after receiving that disinterested advice.[21] However, Mr. McCann apparently did not do any of those things and he compounded that omission by addressing the conflict in a manner that violated both his ethical and his fiduciary obligations to Mr. Johnson.[22]

10. In the wake of *Martinez* and *Trevino*, a procedure was developed in Texas federal courts to cover situations where state habeas counsel had been appointed federal habeas counsel as well, but the federal habeas process was still ongoing. In such cases, federal habeas counsel who had also served as state habeas counsel would either seek to withdraw altogether or to consent to the appointment of additional, conflict-free habeas counsel.[23] Such motions were granted routinely. In this case, however, Mr. McCann did not follow that procedure. Instead, apparently without first consulting with Mr. Johnson, Mr.

---

[20] Procedures Regarding Eligibility for Appointment of Attorneys as Counsel Under Article 11.071, Section 2(f), Code of Criminal Procedure, and Regarding the Maintenance of a Statewide list of Attorneys Eligible for Appointment as Required by Section 78.056, Government Code, 8(b)-(c) (Jan. 1, 2010).
[21] *See* 2019 HANDBOOK, § 2:10, at 328-29.
[22] Only in the very limited circumstances where the lawyer involved knew that: (i) s/he had performed flawlessly as state habeas counsel and (ii) competent and disinterested counsel would agree with that assessment would such a conflict be absent. The facts presented here do not satisfy that standard.
[23] *See* Reply To The Director's Opposition Regarding Removal Of Mr. McCann And A Stay of Execution, at 1-3.

McCann filed a motion in which, while acknowledging that there was at least one issue that, as Mr. Johnson's counsel, he could have but did not raise, went on to defend his earlier decision not to do so as due to factors other than his own inadequate performance as habeas counsel.[24] By defending his actions in this manner, Mr. McCann undermined Mr. Johnson's right to federal habeas review of the claim that he had defaulted in state habeas by making an argument that directly contradicted the procedural predicates that were required by *Martinez* and *Trevino*.[25] He also undermined Mr. Johnson's right to the appointment of conflict-free counsel to review Mr. McCann's performance as state habeas counsel and identify any other claims Mr. McCann may have defaulted in state habeas.

11. In the situation just presented, Mr. McCann faced a conflict between his own professional interests and the litigation interests of Mr. Johnson. He could acknowledge that he had a *Martinez / Trevino* conflict that made it inappropriate to continue as sole federal habeas counsel for Mr. Johnson—a choice clearly in Mr. Johnson's interest—or he could choose to defend the quality of his previous representation to his client's detriment. He chose the latter course when he was duty bound to choose the former and, moreover, compounded that error by making that choice without consulting with Mr. Johnson. By acting in this manner, Mr. McCann violated both his duty of loyalty and his duty of candor to Mr.

---

[24] *See* Opposed Motion To Terminate Patrick F. McCann's Appointment, at 4-6.

[25] *See* Opposed Motion To Terminate Patrick F. McCann's Appointment, at 11-17. I also note that the Opposed Motion To Terminate Patrick F. McCann's Appointment argues that there were numerous bases for criticizing the adequacy of Mr. McCann's state habeas counsel's performance, including his failure to obtain the records of state trial counsel and his failure to raise any extra-record IATC claims growing out of Mr. Johnson's representation at his trial. *See id*. at 7-10, 18-28. Of course, the most fundamental of state habeas counsel's duties is to conduct a thorough investigation of trial counsel's performance in those respects and to raise any viable claims of that kind, as they are potentially procedurally barred if not asserted in state habeas proceedings. *See id*. at 7-8.

Robert P. Schuwerk P.C.
# Robert P. Schuwerk
Attorney at Law

Johnson, as well as the corresponding disciplinary rules outlining his ethical duties as an attorney for Mr. Johnson—TDRPC Rules 1.06(b) and (c) and 1.03.

12. Subsequently, Mr. McCann has been confronted with additional conflicts of interest concerning his representation of Mr. Johnson. These too have not been handled in a professionally proper manner. The most significant one of these arose when his conflicted representation of Mr. Johnson in federal habeas proceedings was challenged.[26]

13. As detailed both in Mr. Johnson's Opposed Motion To Terminate Mr. McCann's Appointment and in his Reply To Mr. McCann's Response Regarding Removal And A Stay Of Execution, Mr. McCann was disabled from filing many of Mr. Johnson's viable claims due to the manifest conflict between Mr. Johnson's best interests on the one hand and Mr. McCann's reputational and professional interests on the other.[27] The Motion To Terminate was filed on April 5, 2019. Nonetheless, ostensibly acting on behalf of Mr. Johnson, on April 9, 2019, Mr. McCann filed a successor writ of habeas corpus in state court, raising only one claim on behalf of Mr. Johnson. This apparently was done without first consulting with Mr. Johnson or his other counsel before filing the writ and was clearly in derogation of Mr. Johnson's interests because it erected additional procedural barriers to consideration on the merits of any of the other claims that the FPD might file on his behalf.[28]

---

[26] Another conflict that arose here was Mr. McCann's decision to hire Mandy Miller to assist him in his representation of Mr. Johnson, despite the fact that Ms. Miller had been employed by the district attorney's office that had prosecuted the capital case against Mr. Johnson leading up to and during his trial, as well as while the direct appeal from that trial was ongoing. I am not aware that Mr. Johnson was made aware of Ms. Miller's prior association with the district attorney's office or that he was either offered an opportunity to, or did in fact consent to, her involvement in his case. In those circumstances, involving Ms. Miller in the handling of Mr. Johnson's ongoing defense was not professionally proper. It appears that Ms. Miller at least participated in drafting and filing the successor habeas petition in this matter. The full of extent of her involvement in his defense is not known to me at this time.

[27] *See* paragraphs 8-11 of this Declaration.

[28] *See* Reply To Mr. McCann's Response Regarding Removal And A Stay Of Execution, at 2-6.

8

14. As Mr. Johnson's attorney at the time he took the actions set out in paragraphs 12-13 above, Mr. McCann owed him the full range of fiduciary duties that a lawyer owes to a client, and remained subject to the disciplinary obligations that the TDRPC imposes on a Texas lawyer representing a client.[29] Among those obligations was a duty of loyalty, which in the present circumstances prohibited him from taking any action that furthered his own interests over those of Mr. Johnson, as well as taking any action that actively harmed Mr. Johnson's interests at stake in the representation. In my opinion, it should have been perfectly clear to Mr. McCann that his action would violate those precepts, and that any benefits his successor state habeas petition sought to confer on Mr. Johnson could have been achieved by different means that did not imperil the viability of Mr. Johnson's other claims.[30] By acting in this manner, Mr. McCann violated his fiduciary duty of loyalty to Mr. Johnson, as well as the corresponding disciplinary rule outlining his ethical duties as an attorney for Mr. Johnson in the event conflicts arose between them, TDRPC Rule 1.06(b).

15. In addition to a duty of loyalty, Mr. McCann's fiduciary obligations to Mr. Johnson also included a duty of candor which, in the present circumstances, required him to fully advise his client of: (i) his intent to file a successor state habeas petition, (ii) the alleged existence of previously unasserted IATC and IAAC claims that the FPD asserted existed that would implicate the quality of his (Mr. McCann's) representation of his client, (iii) the claim the contemplated habeas petition would advance and those it would omit, (iv) the difficulties that would arise from not including the omitted claims in the successor

---

[29] *See* 2019 HANDBOOK, § 2:10, at 325-26.
[30] Presumably, the claim in the successive writ filed by Mr. McCann could have been filed by the FPD's office along with the other claims that it had identified.

9

Robert P. Schuwerk P.C.
# ROBERT P. SCHUWERK
Attorney at Law

state habeas petition, (v) his own ability to give disinterested advice to Mr. Johnson as to whether or not Mr. McCann should file the successor state habeas petition in its contemplated form (vi) his recommendation that Mr. Johnson secure independent legal advice as to his best course going forward and (vii) Mr. McCann's willingness to abide by Mr. Johnson's directions going forward after receiving that independent legal advice. Because of the importance of the steps he was contemplating taking (and subsequently did take) for the interests of Mr. Johnson at stake in this matter, both fiduciary principles and disciplinary standards imposed an affirmative duty on Mr. McCann to undertake such consultative measures before proceeding with those measures.[31] However, none of those steps occurred. Consequently, Mr. McCann violated both his fiduciary duty of candor to Mr. Johnson and his disciplinary obligation to keep Mr. Johnson apprised of significant developments in his case, as contained in TDRPC Rules 1.03 and 1.06(c).

16. I have read and reviewed this ten-page declaration and declare that the factual recitations contained herein are based on reasonable inquiry and the legal opinions expressed herein are honestly and reasonably held. To that extent, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

17. Further Declarant sayeth not.

Executed in Travis County, State of Texas, June 18, 2019.

*Robert P. Schuwerk*

Robert P. Schuwerk
Attorney at Law
TBN 17855300

---

[31] *See* 2019 HANDBOOK, § 2:10, at 328-29.