IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEXTER JOHNSON,                        §
                    Petitioner,         §
                                        §
v.                                      §    CIV. ACT. NO. 4:11-cv-02466
                                        §
LORIE DAVIS, Director,                  §    *DEATH PENALTY CASE*
Texas Department of Criminal            §    *Execution Date 8/15/2019*
Justice, Correctional Institutions      §
Division,                               §
                    Respondent.         §

## RESPONDENT'S OPPOSITION TO
## MOTION FOR STAY OF EXECUTION AND
## MOTION FOR RELIEF FROM JUDGMENT

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

LISA TANNER
Acting Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*Counsel of Record

ELLEN STEWART-KLEIN
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
Ellen.Stewart-Klein@oag.texas.gov

ATTORNEYS FOR RESPONDENT

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES .................................................................. iv

RESPONDENT'S OPPOSITION TO MOTION FOR STAY OF EXECUTION
AND MOTION FOR RELIEF FROM JUDGMENT .......................................... 1

STATEMENT OF THE CASE .............................................................. 2

   I.   History of the Proceedings ...................................................... 2

   II.  Facts of the Crime.................................................................... 4

   III. Evidence Relating to Punishment ............................................ 6

ARGUMENT .................................................................................... 9

   I.   No Relief Is Warranted on Johnson's Rule 60(b) Motion. ...................... 9

      A. Johnson does not demonstrate the required extraordinary
         circumstances required to grant relief. ...................................... 9

      B. Counsel's omissions typically do not constitute a defect in the integrity
         of the proceedings. ................................................................ 15

      C.  Johnson's motion is untimely.............................................. 18

      D.  Regardless, counsel did not operate under a conflict of interest. ....... 21

   II.  Any Claims Johnson Wishes to Litigate Are Successive, Defaulted, and
       Time-barred.......................................................................... 23

      A.   Johnson's unalleged claims would be successive............................ 24

      B.   Alternatively, Johnson's unalleged claims are time-barred. ............. 25

      C.   Johnson's unalleged claims are unequivocally procedurally defaulted..
         ................................................................................ 27

III.  Johnson Is Barred from Relief for Any Claim of Ineffective Assistance of
Federal Habeas Counsel by Statute. ..................................................... 28

IV.  This Court Lacks Jurisdiction to Enter a Stay and Johnson Is Not
Entitled to a Stay of Execution. ............................................................. 29

CONCLUSION ...................................................................................................... 31

CERTIFICATE OF SERVICE ............................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Ackermann v. United States*, 340 U.S. 193 (1950)  ............................................  9

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012)  ..............................................  12

*Aguilar v. Dretke*, 428 F.3d 526 (5th Cir. 2005)  ............................................  27

*Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010)  .........................................  24

*Battaglia v. Stephens,* 824 F.3d 470 (5th Cir. 2016)  .....................................  19

*Beathard v. Johnson*, 177 F.3d 340 (5th Cir. 1999)  .......................................  22

*Beatty v. Davis*, _ F. App'x _, 2018 WL 5920498 (5th Cir. Nov. 12, 2018)  12-13

*Beets v. Collins*, 65 F.3d 1258 (5th Cir. 1995)  ...............................................  22

*Brooks v. Bobby*, 660 F.3d 959 (6th Cir. 2011)  .............................................  15

*Buck v. Davis*, 137 S. Ct. 759 (2017)  .............................................................  9

*Christeson v. Roper*, 135 S. Ct. 891 (2015)  ...................................................  27

*Clark v. Davis*, 850 F.3d 770 (5th Cir. 2017) ........................................... passim

*Crutsinger v. Davis*, slip Op. No. 18-70027 (5th Cir. Jul. 19, 2019)  ......... 10-11

*Cullen v. Pinholster*, 563 U.S. 170 (2011)  .....................................................  13

*Cuyler v. Sullivan*, 446 U.S. 335 (1980)  .......................................................  14

*Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013)  ............................................  12

*Duncan v. Walker*, 533 U.S. 167 (2001)  ........................................................  26

*Edwards v. Davis*, 865 F.3d 197 (5th Cir. 2017)  ...........................................  12

*Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014) .................................... 13

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ....................................................passim

*Hall v. Stephens*, 579 F. App'x 282 (5th Cir. 2014) ...................................... 12

*Haynes v. Davis*, 733 F. App'x. 766 (5th Cir. 2018) ...................................... 12

*Hernandez v. Thaler*, 630 F.3d 420 (5th Cir. 2011) ...................................... 12

*Howard v. Dretke*, 157 F. App'x. 667 (5th Cir.2005) ...................................... 30

*In re Coleman*, 768 F.3d 367 (5th Cir. 2014) ........................................... 17-18

*In re Paredes*, 587 F. App'x. 805 (5th Cir. Oct. 25, 2014) ........... 12, 16, 18, 20

*Lewis v. Lewis*, 326 F. App'x. 420 (9th Cir. 2009) ......................................... 20

*Martinez v. Ryan*, 566 U.S. 1 (2012) ....................................................... passim

*McFarland v. Scott*, 512 U.S. 849 (1994) ...................................................... 29

*Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999) ................................................ 26

*Pruett v. Stephens*, 608 F. App'x. 182 (5th Cir. 2015) ............................... 12, 19

*Raby v. Davis*, 907 F.3d 880 (5th Cir. 2018) ................................................. 12

*Ramirez v. Davis,* No. 19-70004, 2019 U.S. App. LEXIS 19109 (5th Cir. June 26, 2019) ...................................................................................... 11, 19

*Rodwell v. Pepe*, 324 F.3d 66 (1st Cir. 2003) ................................................ 16

*Rosales v. Quarterman*, 565 F.3d 308 (5th Cir. 2009) ................................... 29

*Smith v. Robbins*, 528 U.S. 259 (2000) ......................................................... 28

*Speer v. Stephens,* 781 F.3d 784 (5th Cir. 2015) ........................................... 15

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................ 23

*Tamayo v. Stephens*, 740 F.3d 986 (5th Cir. 2014) ................................... 19-20

*Teague v. Johnson*, 151 F.3d 291 (5th Cir.1998) ....................................... 29-30

*Treadway v. Parke*, 79 F.3d 1150, 1996 WL 117182 (7th Cir.) .................... 20

*Trevino v. Thaler*, 569 U.S. 413 (2013) ................................................... passim

*United States v. Garcia-Jasso*, 472 F.3d 239 (5th Cir. 2006) ....................... 21

*United States v. Garza*, 429 F.3d 165 (5th Cir. 2005) ................................... 22

*United States v. Infante*, 404 F.3d 376 (5th Cir. 2005) ............................ 21-22

*United States v. Locke*, 471 U.S. 84 (1985) .................................................. 27

*Ward v. Norris*, 577 F.3d 925 (8th Cir. 2009) ............................................... 16

*Williams v. Cain*, 143 F.3d 949 (5th Cir. 1998) ........................................... 30

## Constitutional Provisions

U.S. Const. art. V ...................................................................................... passim

U.S. Const. art. VI .................................................................................... 21-22

## Publications

Wright & Miller, Federal Practice and Procedure §2857 (3d ed. 2012)........... 9

## Rules

Fed. R. Civ. P. Rule 60(b) ........................................................................ passim

## Statutes

28 U.S.C. § 2244 ...................................................................................... 24-26

28 U.S.C. § 2251 ........................................................................... 4, 29-30

28 U.S.C. § 2254 .......................................................................... 2, 16, 28

28 U.S.C. § 3599 ................................................................................ 30

### RESPONDENT'S OPPOSITION TO
### MOTION FOR STAY OF EXECUTION AND
### MOTION FOR RELIEF FROM JUDGMENT

**The State of Texas is scheduled to execute Movant Dexter Johnson on August 15, 2019, after 6 p.m. (CT).** Johnson was properly convicted and sentenced to die for the rape and murder of Maria Aparece but committed four other murders for which he was not convicted including Aparece's boyfriend who was abducted with her. Johnson has exhausted his state and federal appeals but now moves a second time for relief from the Court's final judgment and separately moves for a stay of execution.

In his motion, Johnson fails to assert any underlying claims for relief. Instead, Johnson alleges a defect in his prior federal habeas proceedings based on former federal habeas counsel's alleged conflict of interest. But Johnson is not entitled to the relief he requests. First, Johnson is not entitled to relief from judgment because he presents no extraordinary circumstance. Second, the Motion is untimely. Third, any claims Johnson wishes to litigate if relief from judgment is granted are defaulted, time-barred, and successive. Finally, Johnson is barred from relief by statute for any claim of ineffective assistance of federal habeas counsel. And a stay of execution is not only unwarranted but this Court lacks jurisdiction to stay the execution absent granting the Rule 60(b) motion as no habeas petition is pending.

1

## STATEMENT OF THE CASE

### I.    History of the Proceedings

Johnson was indicted, convicted, and sentenced to death for the robbery, kidnapping, and murder of Maria Aparece. ROA.8799-802. His conviction and sentence were affirmed on direct appeal. *Johnson v. State*, No. 75,749 (Tex. Crim. App. January 27, 2010) (unpublished), *cert denied*, 130 S. Ct. 3515 (2010); ROA.8803-815. While his direct appeal was still pending, Johnson also filed a state application for writ of habeas corpus, which the Texas Court of Criminal Appeals denied. *Ex parte Johnson*, No. 73,600-01, Per Curiam Order dated June 30, 2010; ROA.8446, 8452-487. A year later, Johnson filed a federal petition for habeas corpus relief under 28 U.S.C. § 2254 raising a total of eleven claims. ROA.8-204. Following the Director's answer, this Court issued its 2013 opinion (2013 Opinion) and denied relief on all but Johnson's claim that his custodial statement was admitted in violation of his Fifth Amendment rights, on which the Court ordered the parties to provide additional briefing. ROA.370-419. After taking into consideration the supplemental briefing of both parties, this Court then issued the 2014 opinion (2014 Opinion) and denied relief on Johnson's Fifth Amendment claim as well, but determined that the claim deserved "encouragement to proceed further" and certified only that claim for appeal. ROA.499-511.

Johnson appealed the Court's decision on his Fifth Amendment claim to the appellate court, and simultaneously requested an additional certificate of appealability (COA) for four other issues raised in his federal petition. On July 2, 2015, the Fifth Circuit issued an unpublished opinion affirming the district court's denial of habeas relief on Johnson's Fifth Amendment claim and denying his request for additional COA. *Johnson v. Stephens*, 617 F. App'x 293 (5th Cir. 2015). Johnson filed a petition for certiorari review which was denied. *Johnson v. Stephens*, 136 S. Ct. 980 (2016).

On June 6, 2017, Johnson filed a motion for new trial in this Court. ROA.585. Johnson claimed that because the Court had earlier disposed of the bulk of his claims and did not enter a separate final judgment, the Court retained jurisdiction over those claims. This Court denied Johnson's motion and his motion for reconsideration. ROA.823, 831. Johnson requested and was denied a COA by the Fifth Circuit Court of Appeals. *Johnson v. Davis*, slip Op. No. 17-70032 (5th Cir. Aug. 24, 2018) (per curiam). And the Supreme Court denied him a writ of certiorari. *Johnson v. Davis*, No. 18-6834 (Mar. 18, 2019).

Johnson was set for execution on May 2, 2019. Johnson pro se asked this Court for the appointment of new counsel and the Northern District of Texas Capital Habeas Unit (CHU) sought their appointment as co-counsel based on an alleged conflict of interest because lead counsel represented Johnson during

both federal and state habeas proceedings. This Court appointed the CHU as co-counsel which sought to terminate lead counsel's representation and a stay of execution. In the meantime, former federal habeas counsel filed a clemency petition and a subsequent state habeas application which the CCA denied as an abuse of the writ. *Ex parte Johnson*, No. WR-73,600-02 (Tex. Crim. App. 2019). This Court determined that the CHU was entitled to a ninety-day stay of execution as newly appointed supplemental counsel—of which four days remained—and stayed Johnson's execution to consider the motion to terminate. Ord. (Apr. 30, 2019), ECF No. 84; *see* 28 U.S.C. § 2251(a)(3). After the entry of the stay, former federal habeas counsel was permitted to withdraw. And on the motion of the Respondent, this Court entered a scheduling order. Ord. (May 29, 2019), ECF No. 94. In compliance with that order, Johnson files the present motions to stay and for relief from judgment.

## II.   Facts of the Crime

The Fifth Circuit previously summarized the facts of the offense in its unpublished opinion denying Johnson a COA:

> During the early morning hours of June 18, 2006, Johnson and four friends were driving around the neighborhood looking for someone to rob. Johnson's companions were: (1) Keithron Fields, whom Johnson considered a brother; (2) Timothy Randle, who was driving that night; (3) Ashley Ervin, the owner of the car; and

(4) Louis Ervin, Ashley's fifteen-year-old brother. Louis Ervin testified as to the events that took place that night.

The group eventually came upon Maria Aparece and her boyfriend, Huy Ngo, talking while sitting inside Aparece's blue Toyota Matrix. Johnson ordered Randle to turn the car around and park alongside the curb because he wanted to "jack the people that was in the car." He asked Fields if he was ready and placed a black bandana over his mouth while Fields pulled the hood on his jacket over his head. Brandishing a shotgun, Johnson ran up the driver's side and threatened to bust through the window if Aparece did not open the car door. Fields was pointing a medium-sized black gun towards the passenger side. Although she refused at first, Aparece eventually complied and opened the door. Johnson pulled Aparece from the car by her hair and forced her into the backseat of the Matrix while Fields shoved Ngo into the backseat as well. Johnson ordered Louis Ervin into the backseat with the victims while he and Fields climbed into the front. Johnson then drove the group around for close to ten minutes demanding money from Aparece and Ngo, but they did not have any. Angered, Johnson drove around for another twenty minutes or so searching for a wooded area while Aparece cried and begged for her freedom. They eventually found a park with a wooded area, and Johnson parked the Matrix in the woods. Randle and Ashley Ervin, who had been following closely in her car, parked nearby. Fields forced Ngo out of the Matrix and onto his knees while Johnson climbed into the backseat and raped Aparece at gunpoint. Fields held a gun to Ngo's head and taunted him as he was crying, saying things like "My brother in there having sex with your girlfriend. What you going to do about it?" Afterward, Johnson told the couple that "it was the end right here" and that he was going to "off them." Although they both continued to cry and Aparece begged for her life, Johnson and Fields marched the couple into the woods and shot them both once in the head.

Immediately after the murders, Johnson and Fields, driving Aparece's blue Matrix, caught up with the rest of their companions at a stoplight. Johnson and Fields were laughing and playing loud music. Before ordering them to follow him to a gas station, Johnson boasted, "Man, I had to go ahead and off them people." At the gas

5

station—where police obtained surveillance video of the Matrix—
Louis Ervin asked Johnson why he killed the couple, to which
Johnson replied that Johnson had said the name "Louis" to the
victims during the robbery and that "they didn't want to give him
no money."  Johnson also stated that "killing people is what he do."
Later, Johnson took the group on a shopping spree at two separate
Walmarts where police later obtained surveillance video showing
Johnson, Fields, and Randle using Aparece's credit card. Johnson
was arrested three days later for possession of marijuana and was
quickly linked to the disappearance of Aparece and Ngo.

*Johnson v. Stephens*, 617 F. App'x at 295-96.

## III.  Evidence Relating to Punishment

In addition to the evidence of two murders presented at the
guilt/innocence phase of trial, the jury also heard testimony of Johnson's
considerably violent criminal behavior in the weeks surrounding the instant
offense. First, the prosecution called Vincent Luong to testify at guilt/innocence
that he was kidnapped and robbed in almost the same manner as the victims
in this case by Johnson. 23 RR 170-197. This robbery took place June 19,
2006—the day after Johnson murdered Aparece and Ngo. *Id*. at 171.

The State presented evidence at the punishment phase that Johnson had
participated in three additional murders and one aggravated robbery in the
weeks surrounding the murders of Aparece and Ngo. In the first murder,
Johnson shot and killed Brady Davis, Jr., at a carwash in Houston on May 26,
2006. 27 RR 156-59; 28 RR 223-24; 29 RR 271-73. A witness accompanying
Davis had gone to get coffee, only to return to find Davis lying on the ground,

shot. 29 RR 224-25. Johnson and Alvie Butler approached Jose Olivares and his nephew, Edgar Cortinas, as they were using a payphone on June 16, 2006. 29 RR 89-102, 107-108, 173-74. When Cortinas attempted to flee, Johnson shot at him, hitting him in the arm. *Id*. at 99-102. Olivares then lunged at the attackers to prevent them from shooting his nephew, and Johnson and Butler shot Olivares three times, killing him. *Id*. Finally, the police also linked Johnson to the murder of Jose Lopez, who was found shot in the head in his red Ford Tempo. 27 RR 164-67; 28 RR 34, 40-45, 53-55, 65-66; 29 RR 136, 141, 144, 151, 267-70. Firearms evidence showed that the same gun that fired the bullets that killed Aparece also killed Lopez. 30 RR 111-12.

In addition to the multiple murders, the State presented evidence that Johnson had participated in multiple aggravated robberies. Johnson and accomplices robbed Julie Fletcher at gunpoint outside of her apartment complex. 27 RR 14-31.  On June 19, 2006—a day after Johnson murdered Aparece and Ngo and the same day Vincent Luong was kidnapped and robbed—Johnson and his cohorts approached Mahmood Hassan as he was leaving for work in the early morning hours. 27 RR 46-61. Fearing the approaching men, Hassan screamed and ran towards his house, leaving his beige Toyota Camry running. 27 RR 49-55; 29 RR 207-10. The men drove off in the car, which was later recovered by police. 27 RR 47-48, 51, 55-56, 60, 67; 29

7

RR 207-10. Johnson and the group also robbed Clinton Henson at gunpoint outside of a McDonald's in Sealy, Texas, stealing his credit cards, wallet, and rental car. 27 RR 67, 71, 84-93, 102-103; 28 RR 9-20; 29 RR 268, 273-76.

Finally, the State presented the testimony of Timothy Randle, who described in detail the events of Aparece's rape and murder and corroborated most of Louis Ervin's guilt/innocence testimony. 29 RR 235-54. Randle testified that Johnson told him that he "offed both of them," explaining that he shot Ngo "execution style," and that Aparece started screaming after that. 30 RR 28-29. He described the robbery and murders as Johnson's idea and occurring under Johnson's direction. 29 RR 237-250. Randle also testified about the group's aggravated robbery of Vincent Loung after the Aparece and Ngo murders. *Id.* at 255-66. According to Randle, Johnson told him to have Keithron Fields kill Luong, but Randle refused and instead released him. *Id.* at266.

In addition, Randle testified about the murders of Jose Lopez and Brady Davis, Jr. Id. at 267-73. He described in detail how he was driving Clinton Henson's stolen rental car while Johnson, Fields, and Butler were in the blue Matrix when they stopped behind Lopez's red Tempo. *Id.* at 267-70. Fields and Butler got into Lopez's car, and Johnson then led them to a dead-end street. *Id.* At the time, Randle believed they were only going to rob Lopez, but Johnson later announced they had "offed him." *Id.* Johnson also told Randle about the

8

murder of Davis, pointing out the car wash where it happened and stating that "the dude started acting crazy" so he shot him. *Id*. at 271-73.

## ARGUMENT

### I.   No Relief Is Warranted on Johnson's Rule 60(b) Motion.

A district court has jurisdiction to consider a Rule 60(b) motion in habeas proceedings so long as the motion "attacks, not the substance of the federal court's resolution of the claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). But Rule 60(b)(6) relief is available only if the motion is made within a reasonable time and extraordinary circumstances are present. *Ackermann v. United States*, 340 U.S. 193, 199 (1950); *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017). Those circumstances do not exist in this case. Further, Johnson must show that he can assert a good claim or defense if his case is reopened. *Buck v. Davis*, 137 S. Ct. 759, 780 (2017) (citing Wright & Miller, Federal Practice and Procedure §2857 (showing "a good claim or defense" is a precondition of Rule 60(b)(6) relief)). But Johnson does not and, in fact, cannot make such a showing.

### A.   Johnson does not demonstrate the required extraordinary circumstances required to grant relief.

Johnson asserts that his case presents "unique and extraordinary circumstances that justify the reopening of the judgment against him. Mot.

Relief from J. ECF No. 95 at 16-25. Johnson cites to his alleged conflict with counsel, and counsel's self-interest as a defect in the proceedings, discussed below. *Id*. at 17-21. Johnson next attacks the investigation performed by former federal habeas counsel. *Id*. at 21-22. He also denigrates former federal habeas counsel for having an incomplete file. *Id*. at 22-24. Finally, Johnson chastises this Court for failing to remedy the alleged conflict. *Id*. at 24.  But as shown below, there is nothing extraordinary about Johnson's case.

In a published opinion denying a stay of execution, released today, the Fifth Circuit reinforced its rulings regarding the rarity of the extraordinary circumstances requirement. *Crutsinger v. Davis*, slip Op. No. 18-70027 (5th Cir. Jul. 19, 2019), attached as Exhibit 1. The court denies the stay because Crutsinger was unable to show he was likely to succeed on the merits. *Id*. at 4. And, Crutsinger was unable to make that showing because he was not able to establish that "extraordinary circumstances" exist to justify the reopening of the final judgment because "not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final." *Id*. *citing Crutsinger v. Davis*, No. 18-70027, 2019 WL 2864445, at *4 (5th Cir. July 3, 2019) (quoting *Gonzalez*, 545 U.S. at 536). In so holding, the court reaffirms both its own precedent and the state's position that merely changes in decisional law insufficient to warrant such relief.

10

Exhibit 1 at 3-4. Moreover, the Fifth Circuit denied Crutsinger a stay despite that fact that he, unlike Johnson, identified a defaulted claim where funding was denied. Thus, if Crutsinger cannot make the required showing, it seems impossible for Johnson to do so.

In fact, as recent precedent demonstrates, an alleged conflict is insufficient to demonstrate an extraordinary circumstance. The Fifth Circuit has addressed this issue in *Ramirez v. Davis*, a case strikingly similar to this one. There, Fifth Circuit held that "that no reasonable jurists could conclude that the district court abused its discretion in ruling that Ramirez failed to show extraordinary circumstances justifying Rule 60(b)(6) relief." *Ramirez*, No. 19-70004, 2019 U.S. App. LEXIS 19109, at *19 (5th Cir. June 26, 2019). Ramirez was also represented by the same counsel during state and federal habeas corpus proceedings. *Id*. at *4-5. The court found that Ramirez's allegations of a conflict that could potentially be a defect was a true Rule 60(b) motion. *Id*. at *10. But the court denied a COA because "no reasonable jurist would conclude that conflict-free counsel could have asserted a meritorious *Trevino*[3] claim or, for that matter, that Ramirez could now assert a meritorious *Trevino* claim if his case were reopened with conflict-free counsel." *Id*. at *18.

---

[3]    *Trevino v. Thaler*, 569 U.S. 413 (2013).

Here Johnson fails to allege any underlying claim that was defaulted from federal habeas review. But his burden is even higher because he must demonstrate not just any defaulted claim but an ineffective assistance of trial counsel (IATC) claim that was defaulted due to the actions of state habeas counsel. This he cannot do. As shown in the prior opinions of this Court, Johnson had only one ground which the Court procedurally defaulted. Mem. Op. & Ord. Deny Mot. Abate (August 19, 2013), ECF No. 19; Mem. & Ord. (June 25, 2014), ECF No. 31. But that ground was not an IATC claim and this Court conducted an alternative merits analysis. Mem. Op. ECF No. 19, at 38-42. Thus, Johnson cannot demonstrate the extraordinary circumstances that warrant Rule 60(b) relief under current precedent.

Further, the Fifth Circuit has repeatedly held that the change in decisional law effectuated by *Martinez v. Ryan*, 566 U.S. 1 (2012), is insufficient, on its own, to demonstrate 'extraordinary circumstances.'" *Haynes v. Davis*, 733 F. App'x. 766, 769 (5th Cir. 2018); *Beatty v. Davis*, ___ F. App'x ___, 2018 WL 5920498, at *5 (5th Cir. Nov. 12, 2018); *Raby v. Davis*, 907 F.3d 880 (5th Cir. 2018); *Edwards v. Davis*, 865 F.3d 197, 208 (5th Cir. 2017); *Pruett*, 608 F. App'x. at 188; *Hall v. Stephens*, 579 F. App'x 282, 283 (5th Cir. 2014); *Paredes*, 587 F. Appx. at 825; *Diaz v. Stephens*, 731 F.3d 370, 375–76 (5th Cir. 2013); *Adams v. Thaler*, 679 F.3d 312, 319 (5th Cir. 2012); *Hernandez v. Thaler*,

630 F.3d 420, 430 (5th Cir. 2011). And the Fifth Circuit has rejected the related argument that extraordinary circumstances result from a potential conflict posed by a continuity in representation. *See Beatty*, 2018 WL 5920498, at *5.

Johnson's complaints about the investigation performed by former federal habeas counsel are also insufficient to demonstrate extraordinary circumstances. Mot. Relief from J. ECF No. 95 at 21-22. Johnson asserts that former federal habeas counsel's investigation was insufficient. Specifically, he says that counsel "did not present a single new, case-specific fact in state or federal habeas." *Id*. at 21. But Johnson fails to state what facts counsel should have discovered or what claims he should have made. Johnson further complains that his federal habeas petition "was copied nearly verbatim from the state habeas application." *Id*. But clearly established federal law bars consideration of new evidence that was not presented to the state courts. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *see also Escamilla v. Stephens*, 749 F.3d 380, 394–95 (5th Cir. 2014). And legal claims that were not presented to the state courts are similarly barred from federal habeas review. Thus, Johnson wishes to fault his former lawyer for following established law in seeking review of his claims. This cannot be an extraordinary circumstance.

Johnson's final attempt to denigrate former federal habeas counsel's actions without demonstrating any claims of merit, lies in his allegations that

counsel's file was incomplete. Mot. Relief from J. ECF No. 95 at 22-24. But again, Johnson fails to prove this allegation. He does not provide an affidavit from counsel admitting to this charge. Johnson cites to former lawyers who do not remember counsel getting their files. This is not dispositive. And Johnson's reliance on former counsel's recent attempts to gather files is also not dispositive. As a matter of historical fact, floods from hurricanes in Houston have destroyed or partially destroyed many attorney files. The allegation of failing to collect files also fails because Johnson fails to allege any claim that federal habeas counsel could and should have made.

Finally, Johnson's belief that this Court had an affirmative duty to remedy an unalleged conflict is also not an extraordinary circumstance. Mot. Relief from J. ECF No. 95 at 24. And Johnson provides no authority for the proposition that it is. In fact, Johnson's cited case cuts against his argument. As the Supreme Court held, "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980). To the extent that Johnson argues that former federal habeas counsel's representation as state habeas counsel created a conflict that this Court should have known about, he again provides no authority. Further, representation by the same counsel only creates a conflict when there is a procedurally defaulted IATC claim that should have

14

been raised in state habeas proceedings. *See Speer v. Stephens,* 781 F.3d 784, 786 (5th Cir. 2015) ("We do not read the Supreme Court as requiring a second federally appointed lawyer to plow the same ground ably plowed by the first federally appointed lawyer with no suggestion or hint of any shortcoming on his part."). But as discussed above, no such claim exists in this case.

Johnson fails to allege any true extraordinary circumstances such as a fundamental miscarriage of justice, actual innocence, or fraud on the court. As discussed below the effectiveness of federal habeas counsel is never grounds for relief. In reality, Johnson is trying yet another permutation of the argument that *Martinez/Trevino* alone should serve as an extraordinary circumstance on which to reopen the judgment in this case. But this is clearly foreclosed by precedent. Johnson is not entitled to the extraordinary remedy he seeks.

### B.   Counsel's omissions typically do not constitute a defect in the integrity of the proceedings.

As the Fifth Circuit noted in its Clark COA grant, a Rule 60(b) motion based on "habeas counsel's omissions ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Clark*, 850 F.3d at 784 (quoting *Gonzalez*, 545 U.S. at 532); *see, e.g., Brooks v. Bobby*, 660 F.3d 959, 963 (6th Cir. 2011) (finding motion based on "general ineffective assistance of habeas counsel" claim barred as "a plain-vanilla successive petition designed to do nothing more than attack

his earlier counsel's omissions"); *Ward v. Norris*, 577 F.3d 925, 932 (8th Cir. 2009) ("Although an assertion of ineffective assistance of habeas counsel may be characterized as a defect in the integrity of the habeas proceeding, it ultimately seeks to assert or reassert substantive claims with the assistance of new counsel."); *In re Paredes*, 587 F. App'x. 805 (5th Cir. Oct. 25, 2014) (lack of conflict-free counsel could constitute a defect in the integrity of the habeas proceedings, but petitioner still did not present extraordinary circumstances.). The First Circuit has explained that a motion that "asks the district court for an opportunity to offer facts that (in the petitioner's view) will prove that his conviction was constitutionally infirm," raises "a paradigmatic habeas claim." *Rodwell v. Pepe*, 324 F.3d 66, 71-72 (1st Cir. 2003).

In fact, Rule 60(b)(6) relief is generally directed towards rectifying defects that *prevent* a ruling on the merits. And Johnson fails to identify any claims that were raised but not resolved on the merits. In *Gonzalez*, the Supreme Court explained what constitutes a decision "on the merits" and a "defect":

> The term 'on the merits' has multiple usages. [] We refer here to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d). When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim. He is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons

as failure to exhaust, procedural default, or statute-of-limitations bar.

[. . .]

Fraud on the federal habeas court is one example of such a defect. [] We note that an attack based on the movant's own conduct, or his habeas counsel's omissions . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably.

*Gonzalez*, 545 U.S. at 532 nn.4-5 (citations omitted).

This Circuit adhered to the Supreme Court's distinction in *Coleman*:

Procedural defects are narrowly construed, however. They include "[f]raud on the habeas court," as well as erroneous "previous ruling [s] which precluded a merits determination . . .— for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." They generally do not include "an attack based on the movant's own conduct, or his habeas counsel's omissions," which "do not go to the integrity of the proceedings, but in effect ask for a second chance to have the merits determined favorably."

Coleman argues that there was a defect in the integrity of her original habeas petition, namely that "the additional evidence from the four witnesses recently discovered and relevant to the 'kidnapping' issue was unavailable to this Court when it decided the claim previously, and the attached affidavits and the evidence contained therein are now available." Her counsel's failure to discover and present this evidence, she argues, indicated that they were constitutionally ineffective. This claim, however, is fundamentally substantive—she argues that the presence of new facts would have changed this court's original result. Moreover, Coleman does not allege that the court or prosecution prevented her from presenting such evidence, but rather argues that her own counsel was ineffective in failing to present such evidence. The Supreme Court has held that such an argument sounds in substance, not procedure. Nor is Coleman's alleged defect similar

17

in kind to those highlighted by the Supreme Court as examples of procedural failures, such as statute-of-limitations or exhaustion rulings.

*In re Coleman*, 768 F.3d 367, 371-72 (5th Cir. 2014) (footnotes omitted). Thus, controlling Supreme Court and Circuit precedent shows that Johnson's purported conflict constitutes neither a defect in the integrity of the proceedings nor an extraordinary circumstance required for Rule 60(b)(6).

### C. Johnson's motion is untimely.

A Rule 60(b)(6) motion must be filed within a reasonable time, "unless good cause can be shown for the delay." *Clark*, 850 F.3d at 780. The timeliness inquiry is typically "measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion." *Id.* For motions premised on an alleged *Martinez/Trevino* conflict, *Trevino* provides the relevant date:

> The contention that a conflict of interest may arise when state habeas counsel in Texas is also federal habeas counsel flows from *Trevino*. Accordingly, the touchstone for [petitioner's] Rule 60(b) motion, which is that [counsel] had a conflict of interest, came into existence on May 28, 2013, the date of the *Trevino* decision.

*Id.* at 781.

Applying this standard, Johnson's motion is untimely, as he filed it more than six years after *Trevino* issued. This Court's precedent confirms that such delay is unreasonable. *See, e.g., Clark*, 850 F.3d at 782 (finding untimely a Rule 60(b) motion filed fifteen months after *Trevino*); *In re Paredes*, 587 F.

18

Appx. 805, 824–25 (5th Cir. 2014) (same, but seventeen months); *Pruett v. Stephens*, 608 F. App'x. 182, 185–86 (5th Cir. 2015) (same, but nineteen months); *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (same, but eight months after relevant opinion issued). To the extent the *Ramirez* opinion looks at the length of time between the filing of the motion and the appointment of conflict-free counsel, the unpublished case cannot overturn the precedent set in *Clark*. Thus, under established precedent, Johnson's motion is untimely.

Johnson appears to suggest he was "abandoned" by counsel.  Mot. Relief from J. ECF No. 95 at 25. But former federal habeas counsel never abandoned him as demonstrated by both his previous motion for relief from judgment and the subsequent state habeas proceeding. In *Battaglia v. Stephens,* 824 F.3d 470 (5th Cir. 2016), appointed counsel filed an advisory stating he did not believe his representation extended to state competency proceedings. *Id*. at 474. The court found that appointed counsel was incorrect but that his mistaken belief caused him to "abandon" his client. *Id*. Johnson cannot demonstrate any such mistaken belief on the part of his former lawyer or any proceedings that lawyer refused to represent him. Johnson's claim of abandonment is an overstatement and he offers no authority to support his contention that engaged counsel has abandoned his client.

Johnson may believe that he could not have asserted the conflict earlier because he was represented by conflicted counsel. But the same was true for the petitioners in *Clark*, 850 F.3d at 781, and *Paredes*, 587 F. Appx. at 824–25. The Fifth Circuit has recognized that district courts have properly denied Rule 60(b)(6) motions as untimely where filed as few as five months after the pertinent date. *See Clark*, 850 F.3d at 782 n.63 (citing *Tamayo*, 740 F.3d at 991 (less than eight months); *Lewis v. Lewis*, 326 F. App'x. 420, 420 (9th Cir. 2009) (mem.) (six months); *Treadway v. Parke*, 79 F.3d 1150, 1996 WL 117182, at *1 (7th Cir.) (five months)). And Johnson's attempts to distinguish his case based on former habeas counsel's alleged shortcomings remain unpersuasive. In fact, Johnson waited a year after the denial of certiorari to assert a conflict that he claims the court should have addressed sua sponte.

Even assuming that the need for investigation could constitute good cause for late filing in some circumstances, Johnson does not produce sufficient evidence to prove that is the case here. As discussed above, Johnson needs to demonstrate that former counsel's conflict deprived him of his only opportunity to raise a substantial IATC claim in a procedurally proper manner, and that merits review of the claim in this Court was thereby precluded by the resultant procedural default. As the Director previously argued this task was not arduous as it required a simple review of federal habeas proceedings to

determine if such a claim was indeed raised but defaulted. But Johnson cannot identify such a claim nor has he attempted to do so.  It is Johnson's burden to show extraordinary circumstances, and such circumstances "will rarely occur in the habeas context." *Gonzalez,* 545 U.S. at 535. Johnson fails to show this is such a rare case that Rule 60(b) relief is justified.

### D.   Regardless, counsel did not operate under a conflict of interest.

In any event, it does not appear that former federal habeas counsel actually labored under a conflict of interest during the original habeas proceedings. An "actual conflict" "for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance" which is "not merely hypothetical." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005) (citations omitted). The Fifth Circuit has clarified that "[a] conflict exists when defense counsel places himself in a position conducive to divided loyalties," a question which is "highly fact-sensitive." *Id*. The finding of a conflict of interest may "depend[ ] on a number of factors," including proximity in time and subject matter of the charges and counsel's representation. *Id*. Further, "'[i]t must be demonstrated that the attorney made a choice between possible alternative courses of action," otherwise "the conflict remained hypothetical." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006).

21

"Adverse effect" may be demonstrated by "evidence that counsel's judgment was actually fettered by concern over the effect of certain trial decisions on other clients." *Infante*, 404 F.3d at 393 (citation and internal quotation marks omitted). A petitioner must show adverse effect by "demonstrat[ing] that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest.'" *Beathard v. Johnson*, 177 F.3d 340, 346 (5th Cir. 1999) (even where petitioner asserted four defense strategies not pursued, proper facts or defense strategy illustrating conflict of interest were not pled).

The Fifth Circuit has also noted that, absent a demonstration of an "actual conflict," a defendant "'must show a reasonable probability that the conflict 'prejudiced the defense, undermining the reliability of the proceeding.'" *United States v. Garza*, 429 F.3d 165, 171 n.3 (5th Cir. 2005) (reviewing an alleged conflict of interest between attorney's ethical interests and client's interests) (citing *Beets v. Collins*, 65 F.3d 1258, 1273 (5th Cir. 1995) (en banc)). Finally, in most Sixth Amendment ineffective assistance of counsel cases, the defendant must meet two requirements to prove a violation occurred: (1) demonstrate that the assistance fell below the bounds of prevailing, objective, professional standards of reasonableness, and (2) affirmatively prove that the

22

deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Johnson's former federal habeas counsel continuously and ably represented him. He missed no deadlines. He valiantly pursued relief on Johnson's Fifth Amendment claim. First getting additional time and consideration from this Court and then obtaining a COA in the Fifth Circuit. Johnson's assertions of a conflict are not borne out by the record as he fails to cite to any claims that should have been raised much less any claims that were defaulted that conflict-free counsel could have raised under *Martinez/Trevino*. Again, Johnson fail to present the extraordinary circumstances that justify the granting of Rule 60(b) relief.

## II.     Any Claims Johnson Wishes to Litigate Are Successive, Defaulted, and Time-barred.

Johnson moves this Court under Rule 60(b) to not only reopen its final judgment but has previously asserted that reopening the case would allow him to raise a host of new claims. But Johnson fails to demonstrate those claims would not be successive, unexhausted, procedurally defaulted, or time-barred. Thus, in addition to showing he is deserving of relief, Johnson fails to show any future litigation would be fruitful.

## A.     Johnson's unalleged claims would be successive.

Again, Johnson identifies no claim that was raised but did not receive a merits adjudication. Thus, any other claim would be successive, unless it was based on a new, previously unavailable rule of law or previously unavailable facts establishing innocence. Johnson has also not attempted to make either of those showings.

Rule 60(b) does not afford federal habeas corpus petitioners a second bite at the apple. That is, Rule 60(b) may not be used to attack a prior merits-based ruling. *Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010). And under 28 U.S.C § 2244, a petitioner seeking to file a second or successive petition must first seek authorization from the circuit court to do so. The statute provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). A three-judge panel of the court of appeals will then determine if the petitioner can make of prima facie showing that his application satisfies either of the exceptions under § 2244(b)(2). 28 U.S.C. § 2244(b)(3)(C). The initial determination of whether a petitioner can satisfy this standard is not for the district court. In this case, the "appropriate court of appeals" would be the Fifth Circuit.

24

Thus, to grant 60(b) relief, this Court must ignore binding precedent for Johnson to pursue relief he must ultimately obtain from the circuit court.

## B. Alternatively, Johnson's unalleged claims are time-barred.

Moreover, any new claims would be subject to the statute of limitations provided in 28 U.S.C. § 2244(d). AEDPA provides that:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute-of-limitations clock operates from the later date "on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Under AEDPA, a state judgment becomes final "upon denial of certiorari by the Supreme Court or expiration of the period for seeking certiorari." *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for seeking certiorari is ninety days after state court's final decision under Supreme Court Rule 13(a)). Johnson's conviction thus became final on June 28, 2010, when the Supreme Court denied him certiorari. *Johnson v. Texas*, 130 S. Ct. 3515 (2010).

AEDPA provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2). Johnson's original state habeas proceeding tolled the limitations period from the certiorari denial until June 30, 2010. *Ex parte Johnson*, No. 73,600-01, Order (Tex. Crim. App. June 30, 2010). 28 U.S.C. § 2244(d)(2). Consequently, Johnson's federal habeas claims were due on June 30, 2011. Johnson's federal habeas application did not toll the statute of limitations for new claims. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). Consequently, any new claims are many years past the 2011 deadline.

Johnson suggests that, under *Christeson v. Roper*, 135 S. Ct. 891, 895 (2015), he should be afforded an opportunity to avoid the statute of limitations with conflict-free counsel. But *Christeson* is easily distinguishable. In *Christeson*, the petitioner was prevented from raising *any* claims by the abandonment of counsel. But, as argued above, Johnson was not abandoned by former federal habeas counsel but was zealously advocated for. Indeed, Johnson's problem is that the statute of limitations had expired before *Trevino* was decided. Thus, any alleged conflict stemming from *Trevino* cannot retroactively make timely any new claims.

"[S]tatutes of limitations[] necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." *United States v. Locke*, 471 U.S. 84, 101 (1985).

## C. Johnson's unalleged claims are unequivocally procedurally defaulted.

Any attempt to file a subsequent state habeas application will result in its dismissal as an abuse of the writ, as it has already. *See, e.g., Aguilar v. Dretke*, 428 F.3d 526, 533 (5th Cir. 2005) ("This court has consistently held that Texas' abuse-of-writ rule is ordinarily an 'adequate and independent' procedural ground on which to base a procedural default ruling.") (citations omitted). The only exception to the procedural default doctrine relevant to

27

claims that could be raised is *Martinez/Trevino*. But as shown above, Johnson does not state any defaulted IATC claims necessary to obtain relief. The *Martinez/Trevino* equitable rule is a limited exception to the procedural default doctrine. It is not an invitation to redo federal habeas proceedings. Any new claims brought by Johnson would be barred from federal habeas review.

## III. Johnson Is Barred from Relief for Any Claim of Ineffective Assistance of Federal Habeas Counsel by Statute.

Johnson devotes the majority of his Rule 60(b) motion to attacking the performance of former federal habeas counsel. But Johnson fails to recognize that even if he could prove that former federal habeas counsel was constitutionally ineffective that would not entitle him to any form of relief. As shown above, the performance of federal habeas counsel is rarely grounds to show a defect in proceedings. And Johnson cannot show that counsel's performance was an extraordinary circumstance sufficient to reopen federal habeas proceedings. Indeed, the effectiveness of federal habeas counsel is barred as a ground for relief by federal statute. 28 U.S.C. § 2254(i).

Further, in his attacks on federal habeas counsel, Johnson fails to show what is required for attacks on appellate counsel: a claim that is stronger than that which was raised by counsel. *Smith v. Robbins*, 528 U.S. 259, 286 (2000) In fact, Johnson fails to allege any claims at all. All Johnson provides this Court with are complaints of counsel's performance and communications

without any proof. Johnson's attacks on former federal habeas counsel do not entitle him to any relief.

## IV.   This Court Lacks Jurisdiction to Enter a Stay and Johnson Is Not Entitled to a Stay of Execution.

The only statutory authority for a federal court to stay an execution comes from the federal habeas corpus statute which "grants any federal judge 'before whom a habeas corpus proceeding is pending' power to stay a state-court action 'for any matter involved in the habeas corpus proceeding.'" *McFarland v. Scott*, 512 U.S. 849, 857 (1994) (quoting 28 U.S.C. § 2251); *see also Rosales v. Quarterman*, 565 F.3d 308, 311 (5th Cir. 2009). But there is no federal habeas action currently pending before this Court. And if no habeas petition is pending in the federal courts, then "both the district court and [the circuit] court are without jurisdiction to enter a stay of execution." *Rosales*, 565 F.3d at 311. Thus, unless and until, this Court grants Johnson's Rule 60(b) motion, it lacks subject matter jurisdiction over the request for a stay of execution. The time to weigh the equities is over. Johnson must be granted the relief he seeks to be granted the stay.

As the Fifth Circuit has said, "The power to issue a stay of execution comes from § 2251, and the question is whether there is a pending or potential habeas corpus proceeding before the court." *Rosales*, 565 F.3d at 311 (citing *Teague v. Johnson*, 151 F.3d 291 (5th Cir.1998) ("once the appellate mandate

issues, a habeas petition is no longer pending before the court of appeals, and we have no jurisdiction to stay proceedings under § 2251")); *see also Williams v. Cain*, 143 F.3d 949, 950 (5th Cir. 1998) (holding district court has no power under § 2251 to stay execution when there is no pending habeas proceeding)); *Howard v. Dretke*, 157 F. App'x. 667, 670-72 (5th Cir.2005) (unpublished) (holding both the district court and the court of appeals lacked jurisdiction to grant stay of execution in conjunction with motion for appointment of counsel that was not tied to pending or proposed habeas proceeding in the district court, relying on the language of § 2251, *Williams*, and *Teague*). Section 2251(a)(1) of Title 28 grants federal courts the authority to stay state court proceedings when a federal habeas corpus proceeding is pending. Moreover, § 2251(a)(3) grants federal courts authority to stay an execution after a state prisoner files an application pursuant to § 3599(a)(2) for appointment of new counsel in a court that has jurisdiction to entertain a habeas corpus application regarding that sentence. But presently no habeas petition is pending nor can Johnson file one without permission from the circuit court and Johnson has already received a stay based on the appointment of new counsel alone.

This Court specifically ordered the CHU to "explore whether Johnson can establish cause for the procedural default of any ineffective-assistance-of-trial-counsel claims pursuant to *Martinez*, and whether those claims merit

30

relief, and whether a viable vehicle exists for raising those claims in federal court." Ord., ECF No. 70, at 2. But the CHU fails to follow this Court's directive. The CHU fails to identify any procedurally defaulted ineffective assistance of trial counsel claims that might form a basis for relief under *Martinez*. And the CHU fails to realize that *Martinez* does not authorize an entirely new habeas proceeding. Instead the CHU attacks the effectiveness of federal habeas counsel which, as shown above, is not a basis for relief.

As demonstrated above, Johnson cannot demonstrate the extraordinary circumstances that warrant Rule 60(b) relief. He has not demonstrated a fundamental defect in his prior habeas proceedings. His motion is untimely. And, he has not even tried to demonstrate he is deserving of relief under *Martinez/Trevino*. For these reasons, his substantive motion fails and without a habeas petition before the Court, there is nothing to act upon. This Court lacks jurisdiction to stay Johnson's execution absent granting his motion for relief from judgment.

## CONCLUSION

For the foregoing reasons, Johnson's motions for relief from judgment and for stay of execution should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

31

JEFFREY C. MATEER
First Assistant Attorney General

LISA TANNER
Acting Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


 s/ Ellen Stewart-Klein

*Counsel of Record          *ELLEN STEWART-KLEIN
Assistant Attorney General
Criminal Appeals Division
Texas Bar No. 24028011
Southern District Bar No. 27861

P.O. Box 12548, Capitol Station
Austin, Texas 78711
ATTORNEYS FOR          Tel: (512) 936-1400
RESPONDENT          Fax: (512) 320-8132

## CERTIFICATE OF SERVICE

I do herby certify that on July 19, 2019, I electronically filed the forgoing pleading with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following counsel of record, who consented in writing to accept the Notice as service of this document by electronic means:

Jeremy Don Schepers
Federal Public Defender
525 S Griffin St, Ste 629
Dallas, TX 75202
jeremy_schepers@fd.org

s/Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General

33