IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| **DEXTER DARNELL JOHNSON**, | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-02466 |
| | § | |
| **LORIE DAVIS**, Director, | § | **DEATH PENALTY CASE** |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| *Respondent.* | § | |

**PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION
TO MOTION FOR STAY OF EXECUTION AND
MOTION FOR RELIEF FROM JUDGMENT**

*Mr. Johnson is scheduled to be executed on August 15, 2019*

JASON D. HAWKINS
Federal Public Defender

Jeremy Schepers (24084578)
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, Texas 75202
jeremy_schepers@fd.org
(214) 767-2746
(214) 767-2886 (fax)

# TABLE OF CONTENTS

INTRODUCTION.........................................................................................1

ARGUMENT & AUTHORITIES

I.  Mr. Johnson's representation by a conflicted and otherwise inadequate
    court-appointed attorney throughout his capital state and federal habeas
    corpus proceedings constitutes extraordinary circumstances, and the
    equities weigh in favor of reopening the judgment...............................5

    A. Mr. Johnson has amply demonstrated extraordinary circumstances and
    established that the balance of the equities weighs in his favor. ..............5

    B. The Director has failed to confront much of Mr. Johnson's evidence
    showing extraordinary circumstances. ...............................................15

II.  Mr. Johnson's motion was timely filed. ..............................................17

III.  It would be premature for this Court to consider the Director's arguments
     regarding the potential application of the procedural defenses to claims
     that may be raised in an amended petition.........................................19

IV.  Alternatively, if this Court determines that it is appropriate to assess
     procedural obstacles to claims that may be raised if the judgment is
     reopened, Mr.  Johnson requests a hearing on the issues.......................24

V.  This Court has jurisdiction to stay Mr. Johnson's execution, regardless of
    whether it rules on the merits of his Rule 60(b) Motion.......................32

CONCLUSION........................................................................................35

CERTIFICATE OF SERVICE....................................................................36

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Thaler,*
  679 F.3d 312 (5th Cir. 2012) ...................................................................34

*Atkins v. Virginia,*
  536 U.S. 304 (2002) ...............................................................................25

*Barrientes v. Johnson,*
  221 F.3d 741 (5th Cir. 2000) ...................................................................25

*Battaglia v. Stephens,*
  824 F.3d 470 (5th Cir. 2016) ...................................................................33

*Berger v. United States,*
  295 U.S. 78 (1935) .................................................................................23

*Buck v. Davis,*
  137 S. Ct. 759 (2017) ................................................................2, 3, 20, 21

*Busby v. Davis,*
  925 F.3d 699 (5th Cir. 2019) ...................................................................31

*Charles v. Stephens,*
  612 F. App'x 214 (5th Cir. 2015) .............................................................33

*Christeson v. Roper,*
  135 S. Ct. 891 (2015) ..............................................................................13

*Clark v. Davis,*
  850 F.3d 770 (2017) ..................................................................17, 18, 19

*Coleman v. Thompson,*
  501 U.S. 722 (1991) ...............................................................................20

*Crutsinger v. Davis,*
  2019 WL 3243399 (5th Cir. July 19, 2019) ........................................2, 34

*Cuyler v. Sullivan,*
  446 U.S. 335 (1980) ...............................................................................14

*In re Davila,*
  888 F.3d 179 (2018) ...............................................................................31

*Ex parte Dexter Darnell Johnson,*
 No. WR-73,600-02, Slip Op. (Tex. Crim. App. Apr. 29, 2019) ...............................11

*Diaz v. Stephens,*
 731 F.3d 370 (5th Cir. 2013) ...............................................................................34

*Ex parte Garcia Glen White,*
 No. WR-48,152-08 (Tex. Crim. App. Jan. 13, 2015)..............................................7

*Gonzalez v. Crosby,*
 545 U.S. 524 (2005) ...................................................................................1, 2, 3

*Gutierrez v. Davis,*
 No. 18-700028 (5th Cir. Sept. 10, 2018) .............................................................33

*Hall v. Florida,*
 572 U.S. 701 (2014) ...........................................................................................27

*Harris v. Nelson,*
 394 U.S. 286 (1969) ...........................................................................................25

*Henderson v. Thaler,*
 626 F.3d 773 (5th Cir. 2010) ...............................................................................29

*Hill v. McDonough,*
 547 U.S. 573 (2006) ...........................................................................................32

*Holland v. Florida,*
 560 U.S. 631 (2010) ...........................................................................25, 29, 30

*Liljeberg v. Health Services Acquisition Corporation,*
 486 U.S. 847 (1988)...................................................................................*passim*

*Lonchar v. Thomas,*
 517 U.S. 314 (1996) ...........................................................................................23

*Manning v. Epps,*
 688 F.3d 177 (5th Cir. 2012) ...............................................................................29

*Maples v. Thomas,*
 565 U.S. 266 (2012) ...........................................................................................13

*Martel v. Clair,*
 565 U.S. 648 (2012) ........................................................................................4, 14

*Martinez v. Ryan,*
 566 U.S. 1 (2012) .....................................................................................*passim*

*McFarland v. Scott,*
   512 U.S. 849 (1994) ...................................................................14, 21, 33

*McQuiggin v. Perkins,*
   569 U.S. 383 (2013) ...............................................................................28

*Moore v. Texas,*
   137 S. Ct. 1039 (2017) ............................................................. 11, 25, 27

*Moore v. Texas,*
   139 S. Ct. 666 (2019) .............................................................................25

*Nken v. Holder,*
   556 U.S. 418 (2009) ...............................................................................32

*In re Paredes,*
   587 F. App'x 805 (5th Cir. 2014) ....................................................19, 34

*Pruett v. Stephens,*
   608 F. App'x 182 (5th Cir. 2015) ..........................................................19

*Ramirez v. Davis,*
   2019 WL 2622147 (5th Cir. June 26, 2019) .........................................18

*Ramirez v. Davis,*
   675 F. App'x 478 (5th Cir. 2017) ..........................................................33

*Rivera v. Quarterman,*
   505 F. 3d 349 (5th Cir. 2007) ................................................................28

*Rosales v. Quarterman,*
   565 F.3d 308 (5th Cir. 2009) .................................................................33

*Sawyer v. Whitley,*
   505 U.S. 333 (1992) .........................................................................29, 31

*Schulp v. Delo,*
   513 U.S. 298 (1995) ...............................................................................28

*Seven Elves, Inc. v. Eskenazi,*
   635 F.2d 396 (5th Cir. 1981) ...................................................................1

*Speer v. Stephens,*
   781 F.3d 784 (5th Cir. 2015) ...................................................................5

*Strickler v. Greene,*
   527 U.S. 263 (1999) ...............................................................................31

*Tamayo v. Stephens,*
  740 F.3d 986 (5th Cir. 2014)................................................................28, 29

*Trevino v. Thaler,*
  569 U.S. 413 (2013)..............................................................................*passim*

*Washington v. Davis,*
  714 F. App'x. 380 (5th Cir. 2017).................................................................25

## Statutes

18 U.S.C. § 3599 ...................................................................................*passim*

18 U.S.C. § 3599(a)(2)....................................................................................14

28 U.S.C. § 455(a) .........................................................................14, 22, 23

28 U.S.C. § 2244 ............................................................................................26

28 U.S.C. § 2244(a)........................................................................................26

28 U.S.C. § 2244(d).......................................................................................26

28 U.S.C. § 2244(d)(1)(D) .............................................................................27

28 U.S.C. § 2253 ..............................................................................................2

28 U.S.C. § 2283 ............................................................................................33

## Other Authorities

AMERICAN BAR ASSOCIATION, Criminal Justice Standards for the
  Prosecution Function, Standard 3-1.2(a) (4th ed. 2018) .......................23

Fed. R. Civ. P. 60(b).............................................................................*passim*

Fed. R. Civ. P. 60(b)(6) ........................................................................*passim*

**PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION
TO MOTION FOR STAY OF EXECUTION AND
MOTION FOR RELIEF FROM JUDGMENT**

COMES NOW, Petitioner, DEXTER DARNELL JOHNSON, by and through undersigned counsel, the Office of the Federal Public Defender for the Northern District of Texas ("FPD"), and files this reply to Respondent's Opposition to Motion for Stay of Execution and Motion for Relief from Judgment ("Opposition"). DE 97.

## INTRODUCTION

The Fifth Circuit has recognized that Federal Rule of Civil Procedure 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case," which "may be tapped by the district court in the sound exercise of its discretion, and within the strictures inherent in the underlying objectives of the rule." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (internal quotations and citations omitted). The referenced strictures are that the Court's discretion "must be exercised in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice." *Id*. Thus, before this Court may grant a Rule 60(b)(6) motion in order to do justice in a particular case, it must find that the motion was filed within a reasonable time and that the movant has shown extraordinary circumstances. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

The Supreme Court has stated that extraordinary circumstances will rarely occur in the habeas corpus context and that not every case interpreting a statute will provide cause for reopening a final judgment. *Gonzalez*, 545 U.S. at 535-36. But here the Director has skewed the Supreme Court's language to preclude Rule 60(b) relief

1

whenever a change in the Supreme Court's decisional law is one, among many, factors in the showing of extraordinary circumstances in a habeas corpus case. *See* Opposition at 10. In fact, both statements above are mere observations that flow naturally from the requirement that relief should only be granted in extraordinary circumstances.[1] *See Crutsinger v. Davis*, 2019 U.S. App. LEXIS 19980 at *20 (5th Cir. 2019) (unpublished) (Graves, J., dissenting) (the Supreme Court's language in *Gonzalez* "[c]learly [] indicates the possibility that some changes provide cause for reopening"). In its first case addressing the interplay between Rule 60(b)(6), *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court granted the petitioner relief from judgment and habeas corpus relief. *Buck v. Davis*, 137 S. Ct. 759, 780 (2017). This is an unmistakable signal that these decisional changes can lead to relief when the totality of circumstances are extraordinary.

Moreover, Mr. Johnson does not rely on *Martinez* and *Trevino* as *evidence of extraordinary circumstances*. Rather, those cases are significant because they created a conflict of interest between Mr. McCann and Mr. Johnson. It is Mr. McCann's actions in response to that conflict—combined with other elements of his representation—that play a significant role in Mr. Johnson's showing of extraordinary circumstances.

---

[1] The Supreme Court's statement that extraordinary circumstances will rarely occur in habeas cases is not only observational, it is *dicta*. The statement was made as an aside in the section of the Court's opinion explaining why friction between the limitations on successive federal habeas petitions in 28 U.S.C. § 2253 and the equitable power to grant relief pursuant to Rule 60(b) should be minimal. It was not a part of the Court's extraordinary circumstances discussion or analysis.

In addition to reaffirming that Rule 60(b)(6) should only be used in extraordinary circumstances, the *Gonzalez* Court also stated that "Rule 60(b) has an unquestionably valid role to play in habeas cases," 545 U.S. at 534, and has cautioned lower courts against overly stringent interpretations of Rule 60(b)(6) such as the Director has pressed here:

> Rule 60(b)(6), the particular provision under which petitioner brought this motion, permits reopening when the movant shows "any . . . reason justifying relief from the operation of the judgment" other than the more specific circumstances set out in Rules 60(b)(1)-(5). [] The mere recitation of these provisions shows why we give little weight to respondent's appeal to the virtues of finality. *That policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality.* The issue here is whether the text of Rule 60(b), or some other provision of law, limits its application *in a manner relevant to the case before us.*

*Id.* at 528-29 (citations omitted) (emphasis added); *see also Buck*, 137 S. Ct. at 779 (the purpose of Rule 60(b) is to make an exception to finality, and in that case "the State's interest in finality deserves little weight"). The Court has, therefore, not only confirmed the potential significance of Rule 60(b) in habeas corpus cases, it has also stressed the requirement that each Rule 60(b) motion must be analyzed on a case-by-case basis, giving fair weight to the demands of justice.

Thus, the Director's broad arguments that mere changes in decisional law are insufficient to warrant relief, Opposition at 10, and that a conflict of interest with one's lawyer is insufficient to establish extraordinary circumstances, Opposition at 11, are overly generalized for a Rule 60(b) analysis. The arguments are also not responsive to the evidence of multiple errors and injustices that Mr. Johnson has

presented to this Court which have deprived him of meaningful federal judicial review of his capital judgment.

Mr. Johnson has satisfied the requirements of Rule 60(b)(6) because his case is one of the rare habeas cases in which the competing interests of finality and justice weigh in the movant's favor. The prejudice resulting to him as a consequence of the various violations of his representation rights under 18 U.S.C. § 3599 unquestionably outweighs the State's competing interest in the finality of a death sentence that has not received the close scrutiny that habeas is meant to provide, and which Congress meant to enhance through § 3599's representation provisions. *See Martel v. Clair*, 565 U.S. 648 (2012). The Director's arguments to the contrary fail, because the Director misconstrues Supreme Court and Fifth Circuit authority, ignores the compelling evidence of extraordinary circumstances contained in Mr. Johnson's motion, and attempts to persuade the Court to constrain its discretion according to standards that are improvidently stringent and inappropriate as applied to this case. Ultimately, the Director asks this Court to sanction Mr. Johnson's execution undeterred by the abundant evidence that Mr. Johnson was deprived of a fair opportunity to challenge his conviction and sentence in the federal courts with the assistance of conflict-free, competent counsel.

## ARGUMENT & AUTHORITIES

I.   **Mr. Johnson's representation by a conflicted and otherwise inadequate court-appointed attorney throughout his capital state and federal habeas corpus proceedings constitutes extraordinary circumstances, and the equities weigh in favor of reopening the judgment.**

   A.   **Mr. Johnson has amply demonstrated extraordinary circumstances and established that the balance of the equities weighs in his favor.**

Mr. Johnson will not restate all of the evidence he has presented to show extraordinary circumstances in this case; however, the Director's argument that there are no extraordinary circumstances in this case merits a reply. As a principal matter, while the Director has argued that Mr. McCann did not suffer from a conflict of interest with Mr. Johnson in the wake of *Martinez* and *Trevino*, Opposition at 21-23, the record clearly demonstrates not only the existence of a conflict of interest, but that Mr. McCann acted on that conflict in a manner that protected his own interests at the expense of Mr. Johnson's interests.[2]

---

[2] Mr. McCann unmistakably operated under a conflict of interest after the *Martinez* and *Trevino* decisions when he remained as Mr. Johnson's sole federal habeas counsel, just as every lawyer would be in this scenario. *See Speer v. Stephens*, 781 F.3d 784, 786 (5th Cir. 2015) ("The petitioner's present lawyer is conflicted only in the sense that every lawyer charged to examine the performance of counsel is conflicted in that task when the performance is his own."). The Director attempts to assert that Mr. McCann was not conflicted by citing a number of cases that were issued prior to *Martinez* and *Trevino*, none of which address the Fifth Circuit's clear language in *Speer* that directly refutes her argument. *See* Resp. at 21-23. Even aside from the legal principles that establish a conflict of interest existed, the Director fails to explain why the numerous actions Mr. McCann took in contravention of Mr. Johnson's best interests do not constitute a conflict of interest. These actions include Mr. McCann's: (1) failure to notify Mr. Johnson of the conflict of interest; (2) attempt to amend claims into the federal petition by invoking *Martinez* and *Trevino* to excuse the default of those claims while arguing that he had not provided ineffective assistance; (3) treatment of Mr. Johnson's case in a different manner from other clients he represented in similar postures to Mr. Johnson, in which he had sought different counsel to be appointed because it was "his ethical duty" to do so; (4) opposition to Mr. Johnson's request for conflict-free counsel; and (5) filing a state successor application without informing Mr. Johnson or obtaining his consent to do so, even after he was on notice that doing so could create additional procedural impediments for Mr. Johnson's claims to be heard on the merits.

Mr. McCann, while nominally seeking to invoke *Martinez* and *Trevino* on Mr. Johnson's behalf, affirmatively defended the quality of his state habeas representation—blaming trial counsel, direct appeal counsel, the state habeas court, and the Texas Rules of Criminal Procedure for the waiver of Mr. Johnson's ineffective-assistance-of-trial-counsel claims in state habeas and their attendant default in federal habeas. Mr. McCann knew or should have known that relief from procedural default of any newly-raised ineffectiveness claims under *Martinez* and *Trevino* depended in large part on a showing that he had provided ineffective representation in state habeas. The justifications he made for his failure to adequately investigate Mr. Johnson's case or timely raise all viable claims in state habeas were unquestionably protective of his own financial and reputational interests and unquestionably prejudicial to Mr. Johnson's interests, and they made Mr. McCann a witness to the issue rather than an advocate.

Moreover, Mr. McCann was aware that he had a conflict of interest with Mr. Johnson and took no remedial action. As noted in the Rule 60(b) Motion, just two weeks after filing his post-*Trevino* briefing in Mr. Johnson's case, Mr. McCann sought replacement counsel in the case of Raymond Martinez, citing the same ethical considerations that he ignored in this case. DE 95 at 10-11. Undersigned counsel has recently learned that Mr. McCann also acknowledged that *Martinez* and *Trevino* created a conflict of interest between himself and his client Garcia Glen White, and

---

The Director's silence regarding these issues strongly supports Mr. Johnson's position that Mr. McCann was acting contrary to Mr. Johnson's best interests.

requested a stay of Mr. White's execution and appointment of replacement counsel in

January 2015. As Mr. McCann pled:

> I have been privileged to represent Mr. Garcia Glen White for over 16 years. I have filed numerous state and federal applications for relief on his behalf. I have tried to live up to the responsibility of representing a condemned man to the best of my ability in this case.
>
> Yet no man or lawyer is perfect, nor can any lawyer truthfully say that they are their own best judge. I have represented Mr. White for too long to objectively assess whether or not I made mistakes along the way that could have cost him a chance at relief. Under *Trevino v. Thaler*, I believe that my client should at least have the benefit of at least one last set of objective eyes to judge the work done by me. It is my sincere belief, based upon 20 years of death penalty work before this Honorable Court, that a man or woman facing execution should have the benefit of one final look at his lawyer's performance, even mine. I cannot speak for other habeas attorneys; I cannot say that in every case this Court should take the action that I very respectfully suggest here. Yet his Court has entrusted me with a duty that I take most seriously. That duty includes, I believe, as ruthless a self-examination as I have applied to the lawyers who have come before me. This cannot ever be about the pride of any attorney; it must always be about ensuring every last measure of due process possible for those who are condemned.
>
> . . .
>
> *. . . I ask for this relief in the sincere belief that if my client is entitled to a full review and procedural due process that he should not depend on me to examine my own work as I could not be objective.*
>
> Wherefore I respectfully pray on behalf of my client Garcia Glen White that this Court consider a short temporary stay of the execution and appointment of new counsel in order to review my own state habeas and federal habeas work. I ask this in the interest of justice. I ask this in the humble awareness that I am as imperfect an advocate as one may find but with the sincere hope that any failings in my work count against me and not my client.

*Ex parte Garcia Glen White*, No. WR-48,152-05, Motion Requesting Temporary Stay

of Execution and Appointment of New State Habeas Counsel Under *Trevino v. Thaler*

at 2-4 (Jan. 13, 2015) (emphasis added) (attached as Exhibit 1). It is simply arbitrary and indefensible that Mr. McCann respected his ethical obligations to his other capitally-sentenced clients with whom he developed a *Trevino*-based conflict of interest and failed to do the same for Mr. Johnson.

Moreover, contrary to the Director's arguments, Opposition at 15-18, Mr. Johnson is not seeking relief from judgment based only on counsel's omissions in federal habeas. Mr. McCann did not simply make "omissions." He made a *choice* to seek conflict-free counsel for other similarly-situated clients, and he made a *choice* to not seek conflict-free counsel for Mr. Johnson. He also made a *choice* to keep Mr. Johnson uninformed of the conflict of interest, and later, when Mr. Johnson learned of the conflict from other sources and asked the Court directly for conflict-free counsel to investigate *Martinez* and *Trevino* issues, he made a *choice* to file a sealed pleading opposing his client's wishes.

Later, in response to Mr. Johnson's request to remove Mr. McCann, and ignoring the FPD's warning that prematurely filing a state successor application in state court would threaten to waive Mr. Johnson's ability to raise other issues in a successor application, Mr. McCann made the *choice* to rush to file an eight-page, one-issue application that was swiftly dismissed as an abuse of the writ. He also *chose* to file another sealed pleading opposing Mr. Johnson's motion for Mr. McCann's removal in federal court. DE 78. Perhaps most egregiously, Mr. McCann made a choice to file pleadings defending himself and explicitly undercutting the very *Martinez* and *Trevino* arguments that he acknowledged Mr. Johnson had a right to benefit from.

8

Mr. McCann not only had a conflict of interest with Mr. Johnson, but he was aware of that conflict and he *chose* to go beyond simply omitting any mention of the conflict, maneuvering to protect his financial and reputational interests at the expense of his client.

But the extraordinary circumstances in this case go beyond the injustices occasioned by Mr. McCann's conflict of interest and implicate a more sweeping denial of Mr. Johnson's right to quality federal habeas representation under 18 U.S.C. § 3599. First, as Mr. Johnson noted in the Rule 60(b) Motion, Mr. McCann failed to collect Mr. Johnson's case file before pursuing collateral relief on his behalf. The Director's proposition that Mr. McCann may have collected trial counsel's files and lost them in the flooding of 2017 is flimsy at best,[3] Opposition at 14; trial counsel and the trial mitigation investigator turned voluminous files over to the FPD shortly after its appointment in this matter. The files cannot be simultaneously destroyed by flooding and in the possession of trial counsel.

Second, Mr. McCann's pleadings in this case indicate an inadequate familiarity with the rules and procedures of habeas corpus to satisfy the requirements of 18 U.S.C. § 3599. He claims to have identified a viable ineffective-assistance-of-trial-counsel claim during the state habeas hearing on Mr. Johnson's initial 11.071 application, but—providing no rational justification—he failed to investigate or raise that claim in state court or in the initial, timely filed federal habeas petition. *See* DE 14, 18. He attempted to raise the claim in an *amended* petition more than a year after

---

[3] To the extent this Court believes this is a factual dispute, Mr. Johnson requests a hearing to prove his allegation.

the statute of limitations had run but, in that motion, he offered no explanation for the failure to raise the claim earlier, and indeed no reasonable explanation exists. *See* DE 14. As this Court held when denying Mr. Johnson's request for a stay and abeyance to exhaust the trial and direct appeal counsel ineffectiveness claims more than a year after the federal petition was filed,

> Several factors discourage this Court from staying the current proceedings. First, *Rhines* prohibits the abeyance of federal proceedings when "a petitioner engages in abusive litigation tactics or intentional delay[.]" . . . Johnson filed his federal petition on June 28, 2011. Even though he admits that he knew about the putative claims during state habeas review, he did not advance them until December 12, 2012. By that time, both parties had extensively briefed the other legal and factual issues in the case. . . . The languid manner in which Johnson requested a return to state court discourages the granting of a stay.
>
> Second, Johnson does not show good cause for failing to raise the unexhausted claims until federal review. Johnson's unexhausted claims apparently rely on easily discoverable factual predicates. Nothing inherent in the structure of Texas' post-conviction review thwarted him from advancing them in his initial habeas action. The record before this Court only shows that Johnson did not raise certain claims in his habeas application—a circumstance that arises every time a capital petitioner includes unexhausted claims in his federal petition.

*Johnson v. Stephens*, No. 4:11-cv-02466, Memorandum Opinion and Order at 12-13 (S.D. Tex. Aug. 19, 2013).

Similarly, Mr. McCann filed a subsequent 11.071 application in the state habeas court shortly before withdrawing as counsel, in which he sought relief on the ground that Mr. Johnson's death sentence is unconstitutional because he is intellectually disabled. Exhibit 2 (*Ex parte Dexter Darnell Johnson*, No. 0185483B, Applicant's Subsequent Application for Writ of Habeas Corpus (208th D. Ct. Tex. Apr. 11, 2019). In filing the eight-page application, Mr. McCann did not explain why Mr.

Johnson could not have raised the claim ten years earlier, when Mr. McCann filed Mr. Johnson's initial application. Although one paragraph of the application explains that the claim relies on *Moore v. Texas*, 137 S. Ct. 1039 (2017), the argument is wholly devoid of any explanation how *Moore* impacted Mr. Johnson's case such that a previously non-viable *Atkins* claim was now viable. *See*, *generally*, Exhibit 2. Without such an explanation, Mr. Johnson could not satisfy the relevant exception to the State successor bar. *See Ex parte Dexter Darnell Johnson*, No. WR-73,600-02, Slip Op. (Tex. Crim. App. Apr. 29, 2019).  In fact, new evidence, new developments in the clinical diagnosis of intellectual disability, and new Supreme Court case law all exist to justify the litigation of an *Atkins* claim today even though that claim may not have been successful ten years prior; but Mr. McCann failed to present the relevant evidence and argument, and Mr. Johnson's *Atkins* claim was swiftly dismissed.

Mr. McCann's motion for a stay and abeyance or, alternatively, to amend the federal habeas petition in light of *Martinez*, and his supplemental briefing addressing the impact of *Trevino* on Mr. Johnson's case demonstrate yet further evidence of his failure to familiarize himself with the habeas rules. First, as mentioned above, Mr. McCann placed the responsibility for his failure to timely raise the defaulted trial counsel ineffectiveness claim in state habeas squarely on the shoulders of trial counsel, direct appeal counsel, the state courts and the Texas legislature. DE 14 at 6, 8. With regard to trial and direct appeal counsel's share of the responsibility for failing to raise the claim in a motion for new trial or on direct review, the arguments pressed by Mr. McCann are the precise arguments pressed by the Director and

11

rejected by the Supreme Court in *Trevino*, which decided the case in the petitioner's favor *because* Texas's procedural framework, "by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal[.]" 569 U.S. at 429. It is for that very reason that the Supreme Court held *Martinez* applies to Texas cases. *Id*. Moreover, by attempting to raise a claim that direct appeal counsel was ineffective for failing to present the defaulted trial counsel ineffectiveness claim on direct review, Mr. McCann implicitly argued that he, as state habeas counsel, did not default the claim—an argument directly at odds with the *Martinez* and *Trevino* arguments necessary to establish cause.

With regard to the state courts' and the Texas legislatures' share of the blame, Mr. McCann's arguments were the state-law equivalent of blaming the Fifth Circuit and the U.S. Congress for establishing and enforcing a statute of limitations under the AEDPA. His argument that he was strong-armed into providing Mr. Johnson ineffective assistance in state habeas by the unfairness of a rule that establishes a deadline for the filing of an initial 11.071 application betrays either a transparent attempt by Mr. McCann to defend his own reputation at the expense of Mr. Johnson's interests or an unacceptable ignorance of the relevant state and federal procedural rules applicable to habeas corpus cases.

Third, Mr. Johnson's case is extraordinary because the courts, too, ignored the conspicuous conflict of interest and failed to take action to protect Mr. Johnson. The Director agrees with Mr. Johnson that courts must initiate inquiries if they know or

reasonably should know that a particular conflict exists. Opposition at 14. The Director argues, nonetheless, that no authority exists for the assertion that the Court should have been placed on notice of the conflict in this case, and further argues that a conflict only exists *after* the petitioner identifies a procedurally defaulted ineffectiveness claim that should have been raised in state habeas. *Id*. The Director's arguments are without merit.

The Court was placed on notice of the conflict of interest because Mr. McCann pursued arguments that were self-evidently tainted by the conflict. A conflict of interest with one's client is sufficiently apparent from the record when the attorney presents arguments that serve his own reputational and financial interests— arguments that he *did not* provide Mr. Johnson ineffective assistance in state habeas—at the expense of his client's interests in the vindication of his claims for relief—interests that depended upon a showing that Mr. McCann *did* provide Mr. Johnson ineffective assistance in state habeas. *See Maples v. Thomas*, 565 U.S. 266, 285 n.8 (2012) (a significant conflict of interest arises when the attorneys' interest in avoiding damage to their reputation is at odds with their client's strongest argument); *Christeson v. Roper*, 135 S. Ct. 891, 894 (counsel cannot reasonably be expected to make arguments that threaten their professional reputation and livelihood, and substitution is required when the need for such arguments arises).

Moreover, a conflict of interest between a petitioner and his attorney can undoubtedly exist before the petitioner identifies the availability of a meritorious claim for relief. *Cf.* Opposition at 14. 18 U.S.C. § 3599 "established a right to

*preapplication* legal assistance for capital defendants in federal habeas corpus proceedings." *McFarland v. Scott*, 512 U.S. 849, 855 (1994) (emphasis added). The Director's arguments are a thinly veiled attempt to turn *McFarland* on its head, requiring that meritorious claims for relief must be identified *before* the section 3599 right to competent, conflict-free representation attaches. Such an interpretation of the statute is simply precluded. *Martel v. Clair*, 565 U.S. 648, 659 (2012) (Under 18 U.S.C. § 3599(a)(2), "[h]abeas petitioners facing execution now receive counsel as a matter of right, not an exercise of the court's discretion."). Having been placed on notice of Mr. McCann's conflict of interest and the attendant violation of 18 U.S.C. § 3599 that Mr. McCann's continued representation occasioned, the Court had a duty to make inquiries, including by inquiring directly of Mr. Johnson whether he wished to waive the conflict or assert his right to replacement counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980).

Finally, Mr. Johnson has established that the balance of the equities lies in his favor. In *Liljeberg v. Health Services Acquisition Corporation*, 486 U.S. 847 (1988), the Supreme Court addressed a Rule 60(b)(6) motion premised on the federal judge's disqualification under 28 U.S.C. § 455(a) (requiring judicial disqualification in any proceeding in which the judge's impartiality might reasonably be questioned). *Id.* at 850-51. The Court held that the determination whether to grant relief pursuant to Rule 60(b)(6) should take into account "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864.

14

Here, the risk of injustice to Mr. Johnson by a denial of his motion is great. Mr. McCann was Mr. Johnson's sole court-appointed representative in all state and federal habeas matters until the appointment of undersigned counsel. For nearly twelve years, from June 28, 2007, until the FPD was appointed on February 5, 2019, Mr. McCann was the only attorney ever empowered to investigate the constitutionality of Mr. Johnson's conviction and sentence. As demonstrated *supra* and in the Rule 60(b) Motion, the evidence shows that Mr. McCann did not fulfill his duties to Mr. Johnson, and post-*Trevino* he even took affirmative steps to undermine his client's rights and interests to his own advantage.

The execution of a state prisoner who, through being kept ignorant of his rights, was forced to proceed through the federal courts represented by counsel laboring under a conflict of interest will also undoubtedly undermine the public's confidence in the judicial process. And granting Mr. Johnson relief will not produce injustice in other cases. To the contrary, the Court's willingness to enforce 18 U.S.C. § 3599 may prevent a similar injustice in future cases by encouraging attorneys to more closely examine potential conflicts of interest with their clients, and by encouraging judges to more closely scrutinize the quality of representation being afforded capitally-convicted state prisoners. *See Liljenberg*, 486 U.S. at 868.

### B. The Director has failed to confront much of Mr. Johnson's evidence showing extraordinary circumstances.

Notably, the Director's Opposition failed to confront much of Mr. Johnson's evidence of extraordinary circumstances. Though the Director argues that Mr. McCann did not have a conflict with Mr. Johnson, Opposition at 21-23, she failed to

15

address the affidavit of Robert P. Schuwerk, an esteemed Texas ethics expert, which concluded that "conflicts did arise, that they were serious, that Mr. McCann did not address them in a professionally appropriate manner and that, unless remedied by this Court, those missteps by Mr. McCann will cause irreparable injury to Mr. Johnson." DE 95 at 3.

The Director also failed to answer Mr. Johnson's allegations that Mr. McCann filed pleadings under seal that affirmatively opposed Mr. Johnson's requests for conflict-free counsel and that Mr. McCann be removed from his case because of the egregious nature of some of his misconduct. She further failed to address Mr. Johnson's allegations that Mr. McCann failed to fulfill his duty of candor, which required him to advise Mr. Johnson of the conflict of interest and its reasonably foreseeable impact on his representation, and to abide by Mr. Johnson's decisions with regard to whether to waive or assert the conflict.

Most notably, the Director failed to address allegations that Mr. McCann violated his duty of loyalty, which required him to refrain from taking any actions with respect to the conflict that would further his own interests at the expense of Mr. Johnson's. Mr. McCann did take such action when he defended his state habeas representation in the context of a *Martinez/Trevino* cause argument.

The Director's failure to address these critical components of Mr. Johnson's showing of extraordinary circumstances renders the arguments in her Opposition insufficient to defeat his meritorious motion for relief from judgment.

## II.   Mr. Johnson's motion was timely filed.

Determining whether a Rule 60(b) motion is timely filed is a case-specific inquiry that turns on the "particular facts and circumstances of the case." *Clark v. Davis*, 850 F.3d 770, 780 (*citing Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)). In his Rule 60(b) Motion, Mr. Johnson presented a number of factors that weigh in favor of finding that it was filed within a reasonable time given the circumstances. These factors include: (1) conflict-free counsel filed the Rule 60(b) motion less than five months after their appointment; (2) Mr. Johnson timely requested appointment of conflict-free counsel after he became aware of the conflict; (3) Mr. Johnson is an intellectually disabled, brain-damaged schizophrenic who functions at the level of a ten-year-old, and it is not reasonable to expect him to have been aware of the conflict until he was told about it by others; (4) the motion was timely filed pursuant to the scheduling order issued at the request of the Director; and (5) the Court, which has responsibility for affording and enforcing a qualifying prisoner's representation rights under 18 U.S.C. § 3599, should have taken action previously when Mr. McCann defended his state habeas representation in the context of *Martinez* and *Trevino* arguments, making the conflict apparent from the record. DE 95 at 25-26. Additionally, as also raised in the Rule 60(b) Motion, Mr. McCann actually *opposed* Mr. Johnson's request for conflict-free counsel, further frustrating the pace of proceedings. DE 95 at 3 (*citing* DE 66). The Director's argument fails to address the majority of the particularized facts and circumstances that support that the timing was, in fact, reasonable. *See* Opposition at 18-21.

17

The Director's assertion that the motion is not timely focuses primarily on the six-year gap between *Trevino* and the filing of the Rule 60(b) motion, asserting that Fifth Circuit precedent "confirms that such delay is unreasonable." Opposition at 18. However, the Director's attempt to create a bright-line rule based solely on the time between *Trevino* and the filing of the motion is not supported by precedent. While it is a factor in the analysis, the relevant question for this Court is whether, under the facts and circumstances of *this* case, the delay was a reasonable one. *See Clark*, 850 F.3d at 780. The Director oddly asserts that the recent, unpublished opinion in *Ramirez v. Davis*, 2019 WL 2622147 (5th Cir. June 26, 2019), was a possible attempt to overturn *Clark* when it considered the length of time between the appointment of conflict-free counsel and the filing of the Rule 60(b) motion as a timeliness factor. Opposition at 19. *Ramirez*, in fact, repeatedly cited *Clark* for the governing standard, 2019 WL 2622147 *5-6, and merely reinforced that reasonableness is to be assessed based on all relevant facts and circumstances, not simply the time between *Trevino* and the filing of the motion. It also stands for the unremarkable proposition that one such relevant factor is how long conflict-free counsel took to file the Rule 60(b) motion after appointment. The *Ramirez* court determined that reasonable jurists could debate whether the district court abused its discretion in finding that the Rule 60(b) motion was untimely under the particularized circumstances of that case. *Id.* at *6.

Mr. Johnson's case is distinguishable from other cases in which the Fifth Circuit found that a Rule 60(b) motion was not filed within a reasonable time. For example, in *Clark,* the applicant was physically present at a court hearing regarding

the conflict of interest over a year prior to filing his Rule 60(b) motion and was also represented in state court by conflict free-counsel during this time period. 850 F.3d at 777. Clark then waited an additional nine months after he was on notice of the conflict before seeking conflict-free counsel in federal court. In contrast, Mr. Johnson diligently requested conflict-free counsel—necessarily in a *pro se* posture—after becoming aware of Mr. McCann's conflict.  Mr. Johnson's case is also distinguishable based on the fact that his Rule 60(b) Motion was filed within 5 months of the appointment of conflict-free counsel, and pursuant to a scheduling order requested by the Director, whereas the petitioners in *Clark* and *Pruett* waited a significantly longer period of time before filing—12 months and 21 months, respectively. *Clark*, 850 F.3d at 782; *Pruett v. Stephens*, 608 F. App'x 182, 185-86 (5th Cir. 2015) (unpublished).

No one factor is dispositive of whether Mr. Johnson's Motion was filed within a reasonable time. When reviewing the totality of the circumstances in Mr. Johnson's case, the distinguishing features of his case as compared to other Rule 60(b) petitioners, and the fact that Mr. Johnson complied with a Rule 60(b) scheduling order from this Court, Mr. Johnson has shown that his motion is timely.

III. **It would be premature for this Court to consider the Director's arguments regarding the potential application of procedural defenses to claims that may be raised in an amended petition.**

The Director has argued that Mr. Johnson's Rule 60(b) motion must be denied because he cannot show that he can assert a good claim or defense if the case is reopened and he is allowed to file an amended petition. Opposition at 9 (*citing Buck*

*v. Davis*, 137 S. Ct. at 780). In so arguing, the Director asserts that any claims Mr. Johnson may wish to litigate in an amended federal habeas petition are successive, procedurally defaulted, and time-barred. Opposition at 23-29. But the Director's argument that before this Court may grant relief from judgment it must first find that Mr. Johnson can overcome all potential procedural obstacles to obtaining relief on hypothetical claims that he may seek to raise in an amended habeas petition is simply incorrect.

In *Buck v. Davis*, the petitioner filed a motion for relief from judgment pursuant to Rule 60(b)(6) for the sole purpose of relitigating an ineffective-assistance-of-trial-counsel claim that the district court had properly found to be procedurally defaulted under *Coleman v. Thompson*, 501 U.S. 722 (1991), the then-controlling law. 137 S. Ct. at 767. In *Buck*, because the district court had not erred in its earlier procedural default ruling under the law then in effect, it was imperative that the Rule 60(b) movant establish that *Martinez*'s limited exception to *Coleman* would apply if Rule 60(b) relief were granted and he was allowed to relitigate his defaulted ineffectiveness claim. *Id.* at 779-80. Absent such a finding, reopening of the final judgment would be futile. *Id.* at 780.

Mr. Johnson seeks relief from judgment because his right to competent legal representation under 18 U.S.C. § 3599 was violated by the continued appointment of Mr. McCann throughout his federal habeas proceeding, even after his conflict of interest with Mr. Johnson became plainly obvious. His case is simply not on all fours with *Buck*. First, Mr. Johnson has identified a defect in the integrity of his habeas

20

proceeding relating to the conflict of interest and deprivation of adequate § 3599 counsel. The petitioner in *Buck*, on the other hand, did not rely on such a defect in the integrity of his habeas proceeding, but rather sought to benefit from a post-judgment change in the equitable rules governing procedural default to litigate one specific claim. 137 S. Ct. at 767.

Moreover, the extraordinary circumstances in Mr. Johnson's case involve a violation of 18 U.S.C. § 3599, the resulting deprivation of meaningful federal habeas review of his capital judgment, and finally the unreliability of the district court's judgment denying relief. In *Buck*, the extraordinary circumstances related exclusively to errors that occurred at trial and in state habeas and were inextricably intertwined with the petitioner's trial counsel ineffectiveness claim, which he sought to resurrect through *Martinez*. As stated above, there was no error in the original federal habeas proceeding in *Buck*, at the time the judgment was entered. In contrast, there was an error of a structural dimension in Mr. Johnson's prior proceedings— that he was represented by conflicted and otherwise inadequate counsel in violation of § 3599. The very purpose of § 3599 is to equip indigent state capital prisoners with the resources necessary to investigate and litigate their claims for habeas corpus relief in federal court; a violation of § 3599 deprived the litigant of his statutory rights and infects the entire proceeding. *See McFarland*, 512 U.S. at 859.

The Director's argument that Mr. Johnson should be required to identify and litigate the substantive merit of, and affirmative procedural defenses to, potential claims for relief at this time would effectively require Mr. Johnson to prove

entitlement to relief merely to obtain relief from the judgment. Mr. Johnson's case is more appropriately reviewed under the standards announced in *Liljeberg v. Health Services Acquisition Corporation*, 486 U.S. 847 (1988). In *Liljeberg*, the petitioner filed a Rule 60(b) motion based on a violation of 28 U.S.C. § 455(a), which requires that judges recuse themselves in any proceedings in which their impartiality might reasonably be questioned. *Id*. at 850-51. The failure of the judge to recuse himself arguably undermined the fairness and appearance of fairness of the entire proceeding and therefore the merits of the cause of action itself were not taken into account at the Rule 60(b) stage. Rather, the Supreme Court focused its Rule 60(b) inquiry on two questions: (1) whether the underlying statutory violation did, in fact, occur; and (2) whether Rule 60(b) relief is available when the violation is not discovered until after the judgment has become final. *Id*. at 858.

Applying *Liljeberg* to Mr. Johnson's case, the two questions for this Court are whether Mr. Johnson's allegation of a violation of his right to adequate, conflict-free representation under 18 U.S.C. § 3599 has been established and, if so, whether Rule 60(b) relief is available when the violation was not discovered until Mr. Johnson was appointed conflict-free counsel.

Mr. Johnson has addressed the first question at length in the Rule 60(b) Motion and in section I, *supra*, as well as in his motions to remove Mr. McCann and for stays of execution. *See* DE 76, 77, 80, 82. As in *Liljeberg*, the violation of the relevant federal statute "create[d] precisely the kind of appearance of impropriety that [the statute]

22

was intended to prevent. The violation is neither insubstantial nor excusable." *Id.* at 867. The pertinent question here, then, is whether Rule 60(b) relief is available.

The *Liljeberg* Court announced the standard to be applied in the review of a Rule 60(b) motion premised on a violation of 28 U.S.C. § 455(a):

> We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

486 U.S. at 864. The same standard should apply in Rule 60(b) cases premised on violations of 18 U.S.C. § 3599 because, like section 455(a), § 3599 aims to protect the integrity of federal court proceedings.

The risk of injustice to Mr. Johnson if the judgment is not reopened is far greater than the risk of injustice to the State if the judgment is reopened. The State has no legitimate interest in the execution of a prisoner whose conviction and death sentence have not been adequately tested under the U.S. Constitution. *See Lonchar v. Thomas*, 517 U.S. 314 (1996); AMERICAN BAR ASSOCIATION, Criminal Justice Standards for the Prosecution Function, Standard 3-1.2(a) (4th ed. 2018) ("The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict."); *Berger v. United States*, 295 U.S. 78 (1935) (the sovereign's interest in a criminal case "is not that it shall win a case, but that justice shall be done"). Mr. Johnson, on the other hand, has an entrenched interest in having his conviction and sentence of death investigated by a competent, conflict-free attorney before he is put to death.

Similarly, granting Mr. Johnson relief from the judgment will not lead to injustice in other cases. "[T]o the contrary, the [Court's] willingness to enforce [§ 3599] may prevent a substantive injustice in some future case" by encouraging attorneys and courts to more carefully examine possible grounds for conflicts of interest and other indicia of incompetence. *Liljeberg*, 486 U.S. at 868. Finally, granting Mr. Johnson relief may very well promote the public's confidence in the judicial process as it relates to indigent prisoners; denying Mr. Johnson relief under the circumstances presented would undermine the public's confidence in the integrity and fairness of the courts.

Because Mr. Johnson challenges the integrity of his entire federal habeas proceeding due to the deprivation of statutory rights to representation, the Court should grant relief from the judgment per *Liljeberg*.

**IV.     Alternatively, if this Court determines that it is appropriate to assess procedural obstacles to claims that may be raised if the judgment is reopened, Mr. Johnson requests a hearing on the issues.**

The Director invokes a blanket of procedural defenses to claims that Mr. Johnson may seek to raise if the Court reopens the judgment, including that any claim would be successive, time-barred, and procedurally defaulted. Opposition at 23-28. Based on these defenses, the Director argues that reopening the judgment would be improper. Opposition at 23. However, Mr. Johnson has plausible arguments to circumvent the various procedural hurdles raised by the Director, and appropriate process must be afforded before answering them.[4]

---

[4] The following arguments are not a concession that Mr. Johnson need to establish these procedural defenses at this stage, and are included merely in the event that this Court is inclined to deny the Rule

24

Mr. Johnson requests that, prior to this Court making a determination that any of the procedural arguments raised by the Director are dispositive, an evidentiary hearing be held. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631, 654 (2010) (remanding "to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that respondent should prevail."); *Barrientes v. Johnson*, 221 F.3d 741, 768 (5th Cir. 2000) (holding that when "the issue of cause cannot be adequately resolved on the record" an evidentiary hearing is warranted); *Washington v. Davis*, 714 F. App'x. 380 (5th Cir. 2017) (unpublished) (remanding because the district court abused its discretion by denying an evidentiary hearing to develop, among other issues, whether cause and prejudice existed to excuse procedural default). Under the particular facts of Mr. Johnson's case, failure to hold such a hearing would violate his due process rights. *See generally Harris v. Nelson*, 394 U.S. 286, 300 (1969) ("[I]t is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.").

Mr. Johnson has previously outlined claims meriting further investigation in filings before this Court. Among others, these claims include that: (1) he is intellectually disabled, and thus his execution would violate the Eighth Amendment as interpreted in *Atkins v. Virginia*, 536 U.S. 304 (2002), *Moore v. Texas*, 137 S. Ct. 1039 (2017), and *Moore v. Texas*, 139 S. Ct. 666 (2019) ("*Atkins* claim"); (2) trial counsel were ineffective for failing to preserve error when the State misstated the law

---

60(b) motion based on procedural hurdles that the underlying claims may face. Moreover, Mr. Johnson does not assert that this section covers the entirety of possible arguments or briefing on the matter; instead, they are presented to show this Court that the Director is incorrect in asserting that reopening would be futile.

during punishment phase closing argument by claiming that mitigating evidence must be connected to the crime; (3) a State witness presented false testimony that Mr. Johnson is eligible for a less-restrictive custody classification and that trial counsel were ineffective for eliciting that testimony; and (4) new discovery from the State could lead to relief, including *Brady* notices provided to Mr. Johnson on February 19, 2019 ("*Brady* claim"). Doc. 95 at 18-28. These claims are far from futile both procedurally and substantively and the Director's procedural arguments do not prevent this Court from granting the Rule 60(b) motion.

First, if this Court reopens the judgment against Mr. Johnson, the potential claims he could seek to raise would not be successive. *Cf.* Opposition at 24-25. Second or successive applications are governed by 28 U.S.C. § 2244. However, that section only applies when "the legality of such detention has been determined by a judge . . . on a prior application for a writ of habeas corpus[.]" 28 U.S.C. § 2244(a). If this Court were to grant Mr. Johnson's motion and reopen the judgment against him, it would also necessarily vacate the prior judgment. As such, any additional claims would be presented and adjudicated in Mr. Johnson's initial federal habeas proceedings, assuming other procedural requirements are met. Therefore, there would be no need to seek authorization to file a successive petition in federal court.

Second, the potential claims would not be time-barred. *See* Opposition at 25-27. 28 U.S.C. § 2244(d) creates a one-year statute of limitations for bringing claims in a federal habeas corpus petition that triggers based on the latest of a variety of conditions. For our purposes, the limitations period runs from "the date on which the

26

factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Two of the potential claims fall within the one-year time frame from this triggering condition. The *Brady* claim first became available on February 19, 2019, when the State first disclosed the notices at issue. Mr. Johnson would have one year from that date to raise any claims pertaining to those notices in federal court.

If this Court reopens the judgment against Mr. Johnson, the factual predicate for the *Atkins* claim similarly falls within the one-year timeframe. Mr. Johnson qualifies for a diagnosis of intellectual disability based on certain changes to the diagnostic criteria for the disorder that occurred with the publication of the DSM-5 on May 18, 2013. These changes include a heightened reliance on adaptive functioning deficits and a lessening of the importance of IQ test scores as compared to prior editions of the manual. Because the factual predicate for his *Atkins* claim was not available until the publication of the DSM-5, and the DSM-5 was published ten days prior to *Trevino*, he would have nearly the entire one-year statute of limitations in which to raise this claim.[5] Similarly, this timing of the publication of the DSM-5 weighs in favor of equitable tolling. Moreover, the question of whether the statute is subject to equitable tolling regarding the *Atkins* claim can be heavily dependent on the merits of the claim itself—whether or not Mr. Johnson is intellectually disabled—

---

[5] Mr. Johnson is not arguing that he was not intellectually disabled at the time of the offense in question. Instead, his argument is that current prevailing professional norms establish that he was intellectually disabled at the time of the offense, although they may not have prior to the publication of the DSM-5. *See Moore v. Texas*, 137 S. Ct. 1039 (2017) (requiring courts to consider current medical standards when determining whether an individual is intellectually disabled); *Hall v. Florida*, 572 U.S. 701 (2014) (same).

27

and that question is one that should be answered *prior* to a determination of whether equitable tolling is warranted. *See Rivera v. Quarterman*, 505 F. 3d 349, 355 (5th Cir. 2007) ("That is, answering whether Rivera is retarded is logically antecedent—if not a core element itself—to determining whether equitable tolling is available."). As such, this Court should delay a determination of the statute of limitations until after the fact-intensive inquiry regarding whether Mr. Johnson is intellectually disabled occurs.

The potential *Atkins* claim in federal court may also fall into a class to which the statute of limitations can be bypassed based on a showing of actual innocence of the death penalty. In *McQuiggin v. Perkins*, the Supreme Court held that actual innocence of the crime, if proven, establishes a gateway to present constitutional claims even if the statute of limitations had otherwise expired. 569 U.S. 383 (2013). The *Perkins* court noted that the miscarriage of justice exception "survived AEDPA's passage" and has been used to overcome various procedural hurdles. *Id.* at 392-93. *Perkins* applied the logic of *Schulp v. Delo*, 513 U.S. 298 (1995), which allows petitioners to overcome procedural default of a claim upon a showing of actual innocence and extends the rationale to the federal statute of limitations. To the best of Mr. Johnson's knowledge, neither the Supreme Court nor the Fifth Circuit has resolved the question as to whether *Perkins* applies to actual innocence of the death penalty, such as an *Atkins* claim. *See Tamayo v. Stephens*, 740 F.3d 986, 990 (5th Cir. 2014) (explaining that the application of *Perkins* to actual innocence of the death

penalty was "a questions we do not decide here.").[6] *Schulp* itself relies heavily on the Supreme Court's opinion in *Sawyer v. Whitley*, 505 U.S. 333 (1992), which involved the excuse of procedural default based on actual innocence of the death penalty. Because the *Schlup* standard applies to the statute of limitations period, so should the *Sawyer* standard. As such, a plausible argument exists that the statute of limitations can be bypassed when a petitioner is able to establish actual innocence of the death penalty.

Moreover, Mr. Johnson may establish equitable tolling for any claim that may be raised in an amended petition and that falls outside the limitations period. Equitable tolling is a flexible, judicially-created remedy that is evaluated on the specific circumstances of the case, and which requires a petitioner to show that he has pursued his rights diligently, but extraordinary circumstances stood in the way of a timely filing. Such extraordinary circumstances can include "an attorney's failure to satisfy professional standards of care." *Holland*, 560 U.S. at 649; *see also id.* at 651 ("[A]t least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstances that warrants equitable tolling."); *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012) (applying the two-prong *Holland* standard to the petitioner's argument that equitable tolling was warranted). Here, Mr. Johnson has diligently pursued his rights by timely requesting, *pro se*, the appointment of conflict-

---

[6] In *Henderson v. Thaler*, 626 F.3d 773, 781 (5th Cir. 2010), the court held that it would not create an actual innocence of the death penalty exception to the statute of limitations. However, this decision predated *Perkins*, and the question was explicitly left open in *Tamayo*.

29

free counsel and timely seeking to reopen the judgment. He has provided this Court significant support for the proposition that Mr. McCann's actions in this case fell far below the standards of professional care. DE 95 at Ex. 2 (Schuwerk Declaration). He also established significant extraordinary circumstances as outlined in his Rule 60(b) Motion, which weigh in favor of both reopening the judgment and finding that equitable tolling is warranted if the case is reopened and Mr. Johnson is allowed to file an amended petition. The fact-sensitive inquiry attendant to equitable tolling arguments is one that best resolved at an evidentiary hearing. *See Holland*, 560 U.S. at 654.

Third, the potential claims would not be "unequivocally procedurally defaulted" as the Director claims. *See* Resp. at 27-28. It is far too soon to make sweeping, bold statements regarding how the state court will treat the claims that Mr. Johnson has identified, and the state court's treatment of those claims is a necessary precondition to determining whether those claims are defaulted in federal court. Should Mr. Johnson return to state court to exhaust his newly-identified claims, all claims that are authorized for merits consideration by the Texas Court of Criminal Appeals ("CCA") would not be subject to default in federal court. Mr. Johnson has previously argued that he can meet the various successor hurdles in state court. Doc. 76 at 29-32.

Even if the state court does not allow Mr. Johnson's new claims to proceed, there is a reasonable likelihood that the decision will not rest on an independent and adequate state ground, in which case the claim would not be defaulted in federal

court. This is a particular consideration with respect to the *Brady* and *Atkins* claims. *In re Davila*, 888 F.3d 179, 187-89 (holding that a *Brady* claim was not procedurally defaulted after the petitioner raised the claim in a subsequent state habeas application, where the dismissal in state court was based on the merits of the claim); *Busby v. Davis*, 925 F.3d 699, 707-10 (5th Cir. 2019) (holding that an *Atkins* claim dismissed as an abuse of the writ in state court was not defaulted in federal court because the dismissal necessarily required an assessment of the merits).

Even if the state court were to deny the claims based on adequate and independent state law grounds, resulting in their default in federal court, Mr. Johnson may be able to establish that cause and prejudice exists to excuse the default. He could potentially excuse the default of his *Atkins* claim—assuming, arguendo, that it is even possible to default such a claim under Texas's successive petition framework—by relying on the miscarriage of justice exception outlined in *Sawyer*. 505 U.S. at 348. His claims relating to ineffective assistance of counsel can utilize *Trevino* to excuse a potential default, by asserting that Mr. McCann provided ineffective assistance of counsel in state habeas, something raised at various points in pleadings presented to this Court. *Trevino*, 569 U.S. at 429. Additionally, Mr. Johnson can establish cause for failing to raise the *Brady* or *Atkins* claim previously, as the factual predicates for those claims were not previously available. *See Strickler v. Greene*, 527 U.S. 263, 283-90 (1999).

While such procedural issues are better assessed in the context of the amended petition Mr. Johnson has requested to file after reopening, he has shown that the

31

procedural obstacles raised by the Director are subject to several exceptions. Mr. Johnson does not assert that the foregoing is a full and final briefing on these complex issues, but only that it is sufficient to establish that reopening the judgment would not be an exercise in futility because numerous pathways exist for Mr. Johnson to secure merits review of newly-identified claims. If this Court rejects Mr. Johnson's argument and holds that such matters must be established now, he requests an evidentiary hearing at which evidence and argument can be presented.

**V.     This Court has jurisdiction to stay Mr. Johnson's execution, regardless of whether it rules on the merits of his Rule 60(b) Motion.**

A stay of execution is an equitable remedy within the powers of federal courts. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). In assessing whether or not to exercise its equitable powers, the Court should consider four factors: (1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Mr. Johnson requested that this Court exercise this power and stay his execution in light of a variety of factors outlined in his Rule 60(b) motion, Doc. 95, and Motion for Stay of Execution, Doc. 96, including that he has made a strong showing that he is likely to succeed on the merits of his Rule 60(b) motion. Doc. 96 at 2-3. Mr. Johnson demonstrated that a stay is warranted due to the particular factors of his case, and he requests that this Court exercise is equitable powers and grant him a stay of execution.

32

The Director attempts restrict this Court's power by incorrectly asserting that it lacks jurisdiction to stay Mr. Johnson's execution unless it grants his pending Rule 60(b) motion, supposedly because there is no federal habeas action currently pending. Opposition at 29. However, because this Court has the power to entertain the present Rule 60(b) motion, it also has the power to stay Mr. Johnson's execution, if for no other reason than to preserve its jurisdiction to rule on the merits of the motion. *See* 28 U.S.C. § 2283 (allowing a court to enter a stay "where necessary in aid of its jurisdiction"); *McFarland v. Scott*, 512 U.S. 849, 857-58 (1994) (holding that the Anti-Injunction Act did not divest federal courts of jurisdiction to stay executions to allow appointed counsel to prepare and file a habeas corpus petition). The Fifth Circuit has entered, or upheld, stays of execution in a variety of circumstances irrespective of whether a habeas petition was pending in the district court at the time that the stay was entered. *See Gutierrez v. Davis*, No. 18-700028 (5th Cir. Sept. 10, 2018); *Ramirez v. Davis*, 675 F. App'x 478 (5th Cir. 2017) (unpublished); *Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016) (unpublished); *Charles v. Stephens*, 612 F. App'x 214 (5th Cir. 2015) (unpublished).

In *Rosales v. Quarterman,* the Fifth Circuit explained that when a stay is requested pursuant to § 2251, "the question is whether there is a *pending or potential* habeas corpus proceeding before the court." 565 F.3d 308, 311 (5th Cir. 2009) (emphasis added). At minimum, the pleadings before this Court identify a potential habeas corpus proceeding, in that Mr. Johnson is requesting that the prior judgement against him be reopened—at which time a habeas corpus proceeding would

33

indisputably be ongoing. Moreover, the Fifth Circuit has frequently assessed whether to grant a stay of execution pending the disposition of, or while assessing the merits of, Rule 60(b) motions and has not based its opinions on the fact that no habeas action was then pending. *See, e.g.*, *In re Paredes*, 587 F. App'x 805, 826 (5th Cir. 2014) (denying stay of execution for failure to demonstrate a likelihood of success on the merits and because of a lack of timelines);  *Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013) (denying a stay of execution because the petitioner had not made a strong showing of a likelihood of success on the merits); *Adams v. Thaler*, 679 F.3d 312, 318-19 (5th Cir. 2012) (vacating the district court's grant of a stay of execution pending the disposition of a Rule 60(b) motion after assessing "whether Adams has shown a likelihood of success on the merits of his Rule 60(b)(6) motion" and finding he had not).

In other portions of the Opposition, the Director references the Fifth Circuit's recent published opinion in *Crutsinger v. Davis*, 2019 WL 3243399 (5th Cir. July 19, 2019), where the petitioner requested a stay of execution to litigate his Rule 60(b) motion in the district court. Opposition at 10-11. In *Crutsinger*, the Fifth Circuit explained that if the district court determined that a stay of execution was necessary to allow the petitioner to fully and fairly litigate his Rule 60(b) motion, "it has the equitable power to grant one." *Crutsinger*, 2019 WL 3243399 at *3. This Court, of course, has that same power.

In sum, this Court may exercise its discretion to stay Mr. Johnson's execution after granting his Rule 60(b) Motion and reopening the judgment, or as necessary to

allow full and fair consideration of the merits of the Motion. The latter approach would be particularly warranted if this Court determines to hold an evidentiary hearing addressing the factual bases for Rule 60(b) motion, as Mr. Johnson as requested. DE 95 at 27; *supra*, Section IV.

## CONCLUSION

For the foregoing reasons, Mr. Johnson requests that this Court grant this motion for relief from judgment and reopen the federal habeas proceedings. Specifically, he requests that this Court:

1. Set a date for an evidentiary hearing to resolve factual disputes regarding this motion as needed;

2. Grant this motion for relief from judgment;

3. Order that Mr. Johnson file an amended habeas corpus petition within 120 days; and

4. Stay his execution.

Respectfully submitted,

> JASON D. HAWKINS
> Federal Public Defender
>
> */s/ Jeremy Schepers*
> Jeremy Schepers (24084578)
> Supervisor, Capital Habeas Unit
> Office of the Federal Public Defender
> Northern District of Texas
> 525 S. Griffin St., Ste. 629
> Dallas, Texas 75202
> jeremy_schepers@fd.org
> (214) 767-2746
> (214) 767-2886 (fax)

## CERTIFICATE OF SERVICE

I, Jeremy Schepers, hereby certify that on the 2nd day of August, 2019, a copy of the foregoing motion was delivered via ECF to the Texas Attorney General's Office, attention Ellen Stewart-Klein.

*/s/ Jeremy Schepers*
_____
Jeremy Schepers