United States Courts
Southern District of Texas
FILED
*August 15, 2019*
David J. Bradley, Clerk of Court

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
August 14, 2019
Lyle W. Cayce
Clerk

No. 19-20552

In re: DEXTER JOHNSON,

        Movant

---

Consolidated with 19-70013

DEXTER JOHNSON,

        Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

        Respondent - Appellee

*4:11 cv 2466*

Appeals from the United States District Court
for the Southern District of Texas

---

Before SOUTHWICK, GRAVES, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

### FACTUAL AND PROCEDURAL BACKGROUND

Dexter Johnson was convicted of the murder of Maria Aparece in the course of committing attempted robbery on June 13, 2007, and was sentenced to death. Far greater detail is given of the offense in *Johnson v. Stephens*, 617

No. 19-20552
c/w No. 19-70013

F. App'x 293 (5th Cir. 2015). His conviction and sentence were affirmed on direct appeal.

Johnson was appointed state habeas counsel, Patrick McCann. Johnson filed a state application for writ of habeas corpus while his direct appeal was pending. His state habeas claims were denied, and McCann did not raise an ineffective assistance of trial counsel (IATC) claim. That application also did not include an *Atkins v. Virginia*, 536 U.S. 304 (2002), claim. McCann continued to represent Johnson in federal habeas proceedings, filing an application one year later that was duplicative of the state habeas claims, plus one claim that Johnson was interrogated in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). It also did not include an *Atkins* claim.

After *Martinez v. Ryan*, 566 U.S. 1 (2012), was decided, McCann filed a motion to stay and to abey Johnson's proceeding to allow exhaustion of his IATC claims or to amend his application under *Martinez* to add those claims. That claim alleged that trial counsel were ineffective for failing to present evidence of Johnson's brain damage and mental illness during the guilt phase to show he could not form intent for murder and that appeal counsel were ineffective for failing to raise IATC claims.

The district court ordered supplemental briefing on *Trevino v. Thaler*, 569 U.S. 413 (2013), and ultimately denied Johnson's motion to stay and abey or amend the federal application and Johnson's request for habeas relief. The district court granted a COA on Johnson's claim that his custodial statement was admitted in violation of his Fifth Amendment rights. We then affirmed the denial of habeas relief on his Fifth Amendment claim and denied an additional request for a COA. *Johnson*, 617 F. App'x at 305. Johnson sought Supreme Court review, which was denied. *Johnson v. Stephens*, 136 S. Ct. 980 (2016).

2

No. 19-20552
c/w No. 19-70013

On June 4, 2017, Johnson filed a motion in the federal district court requesting a new trial. The court denied the motion and his motion for reconsideration. Johnson requested a COA, which was denied by this court. *Johnson v. Davis*, 746 F. App'x 375, 381 (5th Cir. 2018) (per curiam). The Supreme Court again denied him a writ of certiorari.

On January 18, 2019, Johnson, *pro se*, requested a Federal Public Defender (FPD) be appointed in his case because of the conflict of interest between himself and McCann established after *Martinez* and *Trevino*. McCann filed an opposition under seal. Johnson then filed a *pro se* motion on February 1, 2019, again asking for independent counsel. On February 5, 2019, the court appointed a FPD, but kept McCann's appointment. The FPD requested removal of McCann, which was opposed by the State and McCann.

Six days after the motion to remove McCann, McCann filed a single-issue successive habeas application in state court, which was denied April 29, 2019. McCann also filed a clemency petition. On April 30, 2019, the district court stayed Johnson's execution, noting "troubling concerns" about McCann. McCann withdrew two days later.

On June 24, 2019 Johnson filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). The district court denied the motion on August 12, 2019.

On August 6, 2019, Johnson moved to strike his second successive state habeas application, alleging that it was filed by McCann without his permission. He also filed a successive habeas application with the motion to strike on the same day. This motion was denied "as an abuse of the writ without reviewing the merits of the claims raised" on August 13, 2019.

3

No. 19-20552
c/w No. 19-70013

Separately, Johnson moved in this court for an order authorizing the district court to consider a second or successive application for a writ of habeas corpus under 28 U.S.C. § 2244 based on an *Atkins* claim on August 8, 2019.

Before us now are Johnson's Motion for a Certificate of Appealability (COA) relating to the district court's denial of relief under Rule 60(b) and also Johnson's motion for an order authorizing a successive application for habeas corpus. We address Johnson's motion for a COA first.

## DISCUSSION

*I.    Motion for COA on Rule 60(b)*

"At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). This court reviews the district court's order denying a Rule 60(b) motion for an abuse of discretion, so on a COA this court must determine whether reasonable jurists could conclude the district court abused its discretion. *Id.* at 777. While a full merits inquiry is not proper in the COA analysis, we conduct a threshold inquiry to determine if the district court's decision was debatable. *Id.* at 774.

"[R]elief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" *Id.* at 777 (quoting *Gonzales v. Crosby*, 545 U.S. 524, 535 (2005)). Extraordinary circumstances "will rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535. The district court is permitted to consider a "wide range of factors" in determining whether extraordinary circumstances are present. *Buck*, 137 S. Ct. at 778. "These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's

4

confidence in the judicial process.'" *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)). "Moreover, a Rule 60(b)(6) movant must show that he can assert 'a good claim or defense' if his case is reopened." *Ramirez v. Davis*, 19-70004, 2019 WL 2622147, at *6 (5th Cir. June 26, 2019) (quoting *Buck,* 137 S. Ct. at 780).

The district court concluded that Johnson's motion was a "true" Rule 60(b) motion because it attacked a defect in the integrity of the federal habeas proceeding and did not "seek[] to add a new ground for relief' or 'attack[] the federal court's previous resolution of a claim on the merits,'" which "is the 'functional equivalent of [an] unauthorized successive § 2254 petition[].'" Quoting *Gilkers v. Vannoy*, 904 F.3d 336, 344 (5th Cir. 2018). That defect was McCann's deficient performance and conflicts of interest. We do not find that jurists of reason would conclude that the district court abused its discretion in finding Johnson's motion to be a true Rule 60(b) motion.

The district court also determined that Johnson's motion was timely because newly appointed counsel filed the motion within six months after appointment as co-counsel and very shortly after original habeas counsel was removed. The question of timeliness is based on the "facts and circumstances of the case." *Ramirez*, 2019 WL 2622147, at *5 (quotation omitted).

Johnson challenges here the district court's denial of his Rule 60(b) motion based on its finding that there were not extraordinary circumstances justifying reopening the judgment. The district court determined that Johnson had properly alleged a defect in the integrity of his proceeding but concluded that he had failed to demonstrate extraordinary circumstances, basing its opinion primarily on Johnson's failure to plead any meritorious defaulted IATC claims. Johnson claims that the district court unnecessarily narrowed the wide range of factors that should have been considered, focusing only on whether

5

No. 19-20552
c/w No. 19-70013

Johnson described a meritorious IATC claim that was defaulted and whether Johnson had pled that his federal habeas proceeding was deficient.

Johnson claims that under the COA standard, jurists of reason could debate whether the district court abused its discretion in concluding that Johnson failed to demonstrate extraordinary circumstances because he did not plead the merits of a defaulted IATC claim. Johnson argues that the question under Rule 60(b) is not whether there is a meritorious habeas claim if he was represented by conflict-free counsel, but whether his previous counsel McCann's performance was so deficient that he failed to provide the quality of representation that 18 U.S.C. § 3599 guarantees. Johnson's claim is that McCann's representation fell so far below the standards of Section 3599 that his case presents extraordinary circumstances.

Johnson also claims that the district court, which based its decision on the lack of any debatable defaulted IATC claim, has placed habeas applicants in an impossible situation. Johnson argues that requiring him to identify and litigate the substantive merit and procedural defenses of defaulted IATC claims would effectively require Mr. Johnson to transform his Rule 60(b) motion into a successive petition.

Finally, Johnson argues that reasonable jurists could debate whether the district court abused its discretion by failing to address McCann's ethical violations. Johnson claims that McCann violated multiple ethical rules, including the duty of candor for not explaining his conflict of interest and the duty of loyalty for not remedying the conflict.

Responding to these arguments, we point out that having conflicted counsel is not enough to obtain relief under Rule 60(b). *See Raby v. Davis*, 907 F.3d 880, 884 (5th Cir. 2018). The Supreme Court explained that even if it is shown to be debatable that state habeas counsel was constitutionally

6

ineffective, there is another "significant element" of a Rule 60(b)(6) motion: the claim must have "some merit." *Buck*, 137 S. Ct. at 780. The Court elaborated that this means that the movant must show "a good claim or defense" because that "is a precondition of Rule 60(b)(6) relief." *Id.* (second quotation from 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2857).

The district court properly held that Johnson fell short on this significant requirement. Current counsel mentioned a few potentially meritorious claims that were previously defaulted in his reply brief but failed to brief them in any detail whatsoever. The district court noted that it directed Johnson's conflict-free attorneys to "scour the record" for *Strickland* claims that meet the prerequisites for *Martinez* and *Trevino* but that there were no identified "procedural default[s] that would otherwise bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial." *Jennings*, 760 F. App'x 319, 324 (5th Cir. 2019) (citations omitted). Our finding here is consistent with *Buck*'s directive that we not delve too deeply into the underlying merits of a claim, because none was presented. 137 S. Ct. at 774. Furthermore, in a deficient representation case such as this, there needed to be some factor besides the representation. *See Id.* at 777-780 (finding that *Martinez/Trevino* was one significant element but relying in significant part on other circumstances such as race being a basis for the verdict). Johnson failed to brief these claims, and so we find that reasonable jurists would not debate the district court's decision that Johnson's *Martinez* and *Trevino* conflict arguments were inadequate to show exceptional circumstances.

As to Johnson's argument that the district court ignored his claims about McCann's alleged deficient performance, the district court stated that Rule 60(b) relief is ordinarily not appropriate in the habeas context. *Buck*, 137 S. Ct. at 777. If there were no underlying meritorious waived claims, then it can

7

No. 19-20552
c/w No. 19-70013

hardly be argued that there is a "risk of injustice" to Johnson because he did not argue he would be entitled to any form of relief if his case were reopened. *See Liljeberg*, 486 U.S. at 863-864 (cited in *Buck*, 137 S. Ct. at 778). Furthermore, in other cases where habeas counsel was deficient for omitting certain claims, the Supreme Court has stated that such an attack "ordinarily does not go to the integrity of the proceedings." *Gonzales v. Crosby*, 545 U.S. at 532 n.5. Although Johnson attempts to recast McCann's actions as choices, not omissions, the thrust of the logic still applies: McCann's alleged deficient performance was not itself sufficient to constitute exceptional circumstances.

Reasonable jurists would not debate that the district court did not abuse its discretion in concluding that Johnson's claims did not present extraordinary circumstances. This is because Johnson failed to brief any waived claims sufficient to allow the district court to determine whether extraordinary circumstances that might "risk . . . undermining the public's confidence in the judicial process" were present. *Liljeberg*, 486 U.S. at 864. Johnson also fails to provide us any authority that Section 3599 has ever provided relief pursuant to Rule 60(b). In sum, we conclude that reasonable jurists would not debate that the district court did not abuse its discretion in denying Johnson's Rule 60(b) motion.

Johnson's motion for a COA is DENIED.

## II. Motion for Successive Application

We review an application for the filing of a successive habeas application to determine if the applicant makes a *prima facie* showing that he has met the requirements of Section 2244. 28 U.S.C. § 2244(b)(3)(C). A *prima facie* showing is "simply a sufficient showing of possible merit to warrant a fuller

No. 19-20552
c/w No. 19-70013

exploration by the district court." *In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997)).

A person in custody under a state-court judgment who seeks to file a successive application for a writ of habeas corpus in federal court must satisfy these requirements:

> (1)  A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-
>
>> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>>
>> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b).

Johnson's two primary arguments in support of his *Atkins* claim are that his only recently discharged counsel had a conflict of interest because he is the one whose ineffectiveness in state habeas needed to be challenged, and that recent changes to the medical standards for determining mental disability benefit him. Applying Section 2244(b)(2)(A), Johnson argues that *Atkins* is a new rule of constitutional law that is retroactive and that his claim was

No. 19-20552
c/w No. 19-70013

previously unavailable because the latest professional diagnostic manual changed the framework for intellectual disability.[1]

At trial, Johnson was found not to be intellectually disabled. This was under an earlier professional manual, DSM-IV-TR, which relied on Johnson's IQ score that was above 70.[2] The latest DSM-5 manual changed the diagnostic framework for intellectual disability. Higher IQ scores no longer bar a diagnosis of an intellectual disability. Dr. Daniel A. Martell concluded that as of July 31, 2019, Johnson "meets the criteria for a diagnosis of Intellectual Disability" under the DSM-5. In 2019, Johnson scored 70 on a full-scale WAIS-IV IQ test.

First, Johnson must show that his claim was not presented in a prior federal application. 28 U.S.C. § 2244(b)(1). The State concedes that he did not. Thus, Johnson has met the requirements of Section 2244(b)(1).

Second, "*Atkins* created a new rule of constitutional law . . . made retroactive to cases on collateral review by the Supreme Court." *In re Campbell*, 750 F.3d 523, 530 (5th Cir. 2014). As is obvious, though, *Atkins* was decided long before Johnson even committed his crimes. A meaningful hurdle for Johnson is to demonstrate why we should consider that case to be retroactive as to him. The State argues that it is not. We hold to the contrary, counterintuitively perhaps, but not unreasonably, with the full weight of our

---

[1] Johnson also argues that his claim satisfies Section 2244(b)(2)(B), dealing with the factual predicates for his claims, but we need not, and do not, discuss that argument.

[2] The manuals express current medical standards for defining intellectual disability. "Reflecting improved understanding over time, . . . current manuals offer 'the best available description of how mental disorders are expressed and can be recognized by trained clinicians.'" *Moore v. Texas*, 137 S. Ct. 1039, 1053 (2017) (quoting the DSM-5 and noting that current medical standards constrain a state's definition of what is an intellectual disability).

No. 19-20552
c/w No. 19-70013

conclusion being borne by this court's recent decision in *In re Cathey*, 857 F.3d 221 (5th Cir. 2017). We discuss that case next.

### A. *Claim was previously unavailable*

We analyze whether Johnson's "claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2244(b)(2)(A). In the *Cathey* precedent on which we rely, the applicant's IQ initially was thought to be too high for intellectual disability. *In re Cathey*, 857 F.3d at 230. Upon his admission to prison, which was pre-*Atkins*, an IQ test was given to him that supported that his IQ was within the range for sufficient mental disability to be exempt from the death penalty. *Id.* at 232. For reasons that were disputed, the documents for that test did not become available to the inmate and counsel until 12 years after his conviction. *Id.* In addition, it was 6 years after Cathey's conviction that a litigation theory bearing on the accuracy of IQ scores called the Flynn Effect was recognized by courts. *Id.* at 227, 229-33. Thus, when Cathey filed his initial state and federal habeas applications, there was not a claim "with some possibility of merit" under *Atkins* to be made and there remained no such claim for several years. *Id.* at 232.

Those facts amounted at least to a *prima facie* showing that *Atkins* was previously unavailable as required by Section 2244(b)(2)(A). *Id.* at 233. We did not separately analyze whether it was enough that *Atkins* in a generic sense was a rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, even though it was not so clearly retroactive in its application to Cathey. We accept that the conclusions in *Cathey* necessarily decided that latter point as well and move on here.

We see the facts relevant to Johnson to be quite similar. In 2013, six years after Johnson's conviction, a new diagnostic manual called the DSM-5

11

No. 19-20552
c/w No. 19-70013

for mental disability was released. The new diagnostic guidelines included significant changes in the diagnosis of intellectual disability, which changed the focus from specific IQ scores to clinical judgment. The DSM-5 recognizes that an individual with an IQ score over 70 may still qualify as intellectually disabled. The previous diagnostic manual, in effect when Johnson filed his initial federal habeas petition, did not classify Johnson as intellectually disabled because of his IQ. Further bolstering that his claim was unavailable until now, Johnson under a current full-scale IQ testing scored 70, within the *Atkins* range. Johnson also argues that although the DSM-5 was published before his habeas petition was denied for the first time in federal court, the DSM-5 was published only 17 days before the denial, which renders his claim not feasible as an amendment to his first petition.

The State's principal argument about *Cathey* is that it was "effectively overruled by the Supreme Court in in *Shoop v. Hill*, 139 S. Ct. 504, 507-08 (2019) (per curiam)." The court in *Cathey* relied significantly on *Moore* in evaluating the *prima facie* showing of Cathey's intellectual disability. *In re Cathey*, 857 F.3d at 234-36. The Supreme Court in *Moore* had reviewed a Texas Court of Criminal Appeals decision which had not applied updated medical standards in evaluating an *Atkins* claim. *Moore*, 137 S. Ct. at 1053. Later, the Supreme Court in *Shoop* determined that *Moore* was not clearly established law for the purposes of deciding whether a state court, whose decision was reached before *Moore* was decided, had unreasonably applied established law to a habeas claim. *Shoop*, 139 S. Ct. at 507-08 (citing 28 U.S.C. § 2254(d)(1)). *Shoop*, which concerns the relitigation bar of Section 2254(d)(1), did not overrule *Cathey*, which concerns a *prima facie* showing under Section 2244.

The State gives us little else on which to evaluate *Cathey*. Its sole secondary argument is an effort to distinguish the present case from *Cathey*

12

No. 19-20552
c/w No. 19-70013

for these reasons: Cathey's conviction was final before *Atkins* was decided, while Johnson committed his crimes after *Atkins* was decided; by the time Cathey was seeking Section 2254 relief, *Atkins* had been decided but it was unclear how to present the claim, uncertainties that did not apply to Johnson's initial pursuit of federal habeas; and Cathey showed greater diligence in bringing the *Atkins* claim than did Johnson. We cannot say these distinctions resolve this case in the State's favor. The central problem here is that both the counsel for Cathey and now the one for Johnson were presented — after all the events which the State argues are distinctions — with reasons that made an *Atkins* claim possibly meritorious when it had not previously been. The State seemingly recognizes that central problem, as after describing the ostensible distinctions, it returns to the argument that *Cathey* has been overruled by *Shoop*.

What opens the door for Johnson is the *Cathey* decision, which has precedentially determined that it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*. We are applying that decision to a new, but not meaningfully distinguishable, set of facts.

### B. Prima facie *showing of disability*

The requirement of a *prima facie* showing comes from Section 2244(b)(3)(C). Part of the showing is not only that his claim relies on retroactive Supreme Court precedent that was previously unavailable, but also a *prima facie* showing that his claim has merit. *See In re Cathey*, 857 F.3d at 226. To be intellectually disabled, an individual must establish intellectual-functioning deficits, adaptive deficits, and onset of those deficits when the individual is a minor. *See id.* at 235. Dr. Daniel Martell concluded after extensive evaluation of Johnson, including IQ scores, neuropsychological

No. 19-20552
c/w No. 19-70013

testing, and interviews with witnesses and Johnson that Johnson has deficits in intellectual functioning. This is "confirmed by his IQ score of 70 on the WAIS-IV, IQ scores from tests administered pretrial, and the clear cognitive deficits displayed on multiple neuropsychological tests." Dr. Martell concluded also that Johnson is at or below the bottom two percent of the population with regard to verbal learning and memory, that Johnson has frontal lobe impairment, and that he has right hemisphere brain dysfunction. Furthermore, Dr. Watson, the trial expert, averred that he would no longer testify that Johnson is not intellectually disabled based on Johnson's IQ test scores from that time.

Dr. Martell also concluded that Johnson exhibited deficits in all three domains of adaptive functioning. Johnson repeated the second grade and struggled with reading comprehension and problem solving. He also struggled to articulate words. In high school, Johnson functioned at the sixth-grade level. Johnson also exhibited deficits in the social domain, as he struggled to make friends, was immature compared to peers, could not make eye contact, could not hold a conversation, struggled to control his emotions, and could not read the emotions of others. Johnson's deficiency in the practical domain was evidenced by his inability to follow bus or walking directions, struggles with personal hygiene, and inability to manage money or his own affairs.

Finally, Dr. Martell concluded that the onset of Johnson's disability was during the developmental period, through witness declarations, trial testimony, and records.

The State contends that we must review whether the Texas Court of Criminal Appeals "unreasonably determined that the facts set forth in [applicant]'s petition, if true, would not establish by clear and convincing evidence that no rational factfinder would fail to find [applicant] intellectually

disabled." *Busby v. Davis*, 925 F.3d 699, 716 (5th Cir. 2019). The State contends Johnson's application here lacks merit because we should defer to the Texas Court of Criminal Appeals' decisions. There are actually two state court denials of Johnson's *Atkins* claim. One was on April 29, 2019, the other on August 13, 2019. Both orders from the Court of Criminal Appeals stated that the court dismissed the "application as an abuse of the writ without reviewing the merits of the claims raised." Both orders post-date *Moore*.

Whether the decisions were on the merits is affected by recent caselaw that recasts a similarly-phrased Texas decision as a merits one "when a defendant who was convicted post-*Atkins* raises an *Atkins* claim for the first time in a successive habeas application[; that is because] the Texas court must determine whether the defendant has asserted facts, which if true, would sufficiently state an *Atkins* claim to permit consideration of the successive petition." *Busby*, 925 F.3d at 707. We understand the *Busby* court to be referring to the analysis the Texas court is to undertake in considering a successive application under Texas Code of Criminal Procedure article 11.071, section 5(a), and labeling that as merits-based. Regardless of what the best reading of *Busby* may be, the initial decision in this case is for the district court.

We now consider whether Johnson must overcome the relitigation bar of Section 2254(d). Section 2244(b)(3)(C) states that a court "may authorize the filing of a second or successive application only if it determines that the application makes a *prima facie* showing that the application satisfies the requirements of this subsection." It makes no mention of Section 2254(d), which is in a different subsection. *In re Cathey* discussed this issue. 857 F.3d at 236. It recognized that Cathey's *Atkins* claim was previously brought in a successive habeas petition before the state court, but the court did not analyze the relitigation bar of Section 2254(d) in making its Section 2244 analysis. *Id.*

15

No. 19-20552
c/w No. 19-70013

We held that "the state court findings concerning the *Atkins* claim are wholly irrelevant to our inquiry as to whether [the petitioner] has made a *prima facie* showing of entitlement to *proceed* with his federal habeas application, which is an inquiry distinct from the burden that [the petitioner] must bear in proving his claim in the district court." *Id.* (alteration in original) (quoting *In re Wilson*, 442 F.3d 872, 878 (5th Cir. 2006)). We therefore conclude that Johnson is not required at this stage to address the Texas court's decisions.

Having determined that Johnson at this stage is not required to show that the state court unreasonably determined the facts, we find that Johnson has at least made a *prima facie* showing of intellectual disability.

C.  *Timeliness*

Johnson also must show that his application is timely. There is a one-year statute of limitations on applications for a writ of habeas corpus running from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

No. 19-20552
c/w No. 19-70013

Johnson devotes his argument to the equitable tolling of the statute of limitations, which he claims began to run on the date which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. § 2244(d)(1)(D). The date that factual predicate became available was the publication of the DSM-5, which was on May 18, 2013. As that does not meet the one-year statute of limitations, Johnson argues that he is entitled to equitable tolling under *Holland v. Florida*, 560 U.S. 631, 649 (2010). "To establish his entitlement to equitable tolling, a petitioner must 'sho[w] (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing.'" *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012) (quoting *Holland*, 560 U.S. at 649). As to diligence, Johnson claims that he was diligent in seeking counsel that was not conflicted. He requested, *pro se*, conflict-free counsel once he was aware of the conflict. He has also filed this motion within six months of appointment of conflict-free counsel.

Johnson argues that the conflicts of his counsel were the extraordinary circumstances sufficient to justify his delay. The Supreme Court held that "at least sometimes, professional misconduct that fails to meet [a circuit court's] standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Holland*, 560 U.S. at 651. Johnson also argues that equitable tolling is best decided at an evidentiary hearing because of its fact-bound nature. "[W]e also recognize the prudence, when faced with an equitable, often fact-intensive inquiry, of allowing the lower courts to undertake it in the first instance." *Id.* at 654 (quotation marks and citation omitted).

Similarly, we have held that questions of equitable tolling are best left to the district court for the initial analysis. *In re Cathey*, 857 F.3d at 240-41.

17

No. 19-20552
c/w No. 19-70013

We stated that the delay there gave us pause but determined further factual development was needed. *Id.* The district court is better positioned than are we to determine the timeliness of Johnson's motion for a successive application.

Having found that Johnson has at this stage made a *prima facie* showing that his successive petition satisfies 28 U.S.C. § 2244(b)(2)(A), we GRANT Johnson's motion for authorization and STAY the execution.



**A True Copy**
**Certified Aug 14, 2019**

*Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

# *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

August 14, 2019

Mr. David J. Bradley
Southern District of Texas, Houston
United States District Court
515 Rusk Street
Room 5300
Houston, TX 77002

      No. 19-20552 cons/w 19-70013 In re: Dexter Johnson
            USDC No. 4:11-CV-2466

Dear Mr. Bradley,

Enclosed is a certified copy of the opinion issued as the mandate.

                      Sincerely,

                      LYLE W. CAYCE, Clerk

                      By: _____
                      Nancy F. Dolly, Deputy Clerk
                      504-310-7683

Enclosure(s)

cc:  Ms. Jessica Graf
     Mr. Stephen M. Hoffman
     Mr. Edward Larry Marshall
     Mr. Jeremy Schepers
     Ms. Ellen Stewart-Klein
     Ms. Gwendolyn Suzanne Vindell